1    BRAD D. BRIAN (State Bar No. 079001)
     Brad.Brian@mto.com
2
     BLANCA F. YOUNG (State Bar No. 217533)
3    Blanca.Young@mto.com
     HEATHER E. TAKAHASHI (State Bar No. 245845)
4    Heather.Takahashi@mto.com
     MUNGER, TOLLES & OLSON LLP
5    355 South Grand Avenue
     Thirty-Fifth Floor
6    Los Angeles, CA  90071-1560
     Telephone:  (213) 683-9100
7    Facsimile:   (213) 687-3702
8
     Attorneys for Defendants
9    CORINTHIAN COLLEGES INC., DAVID MOORE,
     JACK D. MASSIMINO, PAUL ST. PIERRE, ALICE
10   T. KANE, LINDA A. SKLADANY, HANK ADLER,
     TERRY O. HARTSHORN
11

12               UNITED STATES DISTRICT COURT
13     CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION
14

15   UNITED STATES OF AMERICA,     CASE NO. CV 07-01984 PSG (MANx)
     EX REL. NYOKA LEE and
16   TALALA MSHUJA,             **CORINTHIAN COLLEGES, INC.,**
                               **DAVID MOORE, JACK D.**
17            Plaintiff,       **MASSIMINO, PAUL ST. PIERRE,**
                               **ALICE T. KANE, LINDA A.**
18       vs.                      **SKLADANY, HANK ADLER AND**
                               **TERRY O. HARTSHORN'S REPLY**
19   CORINTHIAN COLLEGES INC., et   **IN SUPPORT OF THEIR MOTION**
     al.                            **TO DISMISS PURSUANT TO**
20                            **FEDERAL RULES OF CIVIL**
             Defendants.     **PROCEDURE 12(B)(6), 12(B)(1),**
21                            **AND 9(B)**
22

23                          Date:       November 16, 2009
24                          Time:       1:30 p.m.
                           Place:      Courtroom 790
25                          Judge:    Hon. Philip S. Gutierrez
26

27

28

# TABLE OF CONTENTS

**Page**

I.   Introduction ................................................................... 1

II.  Argument ...................................................................... 2

    A.   The Complaint Admits That The School Complied With Applicable Federal Regulations ........................................... 2

    B.   The School's Compliance With A Facially Valid Regulation Negates Scienter ................................................................ 4

    C.   The Safe Harbor Regulation Is Valid ................................ 6

    D.   The "Other Decisions" Cited by Relators Are Inapposite .................. 8

    E.   Relators Concede Their State Law Claims Should Be Dismissed ....... 9

    F.   Relators Have Not Pled Fraud With Specificity Against The Individual Defendants .......................................................... 9

III. Conclusion ................................................................... 11

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

### FEDERAL CASES

4

*Benson v. Merck,*
   No. 93 Civ. 20835 (JW), 1995 WL 110570 (N.D. Cal. Mar. 9, 1995) ...............9

5

*Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) ...................................................................... 11

6

7

*Carter v. Anderson Merchandisers, LP,*
   No. 08 Civ. 25 (VAP), 2008 WL 4948489 (C.D. Cal. Nov. 18, 2008)........... 4, 9

8

*Central Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A.,*
   511 U.S. 164 (1994) .......................................................................................7

9

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
   467 U.S. 837 (1984) .......................................................................................6

10

*Matter of Wade,*
   969 F.2d 241 (7th Cir. 1992) ..........................................................................3

11

*National Ass'n for Advancement of Psychoanalysis v. California Bd. of*
*Psychology,*
   228 F.3d 1043 (9th Cir. 2000) .........................................................................3

12

13

*Neubronner v. Milken,*
   6 F.3d 666 (9th Cir. 1993) ............................................................................ 10

14

*Pension Benefit Guaranty Corporation v. LTV Corp.,*
   496 U.S. 633 (1990) .......................................................................................7

15

*Sebastian Intern., Inc. v. Russolillo,*
   128 F. Supp. 2d 630 (C.D. Cal. 2001)........................................................... 10

16

17

*Solid Waste Agency of Northern Cook County v. U.S. Army Corps of*
*Engineers,*
   531 U.S. 159 (2001) .......................................................................................7

18

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) ......................................................................... 10

