1  BRAD D. BRIAN (State Bar No. 079001)
2  Brad.Brian@mto.com
   BLANCA F. YOUNG (State Bar No. 217533)
3  Blanca.Young@mto.com
   RICHARD C. CHEN (State Bar No. 270715)
4  Richard.Chen@mto.com
   MUNGER, TOLLES & OLSON LLP
5  355 South Grand Avenue
   Thirty-Fifth Floor
6  Los Angeles, CA  90071-1560
   Telephone:  (213) 683-9100
7  Facsimile:   (213) 687-3702
8
   Attorneys for Defendants
9  CORINTHIAN COLLEGES INC., DAVID MOORE,
   JACK D. MASSIMINO
10
11              U.S. DISTRICT COURT
12     CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION
13
14  UNITED STATES OF AMERICA,          CASE NO. CV 07-01984 PSG (MANx)
    EX REL. NYOKA LEE and
15  TALALA MSHUJA,                     **DEFENDANTS CORINTHIAN
                                       COLLEGES INC., DAVID MOORE,
16           Plaintiff,                AND JACK D. MASSIMINO'S
                                       NOTICE OF MOTION AND
17     vs.                             MOTION TO DISMISS THE FIRST
                                       AMENDED COMPLAINT
18  CORINTHIAN COLLEGES INC., et       PURSUANT TO FEDERAL RULES
    al.                                OF CIVIL PROCEDURE 12(B)(6)
19                                     AND 9(B)**
             Defendants.
20                                     **(DECLARATION OF STACY
                                       HANDLEY, REQUEST FOR
21                                     JUDICIAL NOTICE, AND
                                       PROPOSED ORDER FILED
22                                     CONCURRENTLY)**
23                                     Date:      April 2, 2012
                                       Time:      1:30 p.m.
24                                     Place:     Courtroom 880
                                       Judge:     Hon. Philip S. Gutierrez
25
26
27
28

CORINTHIAN DEFENDANTS' MOT. TO
                                         DISMISS FAC - CV 07-01984 PSG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Contents

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ................................... 3

    A.    Dismissal of the Initial Complaint .................................................. 3

    B.    Relators' Appeal to the Ninth Circuit ............................................. 5

    C.    The First Amended Complaint .......................................................... 6

III.   ARGUMENT ............................................................................................ 9

    A.    Legal Standards ................................................................................ 9

    B.    The FAC Fails to Allege a False Statement or Scienter .................. 10

        1.    Adverse Employment Actions Do Not Violate the HEA ......... 11

        2.    The FAC Fails to Allege Any Practice by the School
            Inconsistent with the Safe Harbor ............................................ 11

        3.    The FAC Fails to Allege Any Practice by the School
            Inconsistent with the HEA Prior to the Safe Harbor's
            Enactment ................................................................................ 17

        4.    The FAC Fails to Allege Any Practice by the School
            Inconsistent with the Current Regulation ................................ 18

    C.    The FAC Does Not Meet the Specificity Requirements
       of Rule 9(b) .................................................................................... 20

    D.    The Statute of Limitations Bars All Claims Based on Alleged
       Violations Occurring Before 2005 ................................................. 22

    E.    The FAC Fails to State a Claim Against the Individual
       Defendants ...................................................................................... 24

IV.    CONCLUSION ........................................................................................ 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### FEDERAL CASES

4

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................9, 10, 11, 12

5

*Bly-Magee v. California,*
    236 F.3d 1014 (9th Cir. 2001) ........................................................................20

6

7

*Branch v. Tunnell,*
    14 F.3d 449 (9th Cir. 1994) ...........................................................................13

8

*Dumas v. Chicago Housing Auth.,*
    930 F. Supp. 1238 (N.D. Ill, 1996).................................................................12

9

*Corsello v. Lincare, Inc.,*
    428 F.3d 1008 (11th Cir. 2005) .....................................................................22

10

*Curry v. Ellis County,*
    No. 3:08-CV-1675-L, 2009 WL 2365453 (N.D.Tex. Jul 31, 2009) ..............12

11

*Ebeid ex rel. U.S. v. Lungwitz,*
    616 F.3d 993 (9th Cir. 2010)..............................................................3, 21, 22

12

*Gatdula v. CRST Van Expedited, Inc.,*
    No. CV 11-072585 VAP (OPx), 2011 WL 3652491 (C.D. Cal. June 3, 2011) .............................................................................................................12

13

14

*Hamrick v. Lewis,*
    515 F. Supp. 983 (N.D. Ill., 1981)..................................................................12

15

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) .......................................................................14

16

*Lazy Y Ranch Ltd. v. Behrens,*
    546 F.3d 580 (9th Cir. 2008)..........................................................................13

17

18

*Martell v. Trilogy Ltd.,*
    872 F.2d 322 (9th Cir. 1989) .........................................................................23

19

*Moore v. Navarro,*
    No. C 00-03213 MMC, 2004 WL 783104 (N.D. Cal. Mar. 31, 2004) .............23

20

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993) .............................................................................10

21

*Oja v. U.S. Army Corps of Eng'rs,*
    440 F.3d 1122 (9th Cir. 2006)........................................................................24

22

*Parrino v. FHP, Inc.,*
    146 F.3d 699 (9th Cir. 1998) .........................................................................15

23

24

*Quaak v. Dexia, S.A.,*
    445 F. Supp. 2d 130 (D. Mass. 2006)............................................................24

25

*Sweet v. TMI Mgmt. Sys.,*
    No. 05-1683 (RBK), 2008 WL 724275 (D.N.J. Mar. 17, 2008)......................22

26

*U.S. ex rel. Bott v. Silicon Valley Colls.,*
    No. C 04-320 MW, at 8-9 (N.D. Cal. Oct. 5, 2005)..........................................11

27

28

- ii -

*U.S. ex rel. Harris v. Alan Ritchey, Inc.*,
  No. C00-2191Z, 2006 WL 3761339 (W.D. Wash. Dec. 20, 2006) ................... 22

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
  461 F.3d 1166 (9th Cir. 2006) ........................................................................ 9, 18

*U.S. ex rel. Hyatt v. Northrop Corp.*,
  91 F.3d 1211 (9th Cir. 1996) .......................................................................... 3, 23

*U.S. ex rel. Lee v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011) .........................................................................passim

*U.S. ex rel. Oliver v. Parsons Co.*,
  195 F.3d 457 (9th Cir. 1999) .............................................................................. 18

*U.S. ex rel. Pilecki-Simko v. Chubb Institute*,
  No. 06-3562, 2010 WL 1994794 (D.N.J. May 17, 2010) ................................. 16

*U.S. ex rel. Saaf v. Lehman Bros.*,
  123 F.3d 1307 (9th Cir. 1997) ............................................................................ 23

*U.S. ex rel. Sanders v. N. Am. Bus Indus., Inc.*,
  546 F.3d 288 (4th Cir. 2008) .............................................................................. 23

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...................................................................... 20, 21

**FEDERAL STATUTES**

20 U.S.C. §1094(a)(20) .......................................................................................... 1, 17

31 U.S.C. § 3729 (2009) ............................................................................................... 9

31 U.S.C. § 3729(a)(1) (2009) .................................................................................... 21

**FEDERAL RULES**

Federal Rule of Civil Procedure 8 ............................................................... 1, 6, 9, 12

Federal Rule of Civil Procedure 9(b) ...................................................................passim

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 15

Federal Rule of Civil Procedure 15(c)(1)(B) ............................................................ 23

**FEDERAL REGULATIONS**

34 C.F.R. § 668.14(b)(22)(i)(B) (2011) ............................................................... 3, 19

34 C.F.R. § 668.14(b)(22)(ii)(A) (2010) ...................................................................... 4

67 Fed. Reg. 51723 (Aug. 8, 2002) ........................................................................... 17

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 102-630 (1992) ................................................................................... 17

REPLY IN SUPPORT OF
MOTION TO DISMISS - CV 07-01984 PSG

## NOTICE OF MOTION AND MOTION

TO RELATORS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 2, 2012 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom No. 880, United States Courthouse, 255 East Temple Street, Los Angeles, California 90012, before the Honorable Philip S. Gutierrez, Defendants Corinthian Colleges, Inc. (the "School") and David Moore and Jack D. Massimino (the "Individual Defendants") will, and hereby do, move the Court for an order dismissing all causes of action of the Relators' First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and pursuant to Federal Rule of Civil Procedure 9(b) for failure to allege fraud with sufficient particularity.