19

20

*U.S. ex rel. Cericola v. Federal Nat. Mortg. Assoc.,*
   529 F. Supp. 2d 1139 (C.D. Cal. 2007)......................................................... 11

21

*U.S. ex rel. Hendow v. University of Phoenix,*
   461 F.3d 1166 (9th Cir. 2006) .........................................................................4

22

*U.S. ex rel. Hochman v. Nackman,*
   145 F.3d 1069 (9th Cir. 1998) .........................................................................5

23

*U.S. ex rel. Hopper v. Anton,*
   91 F.3d 1261 (9th Cir. 1996) ..........................................................................4

24

*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.,*
   360 F.3d 220 (1st Cir. 2004) ........................................................................ 10

25

26

*U.S. ex. rel. Phipps v. Comprehensive Community Dev. Corp.,*
   152 F. Supp. 2d 443 (S.D.N.Y. 2001) ............................................................9

27

*U.S. ex rel. Robinson v. Northrop Corp.,*
   149 F.R.D. 142 (N.D. Ill. 1993) ................................................................... 10

28

- ii -

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

3

*U.S. ex rel. Walsh v. Eastman Kodak Co.*,
  98 F. Supp. 2d 141 (D. Mass. 2000)...............................................9

4

*United States ex rel. Bott v. Silicon Valley Colleges*,
  262 F. App'x 810 (9th Cir. 2008)..............................................1, 5

5

*Young v. Community Nutrition Inst.*,
  476 U.S. 974 (1986) ....................................................................6

6

7

## FEDERAL STATUTES

8

20 U.S.C. § 1094(a)(20) ....................................................................6, 8

9

20 U.S.C. § 1232(e) .................................................................................8

10

31 U.S.C. § 3729 et seq. ..........................................................................4

11

31 U.S.C. § 3730(e)(4) ..........................................................................11

Higher Education Act of 1965 ................................................................8

12

13

## FEDERAL RULES

14

Fed. R. Civ. Proc. 10...............................................................................3

15

Fed. R. Civ. Proc. 9(b) ..............................................................2, 10, 11

16

## FEDERAL REGULATIONS

17

34 C.F.R. § 668......................................................................1, 2, 8

18

59 Fed. Reg. 22353, 22427 (Apr. 29, 1994)...........................................8

19

67 Fed. Reg. 51723 (Aug. 8, 2002) ........................................................7

67 Fed. Reg. 51735.................................................................................8

20

67 Fed. Reg. 67053 (Nov. 1, 2002) ........................................................8

21

## LEGISLATIVE MATERIALS

22

H.R. Rep. No. 102-630 (1992) ................................................................6

23

24

25

26

27

28

1  **I.    <u>INTRODUCTION</u>**

2        The compensation practices described in the Complaint fall squarely within a

3  regulatory safe harbor that permits admissions representatives to be paid a salary

4  based on merit as long as salary adjustments are not based "solely" on enrollment

5  numbers.  *See* 34 C.F.R. § 668.14(b)(22).  Faced with these facts, Relators pretend

6  that their Complaint contains different, nonexistent allegations, and attempt to

7  argue that the safe harbor is invalid.

8        Neither approach saves Relators' Complaint.  First, Relators are bound by the

9  factual admissions in their Complaint, including the details of Defendant Corinthian

10  Colleges Inc.'s (the "School's") Compensation Program attached to the Complaint

11  as Exhibit A.  No amount of conclusory argument in Relators' brief can change

12  these admissions.  Second, the safe harbor is a valid and reasonable interpretation of

13  the Higher Education Act and has never been successfully challenged in the seven

14  years since it was promulgated.  But even if the safe harbor were somehow invalid,

15  Relators have failed to state a claim under the False Claims Act ("FCA") because

16  they have not, and cannot, allege scienter.  As the Ninth Circuit held in rejecting a

17  *qui tam* action almost identical to this one (and brought by the same plaintiff's-side

18  counsel), a defendant's compliance with the safe harbor for salary adjustments

19  negates scienter as a matter of law—regardless of whether the safe harbor is valid

20  or not.  *United States ex rel. Bott v. Silicon Valley Colleges,* 262 F. App'x 810 (9th

21  Cir. 2008) (unpublished).

22        Relators' state law claims are equally inadequate.  Relators do not bother

23  even to address Defendants' argument that their state law claims should be

24  dismissed for lack of standing.  This is not surprising, for the law clearly holds that

25  state law claims cannot be maintained by *qui tam* relators consistent with federal

26  standing requirements.