This Motion is made on the grounds that Relators have failed to allege with particularity sufficient facts to establish the essential elements of a cause of action under the False Claims Act ("FCA"). First, Relators have not pled any false statement, report, or claim made or caused to be made by the School or the Individual Defendants. Relators allege that the School falsely certified its compliance with a prohibition in the Higher Education Act against paying incentive compensation to admissions representatives. However, the FAC does not and cannot identify any conduct by the School or the Individual Defendants that violated the statutory requirements or the Department of Education regulations in place during the operative time period. Nor does the FAC adequately allege that the School or Individual Defendants knowingly misrepresented that they were compliant with statutory requirements. Because the FAC fails to allege the requisite falsity and scienter, it fails to state a claim under the FCA.

Second, the FAC should be dismissed because it lacks the specificity required by Federal Rule of Civil Procedure 9(b). The FAC relies on generalized allegations about Defendants' purported practices, with no factual detail about who

- 1 -

1    was involved, or where, when, and how the alleged fraud was accomplished.
2    Accordingly, the FAC is insufficiently particular and must be dismissed.

3         Third, the FAC should be dismissed to the extent it relies on conduct
4    predating 2005 because such claims are barred by the statute of limitations.  The
5    FCA provides for a six-year statute of limitations, and the FAC contains no
6    allegations invoking the FCA's tolling provision that would permit Relators to
7    reach farther back.  Accordingly, the FAC fails to state a claim for pre-2005
8    conduct.

9         Finally, Relators' claims against the Individual Defendants must be
10   dismissed because the FAC lacks sufficient detail about the purported role those
11   defendants played in the alleged fraud, and accordingly fails to allege the most
12   basic elements of an FCA claim, as well as to meet the heightened requirements of
13   Federal Rule of Civil Procedure 9(b).

14        This Motion is based upon this Notice of Motion; the attached Memorandum
15   of Points and Authorities; the concurrently filed declarations and Request for
16   Judicial Notice; all pleadings and records on file in this case; and any argument at a
17   hearing of this matter.

18        This Motion is made following the conference of counsel pursuant to Local
19   Rule 7-3, which took place on January 13, 2012.

20
21
22
23
24
25
26
27
28

CORINTHIAN DEFENDANTS' MOT. TO
DISMISS FAC - CV 07-01984 PSG

1

## I.   **INTRODUCTION**

The First Amended Complaint ("FAC") is Relators' second attempt to state a claim under the False Claims Act based on the theory that Corinthian Colleges, Inc. ("the School") falsely certified its compliance with a law prohibiting the payment of "any commission, bonus or other incentive payment" to admissions representatives based on their "success in securing enrollments."  20 U.S.C. §1094(a)(20).  This Court dismissed the original complaint with prejudice, and while the Ninth Circuit agreed that Relators failed to state a claim, it gave Relators a second chance to plead their case.  The FAC not only fails to cure the defects in the original complaint, but highlights why this lawsuit should be dismissed.  As the FAC makes clear, Relators hope to embark on a fishing expedition that spans more than a decade and covers every one of the 100 campuses operated by the School, even though Relators can neither explain how the School allegedly violated the law, nor provide any details about the alleged fraud.  Rules 8 and 9(b) preclude this result and mandate dismissal.[1]  Moreover, Relators' opportunistic attempt to expand the scope of this case from the two-year period covered in the initial complaint (2005-2007) to the decade between 2000 and the present is barred by the False Claims Act's statute of limitations.

The first, and most fundamental, flaw in the FAC is that it does not identify any conduct by the School inconsistent with the incentive compensation ban, and therefore does not allege two of the required elements of a cause of action under the False Claims Act:  a false statement, made with scienter.  Central to the FAC is the claim that the School operated outside of a regulatory "Safe Harbor" that permitted schools to adjust salaries for admissions personnel up to twice a year, so long as those adjustments were not based "solely" on the number of students enrolled.

_____

[1] "Rules" refers to the Federal Rules of Civil Procedure, unless noted otherwise.

- 1 -

1   (FAC ¶¶ 24, 33-37.)  However, the FAC fails to explain how the School

2   purportedly failed to comply with the Safe Harbor.  As the FAC acknowledges, the

3   School had a written program that defined the eligibility requirements for a salary

4   increase.  (*Id.* ¶ 14.)  Under that program, to get a raise, an admissions

5   representative had to enroll a specified number of students, and also (1) obtain at

6   least a "Good" performance rating based on fifteen distinct factors; and (2) satisfy

7   eighteen different "Minimum Standards of Performance."  The FAC addresses only

8   the performance rating, claiming that "in practice," a "Good" or "Excellent" rating

9   depended "solely" on the number of "leads" the employee "converted" to

10  enrollments (*id.* ¶¶ 13-15).  This claim is unsupported, but even if accepted as true

11  it does not help Relators, because the FAC alleges no facts whatsoever about the

12  Minimum Standards of Performance.  It therefore fails to raise a plausible inference

13  that those standards did not supply an additional basis, besides just enrollments, for

14  adjusting compensation.  Because Relators "do not allege any facts regarding the

15  meaning or basis" of a compensation requirement that on its face does not relate to

16  enrollments, "the Complaint falls short of stating a *plausible* claim for relief."  *U.S.*

17  *ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 994 (9th Cir. 2011).

18        The FAC also fails to allege any conduct inconsistent with the law and

19  regulations in place when the Safe Harbor was not in effect.  The FAC alleges an

20  "ongoing fraud . . . from 2000 continually through the present" (FAC ¶ 11), but the

21  Safe Harbor to which its allegations are directed was effective between November

22  1, 2002 and July 1, 2011.  The FAC does not purport to allege a violation of the

23  incentive compensation ban separate and apart from the Safe Harbor, nor could it.

24  Even before the Safe Harbor's enactment, the legislative history, statutory text, and

25  written guidance from the Department of Education ("DOE") made clear that the

26  ban on paying a "commission, bonus, or incentive" did not preclude *salary-based*

27  pay that accounted in some part for performance.  And the regulation that replaced

28  the Safe Harbor on July 1, 2011 considers only "multiple" pay adjustments in a

- 2 -

1   calendar year to be prohibited incentive compensation if based on enrollments.  34

2   C.F.R. § 668.14(b)(22)(i)(B) (2011).  The FAC alleges no conduct by the School

3   inconsistent with these provisions.  Having failed to allege a violation of the statute,

4   Relators fail to plead a false statement or scienter.

5        Second, the FAC should be dismissed because it lacks the specificity

6   required by Rule 9(b).  Though Relators purport to allege violations at every School

7   campus over the last decade, the FAC includes no facts about who was involved,

8   and what the School's practices were, at each location over that time.  The FAC's

9   "global indictment of [the School's] business is not enough" to satisfy Rule 9(b).