27

28

Finally, Relators fail to explain why their claims against the Individual Defendants[1] should not be dismissed for failing to comply with Rule 9(b). Relators claim that they need more discovery to know the details of the Individual Defendants' involvement in the alleged fraud, but this is precisely the result against which Rule 9(b) was intended to protect defendants.

For these reasons, Relators' claims against the School and the Individual Defendants should be dismissed with prejudice.

## II.   ARGUMENT

### A.   The Complaint Admits That The School Complied With Applicable Federal Regulations

Federal regulations promulgated by the Department of Education ("DOE") expressly allow schools to adjust salaries for admissions representatives up to twice a year as long as such adjustments are not based "solely" on enrollment numbers. 34 C.F.R. § 668.14(b)(22). Schools may take enrollment numbers into account in giving raises to employees or in reducing their pay, as long as numbers are not the only factor on which salary adjustments are based.

Although Relators *argue* that "[n]o other factor, or combination of factors makes a recruiter [at the School] eligible for a raise, except exceeding one's enrollment quota" (Opp'n 11), the Complaint does not make any such allegation. On the contrary, the Complaint *admits* that the School's "corporate practice," as reflected in the Admissions Representative Compensation Program attached as Exhibit A to the Complaint, requires admissions representatives to meet specified qualitative requirements *in addition to* enrolling a minimum number of students. (Compl. ¶¶ 8, 31.)

---

[1] "Individual Defendants" refers to David Moore, Paul St. Pierre, Alice T. Kane, Linda A. Skladany, Hank Adler, Terry O. Hartshorn, Jack Massimino, officers and/or directors of the School's who are named as Defendants in the Complaint.

1    For example, according to the Compensation Program—and, by

2  incorporation, Relators' Complaint—Master Campus Admissions Representatives

3  (the category singled out by Relators on page 10 of their Opposition) are not

4  eligible for a salary increase unless in addition to enrolling a specified minimum

5  number of students, they *also* meet certain "Minimum Standards of Performance"

6  *and* "[a]chieve an overall performance rating of at least 'Good' on the company

7  Employee Performance Review Form."  (*See* Opp'n 10; Compl., Ex. A, at 7.)

8  Master Campus Admissions Representatives who receive an "Excellent" rating on

9  the Employee Performance Review Form are eligible to receive a higher percent

10  increase in their salary than those who receive a "Good" rating, even if the

11  employees' "net starts" are exactly the same.  (*Id.*)  Thus, the Compensation

12  Program reflects that, all things being equal in terms of enrollment numbers, it is

13  the qualitative evaluation rating—"Good" versus "Excellent"—that determines the

14  size of the salary increase for which an employee is eligible.  And, under the

15  Compensation Program, *no* salary increase is available to an employee who gets

16  less than a "Good" performance evaluation or fails to meet Minimum Standards of

17  Performance, regardless of the strength of her enrollment numbers.  (*Id.*).

18    Because eligibility for a salary adjustment is not based "solely" on

19  enrollment quotas, the School's compensation practices as described in the

20  Complaint comply with the safe harbor.  No amount of conclusory argument to the

21  contrary can change these admitted facts.  *See* Fed. R. Civ. Proc. 10(c); *National*

22  *Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F.3d

23  1043, 1049 (9th Cir. 2000) ("In determining whether plaintiffs can prove facts in

24  support of their claim that would entitle them to relief, we may consider facts

25  contained in documents attached to the complaint."); *see also Matter of Wade*, 969

26  F.2d 241, 249 (7th Cir. 1992) ("A plaintiff may plead himself out of court by

27

28

- 3 -

attaching documents to the complaint that indicate that he or she is not entitled to judgment.").[2]

### B. The School's Compliance With A Facially Valid Regulation Negates Scienter

Confronted with the fact that their own admissions, together with the Compensation Program attached to the Complaint, demonstrate that the School's compensation practices are fully compliant with the safe harbor regulation, Relators have taken the extraordinary step of arguing that the regulation itself is in violation of the Higher Education Act ("HEA"). In other words, Relators claim that the School violated the incentive compensation ban by relying on a safe harbor in an allegedly invalid regulation.