10  *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 1000 (9th Cir. 2010).

11       Third, all claims under the FAC based on conduct predating 2005 are barred

12  by the statute of limitations.  The False Claims Act requires a relator to file a

13  lawsuit within (1) six years after the alleged violation, or (2) three years after he

14  knows or should know the material facts, whichever is later.  *U.S. ex rel. Hyatt v.*

15  *Northrop Corp.,* 91 F.3d 1211, 1218 (9th Cir. 1996).  Relators allege no facts that

16  would entitle them to toll the statute of limitations under the three-year rule.  And

17  the relation-back doctrine does not assist Relators either, because the original

18  complaint focused on conduct "in 2005 and subsequently," and made no claim

19  based on the time period between 2000 and 2005 that the FAC now, belatedly,

20  attempts to place at issue.  (Compl. ¶ 25.)  Because the FAC was not filed until

21  December 15, 2011, all claims based on conduct prior to 2005 are time-barred.

22       Finally, the FAC's claims against the Individual Defendants must be

23  dismissed, because the FAC includes no facts to support those claims.

24  **II.   FACTUAL AND PROCEDURAL BACKGROUND**

25       **A.   Dismissal of the Initial Complaint**

26       Relators' initial complaint alleged that, "[f]or a period of years, but

27  particularly in 2005 and subsequently," the School violated the Higher Education

28  Act's ("HEA's") incentive compensation ban by disciplining or firing employees

- 3 -

1  who failed to meet enrollment "quotas," and using a "matrix" to give raises based

2  on the number of students enrolled above the "quota." (Compl. ¶¶ 25, 31.)

3       This Court found that the School's alleged "termination of underperforming

4  recruiters" did "not fall under the HEA incentive payment prohibition at issue in

5  this case," because such actions did not constitute "payments" regulated by the

6  statute. (Dec. 4, 2009 Order at 5 (Dkt. No. 66).) The Court also found that the

7  School's alleged compensation plans and practices fell "directly within an HEA

8  'safe harbor' concerning incentive payments," and therefore its statements to the

9  government "could not have been 'false'" or made with scienter. (*Id.* at 4-6.)

10       The safe harbor referenced by the Court provided that the "activities and

11  arrangements that an institution may carry out without violating" the ban on

12  incentive compensation could include:

13       [T]he payment of fixed compensation, such as a fixed annual salary or

14       a fixed hourly wage, as long as that compensation is not adjusted up or

15       down more than twice during any twelve month period, and any

16       adjustment is not based solely on the number of students recruited,

17       admitted, enrolled, or awarded financial aid.

18  34 C.F.R. § 668.14(b)(22)(ii)(A) (2010) (the "Safe Harbor"). The original

19  complaint alleged no facts showing that enrollments were the exclusive factor

20  determining compensation, or that salary adjustments were made more than twice a

21  year. On the contrary, it attached a written compensation program for the School

22  (the "Program") showing that salary adjustments were permitted no more than once

23  every six months and that, to receive a raise, an employee had to not only enroll a

24  specified number of students, but also achieve at least a "Good" rating on her

25  performance evaluation form and meet all "Minimum Standards of Performance."

26  (Compl., Ex. A.) Accordingly, the Court dismissed the initial complaint with

27  prejudice and entered judgment for Defendants. (Dkt. No. 66 at 7-8; Dkt. No. 68.)

28

- 4 -

CORINTHIAN DEFENDANTS' MOT. TO
DISMISS FAC - CV 07-01984 PSG

1

### B.   Relators' Appeal to the Ninth Circuit

2   Relators appealed.  The Ninth Circuit agreed with this Court that the

3   complaint did not identify a plausible violation of the HEA and therefore failed to

4   allege a false statement or scienter.  *Lee*, 655 F.3d at 993-94, 997.  However, the

5   Ninth Circuit found that leave to amend should have been granted—despite

6   Relators' failure to request it—because the panel could "conceive of additional

7   facts" that might support an allegation of a false claim.  *Id.* at 995.

8   *First*, the Ninth Circuit conjectured that "Relators could allege that the

9   Corinthian employee performance rating system is merely a proxy for employee

10   recruitment numbers."  *Id.* at 995.  The Ninth Circuit acknowledged that, in light of

11   the Program's requirement that employees achieve specified performance measures,

12   it "appears that Corinthian's promotion and salary increase system does not rely

13   'solely' on recruitment numbers."  *Id.* at 993.  However, the court "ha[d] no

14   information as to the basis" on which an employee's performance was rated, and

15   noted that if "recruiter performance ratings are awarded on the basis of the number

16   of students that a recruiter enrolls, then this rating system would not in fact provide

17   an *additional* basis on which compensation decisions are made."  *Id.* at 994.

18   *Second*, the Ninth Circuit imagined that Relators might be able to state a

19   claim if they could allege "that the [performance rating] system is based merely on

20   those basic requirements that any employee would be required to meet," such as

21   "showing up on time."  *Id.* at 994-95.  On the other hand, if performance were

22   evaluated based on "concrete, merit-based metrics," such as metrics tied to "student

23   retention, success at recruiting activities, records-keeping, and professionalism," the

24   compensation system could be consistent with the Safe Harbor.  *Id.* at 994 n.6.

25   *Third*, the Ninth Circuit hypothesized that Relators might state a claim if they

26   could allege that, "despite the Compensation Program's purported or documented

27   reliance on something other than recruitment numbers, these salary increases are *in*

28   *practice* determined on the sole basis of recruitment numbers."  *Id.* at 996.

- 5 -

1    In so ruling, the Ninth Circuit confirmed that under Rule 8, "only pleaded
2    *facts* as opposed to legal conclusions, are entitled to assumption of the truth." *Id.* at
3    991 (emphasis added, quotation omitted).  The court also emphasized that any
4    complaint under the False Claims Act must "meet the heightened pleadings
5    requirements of Rule 9." *Id.* at 997.  In particular, with respect to the individual
6    defendants named in the complaint, the court found that Rule 9(b) "undoubtedly"
7    required more than the allegation that those individuals "monitored and approved of
8    the illegal recruiter compensation practices as a means to obtain targeted enrollment
9    levels for the respective Corinthian campuses." *Id.* at 998.  Because the initial
10   complaint provided "no additional detail as to the nature of the Individual
11   Defendants' involvement" and failed to allege, on an individualized basis, their
12   "participat[ion] in certifying HEA compliance to the DOE," it did not sufficiently
13   state a claim. *Id.*  However, the Ninth Circuit concluded that "Relators should have
14   at least one opportunity to add any such facts to the Complaint." *Id.*

15       **C.    The First Amended Complaint**
16   On December 15, 2011, Relators filed the FAC, asserting claims against the
17   School, two individual defendants, and Ernst & Young.  Effectively conceding that
18   Relators cannot state a claim against the School based on its written Program, the
19   FAC instead alleges that the Program was designed to cover up purportedly
20   unlawful compensation practices.  Parroting the Ninth Circuit's opinion, the FAC
21   alleges that "[d]espite the Compensation Program's purported or documented
22   reliance on something other than recruitment numbers, salary increases for
23   recruiters are *in practice* determined on the sole basis of recruitment numbers."
24   (FAC ¶ 50.)  Similarly, the FAC alleges that the School's "recruiter performance
25   rating system is merely a proxy for recruitment numbers."  (*Id.* ¶ 60.)
26       The FAC, however, is notable for what is does *not* allege.  The FAC does not
27   claim that the School conditioned salary increases on meeting requirements that
28   would be expected of any employee, like showing up on time.  And while the FAC

- 6 -

CORINTHIAN DEFENDANTS' MOT. TO
DISMISS FAC - CV 07-01984 PSG

1    recites that the School "in practice" compensated employees based "solely" on
2    enrollments, the few *facts* it alleges do not support that claim.