The Court should reject this frivolous argument for several reasons. First and foremost, the School's compliance with a federal regulation negates any inference that the School knew it was violating the law. The FCA is not a strict liability statute. It is not enough for Relators to allege that Defendants breached a contract or violated a statutory requirement. They have to allege that Defendants did so "knowingly," with "scienter." 31 U.S.C. § 3729 et seq.; *U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1171 (9th Cir. 2006). "'Innocent mistakes, mere negligent misrepresentations and differences in interpretations' are not sufficient for False Claims Act liability to attach." *Hendow*, 461 F.3d at 1174 (quoting *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996)). Rather, the defendant must make a "knowing presentation of what is known to be false,"

---

[2] As noted in Defendants' Motion to Dismiss ("Motion"), the Complaint also appears to suggest that decisions to discipline, demote, or terminate employees are violations of the incentive compensation ban. Relators do not oppose—and therefore concede—Defendants' argument that such decisions do not implicate the incentive compensation ban, which prohibits only the "payment" of incentives. (See Mot. 10-12); *Carter v. Anderson Merchandisers, LP*, No. 08 Civ. 25 (VAP), 2008 WL 4948489, at *8 (C.D. Cal. Nov. 18, 2008) (holding that party conceded arguments raised by its opponent by failing to oppose the arguments).

and "'known to be false' does not mean scientifically untrue; it means a lie." *U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998) (citations and internal quotation marks omitted).

A defendant does not act with scienter when it relies on or submits a claim in compliance with a federal rule or regulation. *See Hochman*, 145 F.3d at 1074 ("Absent evidence that the defendants knew that [regulatory guidelines] on which they relied did not apply, or that the defendants were deliberately indifferent to or recklessly disregardful of the alleged inapplicability of those provisions, no False Claims Act liability can be found."). Regulated entities are entitled to rely on formal guidance issued by the agency responsible for enforcing statutory prohibitions as to which activities are or are not permissible. For this reason, the Ninth Circuit has specifically rejected *qui tam* claims alleging that defendants violated the Higher Education Act by engaging in practices permitted by the safe harbor for salary-based compensation. In *United States ex rel. Bott v. Silicon Valley Colleges,* 262 F. App'x 810 (9th Cir. 2008) (unpublished) the Ninth Circuit held:

> We need not determine whether the safe harbor regulation is actually valid. If defendants complied with a facially valid regulation, relators cannot show the required scienter under the False Claims Act for actions after the safe harbor regulation was promulgated. The safe harbor regulation is not facially invalid because the Higher Education Act prohibits direct or indirect bonuses, while the regulation specifies permissible means by which to calculate base salaries.

*Bott*, 262 F. App'x at 812. Here, as in *Bott*, Defendants' admitted compliance with the safe harbor negates scienter. Even if the safe harbor regulation is invalid (which it is not), Relators fail to allege a violation of the FCA.

1

### C.    The Safe Harbor Regulation Is Valid

2    Though the Court need not reach the question, Relators' argument that the

3    safe harbor regulation is invalid fails on its merits.  Under the two-step analysis set

4    forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S.

5    837 (1984), a challenge to an agency's interpretation of a statute it administers first

6    starts with the question of "whether Congress has directly spoken to the precise

7    question at issue."  *Id.* at 842.  Nothing in the HEA—which places limits on the

8    provision of "any *commission*, *bonus*, or other *incentive payment* based directly or

9    indirectly on success in securing enrollments," 20 U.S.C. § 1094(a)(20) (emphasis

10    added)—directly speaks to the question answered by the safe harbor regulation:

11    whether and under what circumstances *fixed compensation* like a salary implicates

12    this prohibition.

13    Because the HEA "is silent or ambiguous with respect to [this] specific

14    issue," the analysis moves to the second step which asks "whether the agency's

15    answer [to the issue] is based on a permissible construction of the statute."

16    *Chevron*, 467 U.S. at 843.  The agency's view of the statute is "entitled to

17    considerable deference" and need not be "the only permissible construction," but

18    only "a sufficiently rational one."  *Young v. Community Nutrition Inst.*, 476 U.S.