3        The FAC alleges that "categories" of recruiters were paid based on specified
4    enrollment "quotas," but those allegations are no different in substance than the
5    allegations about "quotas" and "matrices" made in the initial complaint, which both
6    this Court and the Ninth Circuit found to be deficient.  (*Compare* FAC ¶¶ 13-14, 17
7    *to* Compl. ¶¶ 31-32.)  Similarly, the FAC echoes the allegation from the initial
8    complaint, also found to be insufficient, that the School "monitors" enrollments and
9    that employees who "fail[] to meet their quotas are disciplined, demoted, or
10   terminated," or suffer other adverse employment consequences like being assigned
11   fewer "leads."  (*Compare* FAC ¶¶ 15-17, 41-46, 52-55 *to* Compl. ¶¶ 31-32.)

12       The only new, factual allegations in the FAC regarding the School's
13   compensation practices are found in paragraphs 14, 15, and 60, and relate to the
14   "Good" and "Excellent' performance ratings that were used to determine eligibility
15   for a salary increase.  Specifically, in describing how the School "in practice"
16   implemented its written Program, paragraphs 14 and 15 of the FAC allege:

17            14. . . . [The School's] compensation program indicates that it
18       grades recruiters as "Good" and "Excellent" based on factors other
19       than enrollment numbers.  [The School] intentionally and knowingly
20       designed its Compensation Program to show "Good" versus
21       "Excellent" factors and ratings for the purpose of concealing [the
22       School's] violations of the Incentive Compensation Ban and
23       Regulatory Safe Harbor.  The "Good" versus "Excellent" quality
24       ratings are a smoke screen used to disguise the fact that its recruiters
25       are compensated solely based on recruitment, admission, and
26       enrollment numbers.  [The School] acted with fraudulent intent and did
27       not, in good faith, rely on the Safe Harbor Provisions.

28

- 7 -

CORINTHIAN DEFENDANTS' MOT. TO
DISMISS FAC - CV 07-01984 PSG

1        15.  Each student inquiry . . . is labeled as a "Lead". . . . [The

2        School] keeps a running total of every recruiter's "lead-to-conversion

3        ratio" ("L-C Ratio").  The L-C Ratio is a calculation performed daily

4        by [the School's] marketing department showing the number and

5        percentage of Leads that have enrolled by every recruiter at [the

6        School]. . . . The L-C Ratio is the calculation used to determine the

7        recruiters' "Good" versus "Excellent" rating, and is calculated based

8        solely on the numbers of students who enroll at [the School].

9  Similarly, paragraph 60 of the FAC alleges:

10        The "Good" or "Excellent" ratings for recruiters were based solely on

11        the recruiters' L-C Ratio, *i.e.,* the recruiters' success in securing

12        enrollments, calculated as the number of Leads that were converted to

13        enrollments.  [The School's] rating system for recruiters was nothing

14        more than a calculation of the recruiters' enrollment percentage.  [The

15        School's] recruiter performance rating system is merely a proxy for

16        employee recruitment numbers.

17        These allegations are belied by the School's documented performance ratings

18  system, which measures performance based on fifteen separate factors that are

19  unrelated to enrollments.  (Declaration of Stacy Handley, Ex. A ("Handley Decl.").)

20  Moreover, the FAC nowhere addresses the Program's additional requirement that

21  the employee satisfy all "Minimum Standards of Performance" (the "Minimum

22  Standards") in order to be eligible for a salary increase.  Probably because the

23  Minimum Standards demonstrate the School's compliance, Relators never mention

24  them, much less allege they had anything to do with enrollment numbers.

25        The FAC also fails to allege facts relevant to all of the time periods it

26  purports to put at issue.  The FAC covers the time period "from July 1, 2000 to the

27  present" (FAC ¶ 38; *see also id.* ¶ 11), but its specific factual allegations relate to

28  the Safe Harbor, which was not in effect prior to 2002, and was superseded by new

CORINTHIAN DEFENDANTS' MOT. TO
DISMISS FAC - CV 07-01984 PSG

regulations on July 1, 2011.  (*See, e.g., id.* ¶ 88 (alleging that "[f]rom 2000 to 2010" the School "was not compliant with Title IV of the HEA and its associated Safe Harbor regulations"); *id.* ¶ 14 (alleging that "Good" and "Excellent" ratings were designed to "conceal[]… violations of the Incentive Compensation Ban and Regulatory Safe Harbor"); *id.* ¶ 58 (alleging that the School's "recruiter compensation system … did not qualify for safe harbor protection"); *id.* ¶ 63 (the School "engaged in practices designed to obscure the fact that … salaries were not 'fixed' as required by the Safe Harbor Provisions"); *id.* ¶¶ 14, 47-49, 59 (alleging that the School knew it did not satisfy the Safe Harbor).)  The FAC does not allege a violation of the HEA unrelated to the Safe Harbor.  And in fact, the School's practices as generically alleged in the FAC were consistent with both the statute and regulatory guidance during time periods when the Safe Harbor was not in operation.

## III.   **ARGUMENT**

### A.   **Legal Standards**

The basic elements of a cause of action under the False Claims Act have not changed since the original complaint was filed, nor have the standards by which the complaint must be judged.  To state a False Claims Act claim, Relators must still allege "(1) a false statement or fraudulent course of conduct; (2) made with scienter; (3) that was material, causing; (4) the government to pay out money or forfeit moneys due."  *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).[2]  And they must still plead facts sufficient to satisfy not only Rule 8, but also the heightened requirements of Rule 9(b).  *Lee*, 655 F.3d at 992.

The Supreme Court has prescribed a "two-pronged approach" for evaluating a complaint under Rule 8.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-

---

[2] The False Claims Act has been amended since the initial complaint was filed, but it still requires a false statement made with scienter.  *See* 31 U.S.C. § 3729 (2009).

CORINTHIAN DEFENDANTS' MOT. TO
DISMISS FAC - CV 07-01984 PSG

50, 173 L. Ed. 2d 868 (2009).  First, because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim, a court must determine whether the complaint pleads *facts* in support of the claims asserted.  *Id.* at 1949.  Allegations of legal conclusions "are not entitled to [an] assumption of truth."  *Id.* at 1950.  A plaintiff cannot survive a motion to dismiss by relying on "labels and conclusions." or "naked assertions" in the complaint.  *Id.* at 1949.

Second, to the extent the complaint alleges facts, as opposed to conclusions, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 1950.  A claim has "facial plausibility" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949.  The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* Where a complaint pleads facts that are "merely consistent with" liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*

Because the FAC alleges fraud, it must also satisfy Rule 9(b)'s requirement that "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In other words, the FAC "must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity."  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

## B.     The FAC Fails to Allege a False Statement or Scienter

As with the original complaint, the FAC purports to allege that Defendants made false statements to the government about the School's compliance with the incentive compensation ban.  But the FAC fails to identify a plausible violation of that prohibition, and therefore fails to allege both a false statement and scienter.