19    974, 981 (1986).  Nothing in the HEA prohibits a school from paying admissions

20    representatives a salary or generally giving them raises.  Indeed, the HEA's

21    legislative history reveals that the statute was not intended to prevent all merit-

22    based compensation simply because it was based on enrollment activity.  As the

23    conference committee emphasized, "the use of the term 'indirectly' does not imply

24    that institutions cannot base employee *salaries* on merit.  It does imply that such

25    compensation cannot *solely* be a function of the number of students recruited,

26    admitted, enrolled, or awarded financial aid."  *See* H.R. Rep. No. 102-630, at 499

27

28

1  (1992) (emphasis added)[3]; *see also* 67 Fed. Reg. 51723 (Aug. 8, 2002) (quoting

2  conference committee report).

3         The safe harbor regulation is thus consistent with both the text of the statute

4  and its legislative history.  It strikes a reasonable balance by permitting schools to

5  take performance into account in adjusting salaries, while at the same time ensuring

6  that schools do not disguise what in reality are impermissible bonuses or incentive

7  payments as "salary adjustments" or "promotions."  When salary adjustments

8  happen frequently or are based solely on enrollments, they take on the character of

9  "bonuses" "commissions" or "incentive payments" prohibited by the statute.  On

10 the other hand, it is "sufficiently rational" for the DOE to conclude that salary

11 adjustments made no more than twice a year and based on multiple factors are

12 simply not in the nature of a "commission, bonus, or other incentive payment"

13 covered by the statutory prohibition.  The safe harbor is a reasonable and

14 permissible construction of the statute, and indeed one that Congress itself had in

15 mind when enacting the HEA.

16        Relators' arguments to the contrary lack merit.  Relators argue that the

17 Senate's failure to pass an amendment to the HEA in 2001 demonstrates Congress's

18 "clear intention not to modify the recruiter compensation prohibition."  (Opp'n 12.)

19 The Supreme Court, however, has repeatedly cautioned that "failed legislative

20 proposals are 'a particularly dangerous ground on which to rest an interpretation of

21 a prior statute.'"  *Central Bank of Denver, N. A. v. First Interstate Bank of Denver,*

22 *N. A.*, 511 U.S. 164, 187 (1994) (quoting *Pension Benefit Guaranty Corporation v.*

23 *LTV Corp.*, 496 U.S. 633, 650 (1990)).  "A bill can be proposed for any number of

24 reasons, and it can be rejected for just as many others."  *Solid Waste Agency of*

25 *Northern Cook County v. U.S. Army Corps of Engineers*, 531 U.S. 159, 170 (2001).

26 _____

27 [3] available at *http://www.eric.ed.gov/ERICWebPortal/contentdelivery/servlet/*

28 *ERICServlet?accno=ED351985.*

                                        - 7 -          REPLY IN SUPPORT OF
                                                MOTION TO DISMISS - CV 07-01984 PSG

1  Relators point the Court to no evidence whatsoever to explain why "the companion

2  Senate bill . . . never came up for a vote." (Opp'n 13.) Relators' baseless

3  speculation as to why proposed legislation failed to pass cannot trump the plain

4  language of the statute or its lawfully promulgated regulations.

5      Relators also advance the novel argument that the safe harbor regulation was

6  not enacted within the timetable established by the General Education Provisions

7  Act ("GEPA") for "final regulations that the Secretary determines are necessary to

8  *implement* [an] Act." *See* 20 U.S.C. § 1232(e) (emphasis added). This statutory

9  publication deadline applies to new regulations promulgated under a new law, not

10  to amendments to those regulations. Following changes in the Higher Education

11  Act of 1965, the Secretary of the DOE issued new regulations in 34 C.F.R. § 668.14

12  to implement the incentive compensation ban set forth in 20 U.S.C. § 1094(a)(20),

13  as amended. *See* 59 Fed. Reg. 22353, 22427 (Apr. 29, 1994). The safe harbor

14  regulation promulgated in 2002 merely *amended* the earlier, properly promulgated

15  regulation. *See* 67 Fed. Reg. 51735 ("For the reasons discussed in the preamble,

16  the Secretary proposes to *amend* part[] . . . 668 . . . of title 34 of the Code of Federal

17  Regulations as follows . . . ." (emphasis added)). Because GEPA's timetable did

18  not apply to the safe harbor regulation, Relators' argument that the safe harbor

19  regulation was barred is without merit.[4]