- 10 -

1      1.     Adverse Employment Actions Do Not Violate the HEA

In the FAC, Relators repeat the allegation that the School "monitored" enrollments and "disciplined, demoted, or terminated" employees based on low enrollment numbers. (FAC ¶¶ 15, 17, 41, 44, 46.) The Ninth Circuit has made clear, however, that "adverse employment actions, including termination, on the basis of recruitment numbers remain permissible under the statute's terms" and "[do] not support the claim that a false statement was made." *Lee,* 655 F.3d at 992-93. Because the incentive compensation ban "prohibits only a particular type of incentive *compensation*," *id.* at 992 (emphasis added), the FAC fails to state a claim based on its allegations of adverse employment actions.

      2.     The FAC Fails to Allege Any Practice by the School Inconsistent with the Safe Harbor

The FAC also attempts to allege that the School "violat[ed] … the Regulatory Safe Harbor" by compensating admissions representatives based "solely" on enrollments. (FAC ¶¶ 14-15.) The only alleged facts on which this claim rests, however, do not indicate a plausible violation of the Safe Harbor.

      a.     *The FAC's Conclusory Statements Must Be Disregarded*

Despite its length, the FAC consists mostly of conclusory allegations, which are not entitled to an assumption of truth on this motion. *Iqbal*, 129 S. Ct. at 1950. For example, the FAC repeatedly incants that the School "in practice" paid recruiters based "solely" on the number of students enrolled, in violation of the Safe Harbor. (FAC ¶¶ 12-17, 37-43, 45, 50-51.) The addition of a single word to the original complaint that merely mirrors the language of the Safe Harbor amounts to no more than a "[t]hreadbare recital[] of [an] element[] of a cause of action" and "do[es] not suffice" to state a claim. *Iqbal,* 129 S. Ct. at 1949; *see also U.S. ex rel. Bott v. Silicon Valley Colls.*, No. C 04-320 MW, at 8-9 (N.D. Cal. Oct. 5, 2005) (attached), *aff'd*, 262 Fed. Appx. 810, 2008 WL 59364 (9th Cir. 2008) (unpublished) (dismissing with prejudice amended complaint filed by the same

CORINTHIAN DEFENDANTS' MOT. TO
DISMISS FAC - CV 07-01984 PSG

1   relators' counsel that simply inserted the word "solely" throughout, in an attempt to

2   allege conduct outside the Safe Harbor).

3         Similarly, Relators cannot satisfy Rule 8 simply by copying the language of

4   the Ninth Circuit's opinion into their FAC.  The FAC's allegations that the School's

5   practice was inconsistent with its written Program, or that its performance ratings

6   were a "proxy" for enrollments (FAC ¶¶ 50-51, 60, 63), are "naked assertions"

7   drawn directly from the Ninth Circuit opinion, and are not entitled to an assumption

8   of truth.  *Iqbal,* 192 S. Ct. at 1949; *Hamrick v. Lewis*, 515 F. Supp. 983, 986 (N.D.

9   Ill. 1981), *overruled on other grounds as recognized by Dumas v. Chi. Housing*

10  *Auth.*, 930 F. Supp. 1238 (N.D. Ill. 1996) (plaintiff "must do more than merely …

11  copy conclusory language from assorted decisions of other courts in which [similar]

12  claims have been upheld"); *Gatdula v. CRST Van Expedited, Inc.*, No. CV 11-

13  072585 VAP (OPx), 2011 WL 3652491, at *7 (C.D. Cal. June 3, 2011) (allegation

14  that defendant maintained an unlawful "use it or lose it" policy for vacation pay

15  failed to satisfy Rule 8, because "[a]side from parroting language from the statute

16  and relevant case law," the plaintiffs "fail to allege what the policy was or how it

17  deprived them of their vacation pay"); *Curry v. Ellis County*, No. 3:08-CV-1675-L,

18  2009 WL 2365453, at *4 (N.D. Tex. Jul 31, 2009) (dismissing complaint where

19  plaintiff "has done no more than parrot the buzz words and language from the

20  standard the court set forth in its earlier opinion").  Relators must plead facts, not

21  conclusions, and the only facts alleged in the FAC fail to state a plausible violation

22  of the Safe Harbor.[3]

23  _____

24

25  [3] Buried in the FAC is a new allegation that Directors of Admission ("DOAs"), who
    allegedly "serve as the recruiting manager[s]," were compensated based "solely on
26  the number of students who enroll at [their] campus."  (FAC ¶¶ 45, 38.)  Other than
    this fleeting reference, the FAC includes no factual allegations about how DOAs (as
27  opposed to the admissions representatives they supervise) are paid.  The allegations
    about DOAs' compensation are insufficient to state a claim.  *Iqbal*, 129 S. Ct. at
28  1949.

CORINTHIAN DEFENDANTS' MOT. TO
DISMISS FAC - CV 07-01984 PSG

b.     *The FAC Fails to Raise a Plausible Inference That Salary Adjustments are Based Solely on Enrollments*

The only new facts in the FAC regarding the School's compensation practices relate to how the School assigned the "Good"/"Excellent" performance ratings necessary to achieve a salary increase.  Even if those ratings depended solely on enrollment numbers (which they did not), the FAC does not state a plausible claim for relief because the School's Compensation Program requires an admissions representative to fulfill numerous additional, non-numerical requirements before being eligible for a salary adjustment.

Although the Compensation Program is not attached to the FAC, it was attached to the original complaint, and the FAC repeatedly references the Program and its written requirements.  (FAC ¶¶ 39, 50, 51.)  Accordingly, the Court may consider the Program's contents.  *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (doctrine of incorporation by reference permits court to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading").  As the Program makes clear, in addition to enrolling a minimum number of students, the employee must also *both* obtain a minimum "Good" rating *and* "[s]uccessfully achieve all of the Minimum Standards of Performance" to "be eligible for promotion" to the next salary level.  (Compl., Ex. A at 1, 3, 5, 7, 9.)

The FAC alleges that "Good" and "Excellent" ratings depend exclusively on a "L-C ratio" calculated by the number of "leads" converted to enrollments (FAC ¶ 15), but this claim is contradicted by documents constituting the "performance rating system" referenced in the FAC (*id.* ¶ 60).  The Court "need not accept as true allegations contradicting documents that are referenced in the complaint," *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008), and as the documented performance rating system reflects, "Good" and "Excellent" ratings were not based

- 13 -

1   on the "L-C ratio" at all, but rather on fifteen performance metrics unrelated to

2   enrollment numbers.  Those metrics addressed whether the employee "effectively

3   deals with difficult situations," is "responsive to customers' . . . needs and issues,"

4   "consistently demonstrates initiative," and similar qualitative measures.  (Handley

5   Decl., Ex. A.)  Because a "Good" rating "is based upon substantive requirements

6   that are separate and distinct from recruitment numbers," the FAC does not state a

7   plausible violation of the Safe Harbor.  *Lee*, 655 F.3d at 994.

8          But even if the FAC's allegations about performance ratings were accepted

9   as true, the FAC must still be dismissed.  That is because achieving *all* Minimum

10  Standards was *also* required for a salary increase, and Relators do not explain the

11  "meaning or basis" of the Minimum Standards, or "what an employee must do to

12  achieve" those standards.  *Id.* at 994.  The FAC includes no facts whatsoever

13  regarding the Minimum Standards—let alone facts that would bring the FAC's

14  allegations within one of the three scenarios the Ninth Circuit suggested might be

15  sufficient to state a claim.  The FAC does not allege any facts showing that the

16  Standards were "merely a proxy" for enrollment numbers; or that they reflected no

17  more than "those basic requirements that any employee would be required to meet";

18  or that "in practice" the standards were judged "on the sole basis of recruitment

19  numbers."  *Id.* at 995-96.  Because the FAC fails to allege any facts indicating that

20  the Minimum Standards did not supply an additional basis beyond enrollment

21  numbers for adjusting compensation, the FAC "falls short of stating a *plausible*

22  claim for relief."  *Id.* at 994.