20      **D.    The "Other Decisions" Cited By Relators Are Inapposite**

21      For reasons that are unclear, Relators cite a string of "other decisions" in

22  which courts have held that a violation of the HEA's incentive compensation ban—

23  when pled by a relator—is actionable under the FCA. (*See* Opp'n 15-16). That is

24  _____

25  [4] The safe harbor regulation was adopted after an extensive negotiated rulemaking
   process under the Administrative Procedures Act. During the rulemaking, DOE

26  solicited comments on the proposed regulations over a two-month period, "[t]he
   vast majority" of which "supported the proposal that came out of the negotiated

27  rulemaking sessions to establish safe harbors . . . ." 67 Fed. Reg. 67053 (Nov. 1,

28  2002).

1   not the question here.  Defendants' argument is not that a violation of the HEA or

2   its regulations can never form the basis of an FCA claim.  It is that Relators have

3   failed in the first instance to plead such a violation.  The "other decisions" cited by

4   Relators are inapposite and have absolutely nothing to do with the issues raised by

5   Defendants' Motion.

6           **E.      Relators Concede Their State Law Claims Should Be Dismissed**

7           Relators' state law claims are equally defective, and Relators concede the

8   point, as they have presented no arguments or authorities in opposition to

9   Defendants' motion to dismiss the state law claims.  *See Benson v. Merck*, No. 93

10  Civ. 20835 (JW), 1995 WL 110570, at *4 (N.D. Cal. Mar. 9, 1995) ("Since Plaintiff

11  fails to oppose Defendants' motion as to such claim, the Court finds that Plaintiff

12  concedes . . . ."); *Carter v. Anderson Merchandisers, LP*, No. 08 Civ. 25 (VAP),

13  2008 WL 4948489, at *8 (C.D. Cal. Nov. 18, 2008) ("Defendant offers no

14  opposition to the adequacy of class counsel and hence concedes this criteria.").

15  This is not surprising, given case law conclusively holding that the FCA does not

16  confer standing on private individuals to assert common law claims on behalf of the

17  Government.  *See U.S. ex rel. Walsh v. Eastman Kodak Co.,* 98 F. Supp. 2d 141,

18  149 (D. Mass. 2000) (holding that "the FCA does not give relators the right to

19  assert common law claims on behalf of the United States"); *U.S. ex rel. Phipps v.*

20  *Comprehensive Community Dev. Corp.*, 152 F. Supp. 2d 443, 451-52 (S.D.N.Y.

21  2001) (collecting cases, and dismissing relators' common law claims for unjust

22  enrichment, fraud, and mistake of fact for lack of standing).  Relators' state law

23  claims must therefore be dismissed.

            **F.      Relators Have Not Pled Fraud With Specificity Against The**
24          **Individual Defendants**

25          Relators' allegations against the Individual Defendants, which are premised

26  on the same defective claim that the School's compensation practices violated the

27

28

HEA, necessarily fail for reasons already discussed. In addition, Relators' allegations against the Individual Defendants fail to satisfy Rule 9(b).

Relators argue, without citing any authority, that by providing supposedly "elaborate detail of the recruiter compensation program in operation at the school," they have satisfied their burden of pleading fraud with particularity under Rule 9(b) as to each Individual Defendant. (Opp'n 14). This argument ignores authorities holding that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to . . . inform *each defendant separately of the allegations surrounding his alleged participation* in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation and internal quotation marks omitted) (emphasis added). The Complaint includes no detail whatsoever about each Individual Defendant's alleged participation in the compensation program described in the Complaint, and Relators admit as much. (Opp'n 14).

Relators' proffered excuse for failing to include these particulars in the Complaint is that this information "is peculiarly within the control of the Individual Defendants." (*Id.*) If that were sufficient to avoid the pleading requirements of Rule 9(b), Rule 9(b) would be toothless and ineffective. The purpose of Rule 9(b) is to eliminate fraud actions in which all of the facts would be learned after discovery. *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (holding that, among other things, Rule 9(b) attempts to "prevent[ ] the filing of a complaint as a pretext for the discovery of unknown wrongs"); *Sebastian Intern., Inc. v. Russolillo*, 128 F. Supp. 2d 630, 635 n.5 (C.D. Cal. 2001) (holding that Rule 9(b) is intended to prevent "fishing expeditions"). In *qui tam* actions, this concern is especially acute given that "a qui tam plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as 'a pretext to uncover unknown wrongs.'" *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004) (quoting *U.S. ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142 (N.D. Ill. 1993)).