23         Indeed, Relators *cannot* allege that the Minimum Standards resulted in de

24  facto compensation based solely on enrollment numbers.  Although the Minimum

25  Standards are not attached to or referenced in the FAC, the Court may consider

26  them because they are an integral part of the written Program that Relators claim

27  the School used to cover up its allegedly illegal practices.  *See Knievel v. ESPN*,

28  393 F.3d 1068, 1076 (9th Cir. 2005) (documents necessary to understand alleged

- 14 -

CORINTHIAN DEFENDANTS' MOT. TO
DISMISS FAC - CV 07-01984 PSG

defamatory material in the complaint could be considered on motion to dismiss); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006) ("[I]f a plaintiff's claims are predicated upon a document, the defendant may attach the document to his Rule 12(b)(6) motion, even if the plaintiff's complaint does not explicitly refer to it.").

The Minimum Standards articulated eighteen distinct requirements for admissions representatives, only three of which related to enrollment numbers. (Handley Decl., Ex. B.)  The other standards required employees to, *inter alia*:

- Take and return inquiry calls from all potential students, and provide "accurate information about the programs including entrance requirements, curricula and academic standards";
- "Accurately classify" and "account for all inquiries," and "[c]omplete all required forms" and "paperwork";
- Schedule appointments and follow up with prospective students who fail to schedule or show for an interview;
- "Comply with governmental regulations and standards of accreditation as they relate to enrolling students";
- "Utilize an approved telephone presentation and interview procedure" and adhere to the School's policy in conducting interviews;
- "Enroll students who meet eligibility requirements as published in the college's catalog"; and
- "Develop and implement plan for generating referrals" and leads that "result[s] in an acceptable number of referrals" and is sufficient to meet the Representative's "performance goals."

(*Id.,* Ex. B.)  The Minimum Standards were not a "proxy" for enrollments, nor did they merely cover basic requirements expected of any employee. *Lee,* 655 F.3d at 995.  The great majority of them were non-numerical, "concrete, merit-based

- 15 -

metrics" similar to those in *U.S. ex rel. Pilecki-Simko v. Chubb Institute*, No. 06-3562, 2010 WL 1994794 (D.N.J. May 17, 2010), which the Ninth Circuit indicated *would* fall within the Safe Harbor.  *Lee*, 655 F.3d at 994 n.6.

The school in *Pilecki-Simko* employed a "point-based compensation policy that awarded cumulative points for not only enrollment starts, but also student retention, success at recruiting activities, records-keeping, and professionalism." *Id.*  The Minimum Standards likewise required the employee to fulfill record-keeping requirements (*see* Handley Decl, Ex. B, Minimum Standard No. 3 ("Accurately classify all inquiries by the appropriate media source and account for all inquiries"); *id.* No. 11 ("Complete all required forms for enrollment"; "ensure that financial aid packaging is complete"); *id.* No. 14 ("Insure that all pre-start paperwork is completed"); *id.* No. 15 ("Keep all required reports current and accurate")), and demonstrate success at recruiting activities (*id.* Nos. 10-12 (requiring "a reasonable conversion rate" at all stages of the process, and a plan for generating leads and referrals)).

Moreover, far from requiring the enrollment of as many students as possible, the Minimum Standards mandated compliance with all regulations and policies related to enrolling students and discussing financial aid, and required all admissions representatives to ensure that prospective students met eligibility requirements.  (*Id.* Nos. 5, 7, 9, 17.)  In other words, the Minimum Standards imposed "substantive requirements that [were] separate and distinct from recruitment numbers," and went beyond "basic performance requirements that are expected of any employee."  *Lee*, 655 F.3d at 994.

Because Relators do not, and cannot, allege that the Minimum Standards resulted in compensation based only on enrollments, the FAC fails to state a plausible violation of the Safe Harbor.  Consequently, it does not allege a false statement by the School about its compliance with applicable laws and regulations, or that the School knew its statements of compliance were false when made.

CORINTHIAN DEFENDANTS' MOT. TO
DISMISS FAC - CV 07-01984 PSG

3.     <u>The FAC Fails to Allege Any Practice by the School Inconsistent with the HEA Prior to the Safe Harbor's Enactment</u>

For similar reasons, although it purports to cover the time period "from 2000 to the present," the FAC fails to allege a knowing violation of the HEA prior to the enactment of the Safe Harbor on November 1, 2002.

Prior to November 1, 2002, the statute, its legislative history, and written guidance from the DOE all indicated it would be permissible to adjust salaries based on merit provided other factors were taken into account.  The statute prohibits schools from awarding "any *commission*, *bonus*, or other *incentive payment* based directly or indirectly on success in securing enrollments" to admissions personnel, 20 U.S.C. § 1094(a)(20) (emphasis added), but it does not forbid a school from paying admissions representatives a salary or generally giving them raises.  Indeed, the HEA's legislative history reveals that the statute was not intended to prevent all merit-based compensation simply because it was based on enrollment activity.  As the conference committee emphasized, "that use of the term 'indirectly' does not imply that schools cannot base employee *salaries* on merit.  It does imply that such compensation cannot *solely* be a function of the number of students recruited, admitted, enrolled, or awarded financial aid."  H.R. Rep. No. 102-630, at 499 (1992) (emphasis added); *see* 67 Fed. Reg. 51723 (Aug. 8, 2002) (quoting conference committee report).

In written guidance issued prior to the Safe Harbor's enactment, DOE confirmed that salary adjustments based on factors in addition to enrollment numbers would be permissible.  For example, in April of 1996, DOE stated that bi-annual adjustments to salary-based pay would be permissible if based on qualitative and quantitative factors, an interpretation formally adopted with the Safe Harbor's enactment in 2002.  (*See* Request for Judicial Notice.)  Thus, even before the Safe Harbor was enacted, neither the statute nor the department responsible for its

- 17 -

1  enforcement suggested that salary adjustments based *in part* on enrollment numbers

2  were prohibited.  Precisely the opposite was true.[4]

3     Because the FAC fails to state a plausible claim that the School paid

4  employees based solely on enrollments, it does not state a violation of the HEA

5  prior to the Safe Harbor's enactment.  For similar reasons, the FAC fails to allege

6  scienter with respect to that time period.  Because the legislative history, the

7  statutory text, and DOE guidance indicated it would be permissible to adjust

8  salaries based on merit provided enrollment numbers were not the exclusive reason

9  for the adjustment, Relators cannot show a knowing violation of the statute in the

10  absence of allegations raising a plausible inference that enrollments alone

11  determined compensation for admissions representatives.  *U.S. ex rel. Oliver v.*

12  *Parsons Co.*, 195 F.3d 457, 464 (9th Cir. 1999) (defendant's "good faith

13  interpretation" of the law "forecloses the possibility that the scienter requirement is

14  met"); *Hendow*, 461 F.3d at 1174 ("[I]nnocent mistakes, mere negligent

15  misrepresentations and differences in interpretations are not sufficient for [FCA]

16  liability to attach.") (internal quotation marks omitted).