1    In fact, the requirements of Rule 9(b) "should easily be met in qui tam

2 actions because insiders who are privy to fraud, which is the group that the statute

3 encourages to bring these FCA lawsuits, 'should have adequate knowledge of the

4 wrongdoing at issue.'"  *U.S. ex rel. Cericola v. Federal Nat. Mortg. Assoc.*, 529 F.

5 Supp. 2d 1139, 1144 (C.D. Cal. 2007) (quoting *Bly-Magee v. California*, 236 F.3d

6 1014, 1019 (9th Cir. 2001)).  Because the FCA grants a right of action to private

7 citizens only if they have independently obtained knowledge of fraud, *see* 31

8 U.S.C. § 3730(e)(4), complying with Rule 9(b) should not present a barrier to a

9 legitimate *qui tam* complaint.  *See Cericola*, 529 F. Supp. 2d at 1144.  Strict

10 application of Rule 9(b)'s pleading requirements is particularly appropriate here,

11 and requires the dismissal of Relators' claims against the Individual Defendants.

## III.    CONCLUSION

13    The pleadings in this case demonstrate not only that Relators have failed to

14 state a claim for relief, but also that they are not capable of amending the Complaint

15 to state a claim for relief.  The Opposition implicitly concedes the Complaint's

16 failure to allege a violation of the incentive compensation ban by focusing its attack

17 on the validity of the safe harbor regulation itself.  This argument is unavailing, as

18 Defendants' compliance with a facially valid regulation negates scienter under the

19 False Claims Act.  Nor do Relators offer any reason for the Court to permit them to

20 amend the Complaint to add more facts.  Indeed, in their Opposition, Relators admit

21 that they cannot allege *any* specific wrongdoing with respect to *any* Individual

22 Defendant without taking discovery.

23    For these reasons, the School and the Individual Defendants respectfully

24 request that this Court grant their motion and dismiss Relators' Complaint with

25 prejudice.

26 ///

27 ///

28 ///

9107224.1

REPLY IN SUPPORT OF
MOTION TO DISMISS - CV 07-01984 PSG

1       Respectfully submitted,

2

3  DATED: October 26, 2009          MUNGER, TOLLES & OLSON LLP

4

5                                     By:   */s/ Blanca F. Young*

6                                          BLANCA F. YOUNG

7                                   Attorneys for Defendants
                                  CORINTHIAN COLLEGES INC.,

8                                   DAVID MOORE, JACK D.
                                  MASSIMINO, PAUL ST. PIERRE,

9                                   ALICE T. KANE, LINDA A.
                                  SKLADANY, HANK ADLER, TERRY

10                                   O. HARTSHORN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -

## CERTIFICATE OF SERVICE BY MAIL

I, Dolores L. Reyes, declare:

1.       I am over the age of 18 and not a party to the within cause.  I am employed by Munger, Tolles & Olson LLP in the County of San Francisco, State of California.  My business address is 560 Mission Street, 27th Floor, San Francisco, , California 94105.

2.       On October 26, 2009, I served a true copy of the attached document, entitled

> CORINTHIAN COLLEGES, INC., DAVID MOORE, JACK D. MASSIMINO, PAUL ST. PIERRE, ALICE T. KANE, LINDA A. SKLADANY, HANK ADLER AND TERRY O. HARTSHORN'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6), 12(B)(1), AND 9(B)

by placing the documents in an addressed sealed envelope clearly labeled to identify the person being served at the address shown below and placed said envelope in interoffice mail for collection and deposit with the United States Postal Service at 560 Mission Street, 27th Floor, San Francisco, California, on that same date, following ordinary business practices:

| | |
|---|---|
| Scott D. Levy<br>Scott D. Levy Law Offices<br>1844 Wheeler Street<br>Houston, TX 77004 | Hilary B Taylor<br>Kreindler & Kreindler<br>100 Park Avenue<br>New York, NY 10017 |

3.       I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing correspondence for mailing with the United States Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the United States Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 26, 2009, at San Francisco, California.

_Dolores L. Reyes_

Dolores L. Reyes

9107234.1

REPLY IN SUPPORT OF
MOTION TO DISMISS - CV 07-01984 PSG