17           4.    The FAC Fails to Allege Any Practice by the School
18                 Inconsistent with the Current Regulation

19     The FAC also fails to allege a current violation of the HEA.  Although

20  Relators claim that the School made false statements "from 2000 to the present,"

21  the FAC's allegations are premised entirely on the claim that the School acted

22  outside of the Safe Harbor, which was superseded effective July 1, 2011.  The FAC

23  nowhere alleges a violation of the current regulation—which is not surprising given

24

25  _____

26

27  [4] Relators appear to acknowledge as much.  The FAC does not distinguish between
    time periods when the Safe Harbor was in effect, and it attempts to build a case
28  around the claim that enrollments were the "sole" basis for salary adjustments.

- 18 -

1    that Relators have not worked for the School since 2006 and 2009, respectively, and

2    have no apparent knowledge of the School's current practices.  (FAC ¶¶ 2-3.)

3         The current regulation provides that "multiple adjustments to compensation

4    in a calendar year" will be considered prohibited incentive compensation if they are

5    "based in any part, directly or indirectly, upon success in securing enrollments or

6    the award of financial aid."  34 C.F.R. § 668.14(b)(22)(i)(B) (2011).  Relators do

7    not allege that *any,* let alone "multiple," adjustments were made to the salaries of

8    admissions representatives in the calendar year 2011, since the new regulation took

9    effect.  The FAC's allegation that employees were paid based on enrollments

10    therefore does not state a violation of the current regulation.  And it certainly does

11    not plead scienter, given that only "multiple" adjustments per year based on

12    enrollment numbers are "considered" to violate the HEA under the regulation.  *Id.*

13         The allegations in the FAC also make no sense under the School's current

14    program, which the Court may consider because the School's written programs are

15    incorporated by reference into the FAC.  *See supra,* Section III.B.2.b.  Currently, an

16    admissions representative's eligibility for a pay increase depends on an annual

17    performance rating, which is based on (1) quarterly tests of the employee's

18    knowledge of the School's program and catalog, processes and procedures, and

19    compliance; (2) twice-monthly observations by a manager to evaluate adherence to

20    the interview guide, active listening skills, and rapport with prospective students;

21    and (3) online satisfaction surveys completed several times a month by prospective

22    students (whether enrolled or not) who evaluate on a scale of 1 to 10 the ease of

23    working with the employee, whether the employee made them feel comfortable

24    sharing sensitive information, and whether the employee explained the process and

25    addressed their concerns, among other things.[5]  (Handley Decl., Ex. C.)  *None* of

26

27

28    [5] A promotion to the next salary level depends on an additional tenure requirement.

- 19 -

1    these requirements relate in any way, directly or indirectly, to enrollment numbers.

2    The FAC's allegations plainly relate to an earlier version of the written Program

3    and make no sense in light of the current system.  How (or if) Relators believe the

4    School currently violates the incentive compensation ban is a mystery.

5         Because the FAC fails to allege a violation of the HEA's incentive

6    compensation ban or any of the regulations implementing that ban, it fails to allege

7    a false statement or that the School or Individual Defendants acted with scienter.

8         **C.   <u>The FAC Does Not Meet the Specificity Requirements of Rule 9(b)</u>**

9         The FAC should be dismissed for the additional reason that it fails to satisfy

10   Rule 9(b).  Rule 9(b) operates to "deter the filing of complaints as a pretext for

11   discovery of unknown wrongs, to protect defendants from the harm that comes

12   from being subject to fraud charges, to prohibit plaintiffs from unilaterally

13   imposing upon the court, the parties and society enormous social and economic

14   costs absent some factual basis."  *Bly-Magee v. California,* 236 F.3d 1014, 1018

15   (9th Cir. 2001).  Relators, based on their limited experience working for "periods of

16   time" at no more than three School campuses (FAC ¶¶ 2-3),[6] accuse the School of a

17   purported fraud spanning more than a decade and covering all of the School's 100

18   campuses.  (*Id.* ¶¶ 4, 16.)  Rule 9(b) requires more before Relators can unlock the

19   doors to discovery on allegations of such breathtaking scope.

20        Under Rule 9(b), Relators must allege the "who, what, when, where, and

21   how" of the alleged fraud.  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106

22   (9th Cir. 2003).  The FAC must "be specific enough to give defendant[s] notice of

23   the particular misconduct . . . so that they can defend against the charge and not just

24   deny that they have done anything wrong."  *Id.*  Generalized allegations that a

25   defendant acted contrary to its certification of compliance with a law or regulation,

26

27

28
[6] Relator Mshuja was not even a School employee.  He independently contracted to
worked as a test proctor, and had no role in student admissions.  (FAC ¶ 3.)

- 20 -

1    which fail to identify the people involved in the allegedly unlawful practice, or

2    where and when it took place, fail to satisfy Rule 9(b).  *Ebeid*, 616 F.3d at 1000.

3    "A global indictment of [the defendant's] business is not enough."  *Id.*

4         As discussed above, the FAC fails to specify what the School's practices

5    were or how they were implemented relative to the distinct regulations in place

6    before and after the Safe Harbor.  Worse, the FAC includes internally inconsistent

7    allegations about the relevant time period.  The FAC purports to cover the time

8    period from 2000 to the present.  But the causes of action in the FAC reference

9    sections of the False Claims Act that were renumbered and amended in 2009,

10   suggesting that Relators' claims are limited to conduct prior to 2009.  *See* 31 U.S.C.

11   § 3729(a)(1) (2009).  Even more confusingly, the FAC elsewhere states that

12   "[f]rom 2000 *to 2010*" the School certified its compliance with the HEA, "when in

13   fact" it "was not compliant with Title IV of the HEA and its associated Safe Harbor

14   regulations."  (FAC ¶ 88 (emphases added).)  The FAC's vague and confusing

15   allegations about the relevant time frame lack the precision required to give notice

16   of the "particular misconduct" alleged to constitute fraud.  *Vess*, 317 F.3d at 1106.

17        The FAC is also hopelessly uncertain with respect to both geography, and the

18   individuals involved in the alleged fraud.  The FAC's allegations are premised, not

19   on the generally applicable written Program, but on the School's alleged "practices"

20   in implementing the Program.  With respect to those "practices," Relators offer

21   nothing but generalities.  The FAC makes the sweeping assertion that "[t]he

22   practices described [in the FAC] took place at all colleges owned by [the School],"

23   but it fails to differentiate between campuses or offer specific facts about *any*

24   location.  (FAC ¶ 4.)  The FAC does not specify the practice at each campus, or

25   who at each campus implemented the Program, evaluated employees, or made

26   decisions about compensation.  Instead, Relators rely on generalizations and the

27   passive voice, asserting that employees "are … paid," "are awarded," and "are

28   compensated" based on enrollments alone (FAC ¶¶ 13-15), and that "compensation

- 21 -

CORINTHIAN DEFENDANTS' MOT. TO
DISMISS FAC - CV 07-01984 PSG

1    [is] not determined by the hours worked, or hire date, but [is] assessed solely based

2    on the number of students recruited" (*id.* ¶ 63).  The FAC does not identify a single

3    person who "determined," or "assessed" how specific employees would be paid, or

4    where, when, and how any particular assessment occurred.

5           Relators' broad claim that unlawful compensation practices occurred at

6    every campus operated by the School for the last decade falls far short of the

7    specificity required by Rule 9(b).  Courts have repeatedly found such "vague

8    allegations that improper practices took place 'everywhere [the defendant] does

9    business throughout the statutory time period'" insufficient to allege fraud.

10   *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005); *U.S. ex rel. Harris*

11   *v. Alan Ritchey, Inc.*, No. C00-2191Z, 2006 WL 3761339, at *6 (W.D. Wash. Dec.

12   20, 2006) (allegation that fraudulent billing practice described in complaint was

13   "systematic and not limited to" the plant where relator worked failed to satisfy Rule

14   9(b) because relator "failed to allege any details, or involved individuals, or specific

15   information relating to fraud at other plants"); *Sweet v. TMI Mgmt. Sys.*, No. 05-

16   1683 (RBK), 2008 WL 724275, at *3 (D.N.J. Mar. 17, 2008) (complaint that "[did]

17   not identify any persons involved in the alleged fraud or any discrete acts that make

18   up the purported pattern of activity" did not satisfy 9(b)); *Ebeid*, 616 F.3d at 1000

19   (allegation that healthcare defendants implemented an illegal patient referral system

20   across three distinct entities lacked particularity because it failed to identify the

21   doctors who made referrals or their financial relationship with each entity).  The

22   FAC's vague "global indictment" of the School's business "is not enough."  *Id.*

23        **D.    The Statute of Limitations Bars All Claims Based on Alleged**
24        **Violations Occurring Before 2005**

25          The False Claims Act requires a relator to file a lawsuit within (1) six years

26   after the alleged violation, or (2) three years after he knew or reasonably should

27

28

                                    - 22 -
                                              CORINTHIAN DEFENDANTS' MOT. TO
                                              DISMISS FAC - CV 07-01984 PSG

1  have known the material facts, whichever is later.  *Northrop,* 91 F.3d at 1218.[7]

2  Here, Relators allege violations going back to July 1, 2000 (FAC ¶¶ 38, 88), but

3  because the FAC was not filed until December 15, 2011, Relators' claims would,

4  absent tolling under the three-year rule, be limited to post-2005 conduct.

5        Despite asserting claims that are untimely on their face, Relators fail to

6  invoke the False Claims Act's tolling provision, much less "make the requisite

7  tolling allegations."  *U.S. ex rel. Saaf v. Lehman Bros.*, 123 F.3d 1307, 1308 (9th

8  Cir. 1997) (per curiam).  Those allegations must address when Relators learned of

9  the material facts and why they should not reasonably have discovered them earlier.

10  *See Moore v. Navarro*, No. C 00-03213 MMC, 2004 WL 783104, at *3-4 (N.D.

11  Cal. Mar. 31, 2004) (dismissing complaint where relator failed to address these two

12  points).  Because the FAC makes no such allegations, Relators' claims must be

13  dismissed to the extent they rely on alleged pre-2005 violations.

14        Relators cannot save these claims by arguing that they relate back to the date

15  on which the original complaint was filed, in March 2007.  The relation-back

16  doctrine applies only if the claims in the amended pleading "arose out of the

17  conduct, transaction, or occurrence set out—or attempted to be set out—in the

18  original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  The two pleadings must "share a

19  common core of operative facts sufficient to impart fair notice of the transaction,

20  occurrence, or conduct called into question."  *Martell v. Trilogy Ltd.*, 872 F.2d 322,

21  327 (9th Cir. 1989).  Relators' original complaint addressed conduct "in 2005 and

22  subsequently," and made no claim based on any time period prior to 2005.  (Compl.

23  ¶ 25.)  "Cases are legion which refuse to allow relation back when the new

24  

25  [7] The majority of circuits disagree with the Ninth Circuit's rule, reasoning that only

26  the government can invoke the tolling provision under the plain statutory language.
    *See, e.g., U.S. ex rel. Sanders v. N. Am. Bus Indus., Inc.*, 546 F.3d 288, 293-94, 296

27  (4th Cir. 2008).  Should this Court apply tolling to determine that Relators' pre-
    2005 claims are not time-barred, the School preserves the right to challenge the

28  Ninth Circuit's interpretation of the statute on appeal.

CORINTHIAN DEFENDANTS' MOT. TO
DISMISS FAC - CV 07-01984 PSG

allegations go beyond the time-frame of the original complaint." *Quaak v. Dexia, S.A.*, 445 F. Supp. 2d 130, 138 (D. Mass. 2006) (citing examples).  Here, the rationale for denying relation back is especially compelling because the purportedly false certifications of HEA compliance pertain to distinct time periods and Program Participation Agreements ("PPAs"), and thus cannot be lumped together with other certifications as part of the same "conduct, transaction, or occurrence." *Cf. Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1134-35 (9th Cir. 2006) (rejecting relation back where later pleading added a second, otherwise identical disclosure violation, because "claims under the Privacy Act are based on the acts of disclosure themselves, each of which is distinct in time and place, if not substance").  Relators' claims arising from the pre-2005 period are therefore time-barred.

### E.   The FAC Fails to State a Claim Against the Individual Defendants

The FAC also fails to state a claim against the two individual defendants. The Ninth Circuit found that the initial complaint (1) failed to allege that the individuals submitted any claim to the government, and (2) failed to plead each individuals' involvement in the alleged fraud. *Lee*, 655 F.3d at 997-98.  The FAC attempts to cure only the first defect, alleging that David Moore and Jack Massimino signed "many" of the PPAs in which the School certified its compliance with the incentive compensation ban.  (FAC ¶¶ 6, 7.)  But with respect to each of their roles in the alleged fraud, the FAC is just as vague as the original complaint.

The FAC alleges that Moore and Massimino both served as executives and board members of the School.  (*Id.* ¶¶ 6, 7.)  It further alleges that Moore was "directly in charge of [the School's] recruiting operations and enrollment practices, and setting Company enrollment targets," and was "primarily responsible for the ramp up in [the School's] enrollments in the period through 2006."  (*Id.* ¶ 6.) Similarly, it alleges that Massimino "had primary responsibility for setting yearly enrollment targets for [the School's] colleges" and "was responsible for implementing the recruiting compensation practices described herein."  (*Id.* ¶ 7.)

- 24 -

1   These allegations do not differ in substance from the initial complaint's claim

2   that the Individual Defendants "monitored and approved of the illegal recruiter

3   compensation practices as a means to obtain targeted enrollment levels for the

4   respective Corinthian campuses," which the Ninth Circuit found insufficient to

5   allege fraud. *Lee*, 655 F.3d at 998. Just as the initial complaint "attribute[d]

6   wholesale all of the allegations against Corinthian to the Individual Defendants,"

7   *id.*, the FAC baldly asserts that Moore and Massimino were "responsible" for and

8   "in charge of" the School's practices, without offering any detail as to how, when,

9   and where they executed that alleged charge. Relators have simply rephrased the

10  conclusory allegations of the initial complaint and asserted them separately against

11  each individual. "Rule 9(b) undoubtedly requires more." *Lee*, 655 F.3d at 998.

12  ## IV.    **CONCLUSION**

13  Relators have returned to this Court seeking to vastly expand the scope of

14  this lawsuit, armed with nothing more than conclusory statements and unfounded

15  speculation about the School's practices. Just like the original complaint, the FAC

16  fails to identify any violation of the Higher Education Act, any false statement

17  about the School's compliance with that statute, or any facts showing that the

18  School and Individual Defendants knowingly submitted false claims to the

19  government. The Ninth Circuit gave Relators a second chance to plead their case,

20  even though Relators never requested this Court's leave to amend. Relators'

21  failure, once again, to state a claim for relief demonstrates they cannot do so. For

22  these reasons, the FAC should be dismissed in its entirety, with prejudice.

23  Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

24  DATED: January 20, 2012

By:   */s/ Blanca F. Young*

25  BLANCA F. YOUNG

Attorneys for Defendants

26  CORINTHIAN COLLEGES INC., DAVID

MOORE, JACK D. MASSIMINO

27

28

- 25 -