1  SCOTT D. LEVY (TEX Bar No. 24000598)
2  **SCOTT D. LEVY & ASSOCIATES PC**
3  1844 Wheeler Street
4  Houston, TX  77004
5  Tel:  (713) 528-5409
6  Fax:  (713) 528-0117
7  Email:  levy.scott@mac.com
8
9  ATTORNEY FOR RELATORS,
10  Nyoka Lee and Talala Mshuja
11
12
13             UNITED STATES DISTRICT COURT
14             CENTRAL DISTRICT OF CALIFORNIA
15                  WESTERN DIVISION
16
17  UNITED STATES OF AMERICA, ex        :
18  Rel. NYOKA JUNE LEE and TALALA      :  Case No.  CV-07-01984 PSG
19  MSHUJA                               :  (MANx)
20                                       :
21                  Plaintiffs,          :
22  VS.                                  :
23                                       :
24  CORINTHIAN COLLEGES, INC.            :
25  ERNST & YOUNG LLP; DAVID MOORE;     :  Hearing:
26  AND, JACK MASSIMINO,                 :
27                                       :  Hon. Philip S. Gutierrez
28                  Defendants.          :  Courtroom No. 790
29                                       :  April 2, 2012
30  _____     :  1:30 p.m.
31
32
33
34        **RELATORS' OPPOSITION TO MOTIONS TO DISMISS**
35  **FIRST AMENDED COMPLAINT BY CORINTHIAN COLLEGES,**
36  **INC., DAVID MOORE AND JACK D. MASSIMINO (DOC. 82),**
37            **AND BY ERNST & YOUNG LLP (DOC. 81)**
38
39
40

# INTRODUCTION

Relators oppose the respective motions to dismiss the First Amended Complaint ("FAC"), and herein file their opposition to Defendants Corinthian Colleges Inc., David Moore, and Jack D. Massimino's Motion to Dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(B)(6) and 9(B) (Doc. 82) ("COCO's brief"), and Defendant Ernst & Young LLP's Motion to Dismiss Relators' First Amended Complaint pursuant to Federal Rules of Civil Procedure 9(B) and 12(B)(6), and Memorandum of Points and Authorities in Support Thereof (Doc. 81) ("EY's brief").  Defendants are attempting to relitigate issues that were squarely decided by the Ninth Circuit in its opinion dated August 12, 2011. Both motions improperly attempt to argue factual disputes before any discovery has been exchanged.  While the Ninth Circuit found minor defects in the original complaint ("Nonetheless, these relatively *minor deficiencies* can be cured through amendment." *Corinthian* at *10740), the Court set forth clear guidelines that have been fully satisfied by Relators' First Amended Complaint ("FAC").  It is axiomatic that Defendants may not re-argue the same positions rejected by the appellate court simply to protact the litigation as these Defendants have done in the subject Motions.  The law of the case doctrine precludes parties from relitigating identical issues.  "Law

of the case is a jurisprudential doctrine under which an appellate court does not reconsider matters resolved on a prior appeal." *Jeffries v. Wood*, 114 F.3d 1484, 1488-89 (9th Cir.1997) (en banc), overruled on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997).   The decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.  *Id.* at 1489 (quoting *Caldwell v. Unified Capital Corp.* (*In re Rainbow Magazine, Inc.*), 77 F.3d 278, 281 (9th Cir.1996)).

With respect to claims against EY, the only additional requirement the Ninth Circuit ordered was an allegation that the false statements made by EY were submitted to the United States.   In response, the First Amended Complaint quotes from the language in EY's reports that the audit opinions were intended for the U.S. Department of Education, to-wit:

> This Report is intended solely for the information and use of the Board of Directors, management, others within the entity and *the U.S. Department of Education* and is not intended to be and should not be used by anyone other that these specified parties. (emphasis in First Original Complaint)

¶ 65, FAC.

> **We conclude that Relators have met their burden under Rule 12(b)(6) and Rule 9(b) as to EY.**

(emphasis added).  *Corinthian* at *10744.

The Ninth Circuit held that the allegations against EY for failing to report liabilities resulting from Corinthian Colleges' non-compliance federal program laws and regulations are open questions requiring further factual development.  A clearer directive for the parties to proceed with discovery could not have been made.

> Here, we can consider the *existence of* the reports identified by EY, since the Complaint expressly refers to and "necessarily relies on" them. Nonetheless, we may not, on the basis of these reports, draw inferences or take notice of facts that might reasonably be disputed. Whether EY is ultimately responsible for certifying Corinthian's compliance with HEA, and whether the Financial Reports they submitted failed accurately to reflect Corinthian's HEA-related liabilities, are open questions requiring further factual development.  At the very least, they are certainly subject to reasonable dispute.  Therefore, while EY's factual assertions with respect to reports cited in Relators' Complaint may ultimately prove true, we will not decide these disputed factual matters at this stage.  Instead, we focus only on the sufficiency of the Relators' allegations.  (emphasis in original).

*Corinthian* at *10743.

With regard to the Jack Massimino and David Moore, the remaining "Individual Defendants" in the case, the Ninth Circuit held that Relators would need to allege that the named individuals "ma[d]e false statements to the United States Government." *Lee* at 10471.

> Furthermore, the Complaint fails to allege that the Individual Defendants had any role in making a false statement to the United States Government.  While it does assert that the individuals monitored Corinthian's recruiter compensation

1  practices, it does not allege that the Individual Defendants
2  participated in certifying HEA compliance to the DOE for the
3  purpose of receiving federal funds.
4
5  *Corinthian* at *10741.  The Ninth Circuit opinion explained that a plausible

6  inference against the Individual Defendants would be asserted if one or more

7  of Corinthian's Board of Directors *oversaw or* actively participated in the

8  alleged fraudulent scheme, *including* making false statements to the United

9  States Government.

10  Relators assert in the FAC that defendants Massimino and Moore

11  executed the statutorily required Program Participation Agreements and

12  submitted them to the United States Government, which was a prerequisite

13  for the Company to receive billions of dollars in student financial aid.  This

14  is exactly what the Ninth Circuit requested.

15  With regard to the claims against Corinthian Colleges, Inc.

16  ("COCO"), the Ninth Circuit held that the deficiencies in Relators' original

17  complaint were *minor*.  Moreover, the Circuit explained that Relators would

18  meet their pleading requirement against COCO by incorporating into an

19  amended complaint the facts already stated in their briefs to the Court.  The

20  ruling identified precisely what facts should be included.

21  Nonetheless, these relatively *minor deficiencies* can be cured
22  through amendment.  Relators repeatedly argue that Corinthian
23  certified compliance with the HEA while knowing it was in fact
24  compensating recruiters based solely on their recruitment

numbers.  Relators further describe how the federal government dispenses HEA funds to educational institutions in accordance with the number of students they enroll and the degree to which Corinthian depends on such funding.  *These facts, if formally alleged,* would *certainly* support an inference that Corinthian acted with fraudulent intent and did not, in good faith rely upon the Safe Harbor Provision.

The Defendants disregarded the Court's holding that the issues presented in the case could not be resolved based on the documents submitted by the Defendants, without discovery into Corinthian's actual operations and implementation of its written policies and plans.  "It is Corinthian's implementation of its policy, rather than the written policy itself, that bears scrutiny under the HEA, and such allegations would require additional discovery."  *Corinthian* at *10737.  A determination of whether Corinthian acted in accordance with the Safe Harbor Provisions requires discovery into facts that are not in evidence at the pleading stage.  "The mere inclusion of this performance rating in Corinthian's Compensation Program, however, does not allow us to conclusively determine whether its method of awarding salary increases falls within the Safe Harbor Provision."  *Corinthian* at *10733.  Contrary to the clear instruction by the Ninth Circuit that the documents by themselves were insufficient as a matter of law, Defendants have employed the very same device and ask this Court to dismiss the FAC based on the documents they have submitted.

1    The Ninth Circuit observed that while the original complaint did not

2    use the term *solely*, it did assert recruiter raises were *based on* and *depend on*

3    the number of students signed up. The FAC asserts that COCO ignores the

4    criteria in its written compensation policy and relies only – "solely" – on the

5    number of students recruited in awarding raises.  In addition to including the

6    allegation that COCO awarded raised based solely on the number of students

7    recruited, the FAC also alleges that COCO deliberately designed its recruiter

8    compensation policy to disguise the fact that the Company's enrollment

9    counselors are compensated on a per-student basis, and that COCO's

10   compensation policy is a proxy for student enrollment numbers.  The only

11   factor COCO *actually* considered in awarding raises to its recruiters was the

12   number of students enrolled.

13   Moreover, the FAC explains that the purported "Good" versus

14   "Excellent" evaluation was determined based on each recruiter's Lead-to-

15   Conversion Ratio, which is a calculation of the percentage of students

16   interviewed by the recruiter who enroll in courses.  Instead of providing the

17   Lead-to-Conversion Ratio documents in its requests to take judicial notice,

18   COCO brings in some other document unrelated form which purports to

19   grade recruiters, and seeks dismiss the FAC on the basis of that document.

20   This is precisely what that the Ninth Circuit rejected in its ruling.

7

# ARGUMENT

Res Judicata and Collateral Estoppel Bar Corinthian's Statute Of Limitations and "Corporate Indictment" Arguments

COCO raises two arguments urging the Court to cut down the scope of the claims in the FAC.  First, COCO asserts that the statute of limitations bars all claims prior to 2005.  Second, COCO takes the position that because Relators have asserted claims relative to practices that occurred at all of COCO's 100 campuses, that it amounts to a "corporate indictment."  COCO fails to apprise the Court that it previously obtained a judgment of dismissal of *United States ex rel. Steven Fuhr v. Corinthian Colleges, Inc.*, No. 07-cv-1157 AG (CWx) (C.D. Cal. July 27, 2009) (Guilford, J.) (Doc. 37 *Fuhr*) by arguing that the instant *Lee* case encompassed all of COCO's campuses from 200 to the present.  Steven Fuhr ("FUHR") was the relator in another False Claims Act suit brought against COCO shortly after the instant *Lee* case was filed.   "FUHR was employed by Corinthian between 2000 and 2005 as a 'student recruiter.'" (Doc. 37 *Fuhr*).  Like the Relators in the instant case, FUHR alleged that COCO violated the HEA recruiter compensation ban.  A third suit was also brought by BACKHUS in the Southern District of Florida.  COCO obtained dismissal of the FUHR lawsuit under the "first-to-file" rule, which bars *qui tam* complaints where another relator has already filed a *qui tam* complaint making the same material allegations of fraud.  *See*

31 U.S.C. § 3730(b)(5).   COCO was awarded judgment based on the assertion that the conduct charged in FUHR's complaint was encompassed by the claims already made in two other lawsuits.   FUHR was a recruiter in one of COCO's Seattle campuses.   BACKHUS was a recruiter in COCO's Tampa, Florida campus.   Both FUHR and BACKHUS alleged that the conduct in question began in 2000.   COCO vigorously argued that both FUHR and BACKHUS overlapped with the allegations in the instant lawsuit brought by Lee and Mshuja.   The FUHR court compared the three lawsuits, and concluded that the *Lee* suit encompassed the same fraud alleged in FUHR and BACKHUS.

> Fuhr's Complaint is brought under the *qui tam* provisions of the False Claims Act.   The statute's "first-to-file" rule bars *qui tam* complaints where another relator has already filed a *qui tam* complaint making the same material allegations of fraud.   *See* 31 U.S.C. § 3730(b)(5); *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001).   To determine whether a relator's complaint violates the rule, a court must compare the relator's complaint with the previously filed complaints.   *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 971 (6th Cir. 2005).   If the previous complaints "allege 'all the essential facts' of the underlying fraud, the earlier filed [] action bars [the later] action, even if [the later] complaint 'incorporates somewhat different details.'" *Id.* (quoting *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.*, 149 F.3d 227, 232-33 (3d Cir. 1998)). … Corinthian argues that the allegations made in Fuhr's Complaint have already been made in two separate lawsuits:  (1) *United States ex rel. Lee, et al. v. Corinthian Colleges, et al.,* United States District Court for the Central District of California, No. 07-1984 (Gutierrez, J.) (filed March 26, 2007); and (2) *Untied*

1   *States ex rel. Backhus v. Corinthian Colleges, Inc., et al.,*
2   United States District Court for the Middle District of Florida,
3   No. 07 civ. 891-T30 (Moody, J.) (filed May 23, 2007).
4
5   Doc. 37 *Fuhr*.  A final judgment was entered on the court's ruling.  *See* Doc.
6   40 *Fuhr*.

7       After carving out a round hole, COCO comes to Court and attempts to
8   pass a square block through it.  The final judgment on the merits of the
9   FUHR action precludes COCO or their privies from relitigating the issue
10  that COCO itself asserted in the FUHR action by the doctrine of res judicata.
11  Once the FUHR court decided the issue of fact or law necessary to its
12  judgment, namely that the allegations brought in the FUHR and the
13  BACKHUS were the same as the instant *Lee* case, that decision precludes
14  relitigation of the issue in a suit on a different cause of action involving a
15  party to the first case under the doctrine of collateral estoppel.  As this Court
16  and other courts have often recognized, res judicata and collateral estoppel
17  relieve parties of the costs and vexation of multiple lawsuits, conserve
18  judicial resources, and, by preventing inconsistent decisions, encourage
19  reliance on adjudication. *Allen v. McCurry*, 449 U.S. at 94. COCO itself was
20  the party who brought the FUHR action.

21      Game over.  The scope of this case has already been adjudged in the
22  FUHR dismissal.  COCO obtained judgment against FUHR, and is bound by

1  the terms of the judgment it procured.  Said judgment was appealed to the

2  U.S. Court of Appeals for the Ninth Circuit.  *See,* Case No. 06-56369.

3  Mandate from the Ninth Circuit was issued on February 25, 2010. (Doc. 47

4  *Fuhr*).  COCO filed a related case notice in the FUHR case pursuant to C.D.

5  Cal. L-R 83-1.3.1, which included a copy of both the original *Lee* complaint

6  and the BACKHUS complaint.  (Docs. 18, 18-2, and 18-3 *Fuhr*).

7       COCO is now estopped to deny that the Relators' Original Complaint

8  and their First Amended Complaint show a common core of operative facts

9  sufficient to impart fair notice of the transaction, occurrence, or conduct

10  called into question.  The allegations regarding a nationwide practice at all

11  100 COCO campuses, beginning in the year 2000, was insisted upon by

12  COCO in the FUHR case.  The argument that Relators are barred from

13  asserting claims prior to 2005 is pre-empted by the FUHR judgment, where

14  both the FUHR complaint and the BACKHUS complaint asserted claims

15  beginning in 2000.

16       In addition, irrespective of the pre-emption of COCO's statute of

17  limitations argument under the res judicata and collateral estoppel doctrines,

18  COCO's statute of limitations argument also fails under Fed. R. Civ. P.

19  15(c).  The case cited by COCO rejects the very argument that COCO has

20  asserted regarding the applicability of the relation-back doctrine applicable

to the original complaint. *Martel v. Trilogy Ltd.*, 872 F.2d 322, 237 (9th Cir. 1989). Rule 15 provides that, as to those parties named in the original complaint, an amendment to a pleading relates back to the date of the original pleading "when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading… ." As *Martel* explained, the test is whether the original complaint asserted any of the facts upon which the new claims are based, not whether the claims themselves were previously stated in the original complaint. "[T]he focus is on the factual commonality, and not on the actual legal claims made." *Martel, id.* at 326. The Rule does "not require adequate notice of the *claims*, but rather of the facts that formed the basis for those claims." *Martel, id., citing Unicure, Inc. v. Thurman*, 97 F.R.D. 1 (W.D.N.Y. 1982).

> Limitation is suspended by the filing of a suit because the suit warns the defendant to collect and preserve his evidence in reference to it. When a suit is filed in federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first sentence.

*Martel, id.,* at 326, *citing Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir. 1944), *cert. denied*, 324 U.S. 878, 89 L.Ed. 1430, 65 S. Ct. 1926 (1945). COCO's statute of limitations argument is completely without substance,

1    independent of the fact that COCO obtained judgment in the FUHR case

2    where it made the complete opposition assertion it now presents to this

3    Court. COCO, moreover, went the Ninth Circuit to protect that judgment.

4          COCO's attempt to bolster its statute of limitations argument on the

5    basis of the dates of Program Participation Agreement, moreover, is

6    completely unsupported by *Oja v. U.S. Corps of Engineers*, 440 F.3d 1122

7    (9th Cir. 2006) under any twist of logic. *Oja* was a defamation action filed

8    under the Privacy Act of 1974 which addressed whether the "single

9    publication rule" barred actions based on later republications of the original

10    defamatory statements. *Oja* makes no mention of the False Claims Act, and

11    has absolutely nothing to do with program participation agreements entered

12    into by private parties receiving program funds from the United States

13    Government.

14    Rule 9(b)

15          COCO also contends that the FAC does not measure up to the

16    heightened pleading requirements for False Claims Act cases under Fed. R.

17    Civ. P. 9(b). COCO urges the Court to disregard the facts pleaded in the

18    First Amended Complaint, and to instead accept as true the facts as stated in

19    COCO's motion to dismiss. COCO requests that the Court rule based on its

20    recruiter evaluation form. COCO's brief, p. 13:10. COCO argues that the

Court should not accept the truth of Relators' allegations that the Company used the recruiters' Lead-to-Conversion Ratio as the only other factor besides enrollment numbers to determine the amount of their raises because, COCO argues, those allegations are contradicted by the documents submitted by COCO which purport to show the Company employed another performance rating system. *See* COCO's brief, p. 13:22.  Contrary to the established rules for evaluating a motion to dismiss, COCO is now asking the Court to confine its analysis to the text of documents COCO has submitted, and worse, to rule based on a five-paragraph declaration from a Stacy Handley, who has never before been identified or presented from deposition.  COCO's attempt to inject ambiguity into an otherwise straightforward rule is best demonstrated by the manner COCO addresses the L-C Ratio allegations in the FAC.  Instead of seeking judicial notice of a document showing COCO's L-C Ratio, COCO has introduced another document entitled "Minimum Standards of Performance," and urges the Court to dismiss the FAC because there is no plausible inference that COCO did not employ these 18 standards in evaluating recruiters.  *See* COCO's brief, p. 2:12.  COCO's reasoning fails to find a place in logic.  "We review dismissals under Rule 12(b)(6) *de novo,* accepting as true all well-pleaded allegations of fact in the complaint and construing them in the light most

1  favorable to the [Relators].” *Zimmerman v. City of Oakland,* 255 F.3d 734,

2  737 (9th Cir. 2001).  COCO is unable to challenge the Relators' allegations

3  about the Lead-to-Conversion Ratio (“L-C Ratio”) criterion for awarding

4  raises on the basis of Rule 9.  COCO instead argues that “[t]his claim is

5  unsupported.” COCO brief, p. 2:10.  The L-C Ratio monitored the number

6  and percentage of leads that were enrolled by every recruiter at COCO.

7  COCO kept a running total of the L-C Ratio of every recruiter at the

8  company.   The L-C Ratio calculation was performed daily.   Instead of

9  asking the Court to take judicial notice of a document showing COCO's L-C

10  Ratio, COCO attempts to introduce by way of judicial notice of an unrelated

11  document entitled “Minimum Standards of Performance,” and urges the

12  Court to dismiss the FAC because there is no plausible inference that the 18

13  standards in said document did not apply.  Coco brief, p. 2:12.

14

15  COCO “Corporate Indictment” Argument Does Not Apply

16      COCO describes Relators' claims as a “global indictment of [the

17  Company's] business. …”  COCO brief, p. 3:9; 21:1.  COCO's own analysis

18  of the issue reveals that it is urging the wrong standard.  COCO argues that

19  Rule 9 requires Relators to identify who conducted the recruiter evaluations,

20  and the dates and places where these recruiter evaluations were performed.

21  The Ninth Circuit instructed that Relators were required to state the

1    *circumstances of fraud* with particularity, but other facts are pleaded

2    generally under Rule 8. (emphasis by the Court).

3           Furthermore, "[i]n alleging fraud or mistake, a party must state
4           with particularity the circumstances constituting fraud or
5           mistake." Fed. R. Civ. P. 9(b). Because they involve
6           allegations of fraud, *qui tam* actions under the FCA must meet
7           not only the requirement of Rule 8, but also the particularity
8           requirements of Rule 9. *See Bly-Magee v. California*, 236 F.3d
9           1014, 1018 (9th Cir. 2001). Notably, Rule 9(b) requires only
10          that the *circumstances of fraud* be stated with particularity;
11          other facts may be plead generally, or in accordance with Rule
12          8. [citations omitted] (emphasis by the Court).

13

14   What constitutes "accusations of moral turpitude" or corporate

15   indictment in a *qui tam* case under Rule is carefully analyzed in *In re*

16   *Natural Gas Royalties Qui Tam Litigation*, 2010 U.S. Dist. LEXIS 64525

17   (10th Cir. 2010).

18          A close examination of the authorities reveals that there are
19          categories of cases in which the courts have applied Rule (9) in
20          an especially strict, almost punitive, manner. Those cases
21          involve allegations of securities fraud and cases arising under
22          the Racketeer Influenced and Corrupt Organizations Act. *See,*
23          *e.g.*, *Farlow*, 956 F.2d 982. This tendency was noted in Wright
24          and Miller, *supra*, § 1297, at 615. The Court is not persuaded
25          that Rule 9(b) should be applied in this stringent manner,
26          particularly where, as here, the plaintiff has attempted to set
27          forth a complex fraudulent scheme rather than an isolated
28          instance of fraud. [citations omitted]

29

30          *In re Natural Gas Royalties Qui Tam Litigation* held that a *qui tam*

31   complaint need not "'recite the evidence or plead detailed evidentiary

32   matter, '" *citing Sunbird Air. Servs. Inc. v. Beech Aircraft Corp.*, 789

16

F.Supp. 364 (D. Kan. 1992).    *In re Natural Gas Royalties Qui Tam Litigation* rejected defendants assertion that Rule 9 required relators to plead his claims in terms of "the specific day, month and year … the specific names of employees … the date of the claimed false statement. … This exacting standard is simply not what Rule 9(b) requires … ."  *Id.,* at *30. *See also, Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986) (citing authority that Rule 9(b) does not require the pleading of detailed evidentiary matter).  Rule 9(b) is satisfied where "[t]he basic framework, procedures, the nature of the fraudulent scheme, and the financial arrangements and inducements among the parties and physicians that give rise to Relator's belief that fraud has occurred have been alleged with specificity; Plaintiffs are entitled to discovery before being required to list every false claim, its dates, [and] the individuals responsible . ..."  *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F.Supp.2d 1017, 1049 (S.D. Tex. 1998) (*"Thompson II"*).  *See also, United States ex rel. Johnson v. Shell,* 183 F.R.D. 204 (E.D. Tex. 1998) (relators did not have to specify invoice numbers and dates where they alleged that each and every monthly royalty report was false in the same respect).

The courts are mindful that the details of the fraud are peculiarly within the defendants' knowledge and control.  Just as the court noted in *In*

1  *re Natural Gas Royalties Qui Tam Litigation*, "[w]hile the Defendants are no

2  doubt appalled by the enormous scope of the fraud alleged, the Complaint

3  identifies the false statements with sufficient particularity to all the

4  Defendants to review the reports and respond to the Relator's allegations."

5  *Id.* At *34.

6   The Ninth Circuit spelled out exactly what circumstances of fraud the

7  Relators needed to articulate in their amended complaint.  Rule 9 is satisfied

8  where the basic framework, procedures, the nature of the fraudulent scheme,

9  and the financial arrangements and inducements among the parties have

10  been alleged with the required specificity in accordance with the ruling of

11  the Court.  The Ninth Circuit made no mention of any requirement for

12  Relators to provide the date, place and identity of persons who evaluated the

13  recruiters for raises.  Irrespective of the res judicata bar, COCO's argument

14  that Rule 9 requires further specificity is without merit.

15  COCO's Affirmative Defense

16   When a safe harbor is plead as an affirmative defense, the defendant

17  has the burden of proof to establish that it meets the qualifications of  the

18  safe harbor.  "Once the plaintiff or the government has established proof of

19  each element of a violation under the [statute at issue], the burden shifts to

20  the defendant to establish that the conduct was protected by an exception."

18

1   *United States ex rel. Kosenke v. Carlisle HMA, Inc.*, 554 F.3d 88, 95 (3d Cir.

2   2009).   Relators are not required to anticipate affirmative defenses under

3   *Iqbal.*   Relators need not plead facts relating to COCO's affirmative

4   defenses and exemptions.  It is COCO that bears the burden of proving those

5   defenses. *McCullough v. Lennar Corp.,* No. 09cv1808-WQH-NLS (S.D.

6   Cal. Nov. 10, 2009) (''Plaintiff is not obligated to plead facts showing that

7   he is not exempt'').  ''Even under *Iqbal's* heightened pleading standard, a

8   plaintiff is not required to anticipate and respond to every affirmative

9   defense that a defendant may choose to assert." *Rumpz v. Am. Drilling &*

10   *Testing Inc.,* No. 09-10971 (E.D. Mich. Oct. 23, 2009).

11   EY's Motion is Without Merit

12      EY's role as auditor is a "public watchdog function." *United States v.*

13   *Arthur Young & Co.*, 465 U.S. 805, 818 (1984).  "By certifying the public

14   reports that collectively depict a corporations financial status, the

15   independent auditor assumes a public responsibility transcending any

16   employment relationship with the client.  The independent public accountant

17   performing this special function owes ultimate allegiance to the

18   corporation's creditors and stockholders, as well as to the investing public."

19   *Id.*   EY failed this essential auditor's public duty.  EY turned a blind eye to

20   critical facts it was aware of, and instead issued clean, unqualified opinions,

1  causing the United States to pay out massive educational dollars to COCO.

2       EY issued various reports and opinions asserting that it conducted

3  audits of Corinthian Colleges, Inc. in accordance with the standards set forth

4  *Government Auditing Standards ("GAS")*, sometimes referred to as

5  *Generally Accepted Government Auditing Standards ("GAGAS")* issued by

6  the Comptroller General of the United States*,* and in accordance with

7  *Generally Accepted Auditing Standards ("GAAS")* issued by the Public

8  Company Accounting Oversight Board.  EY's statements are false.  EY now

9  admits that it did not perform any of the testing for compliance with laws

10  and regulations required by *Government Auditng Standards* and by *GAAS.*

11       The auditor's responsibility under these standards is a question of fact.

12  The requirements of Generally Accepted Accounting Principles in any given

13  situation is the topic of expert testimony.  *Thor Power Tool Co. v.*

14  *Commissioner of Internal Revenue*, 439 U.S. 522 (1979).  The audit work

15  performed by EY is contained in its work papers for these audits.  A motion

16  under Rule 12 is not the mechanism to evaluate the work performed by EY

17  in the conduct of the respective audits of COCO. The extent and type of

18  testing the auditor is required to perform -- referred to as the "scope" of the

19  audit -- is a matter of professional judgment under both *Government*

20  *Auditing Standards* and *Generally Accepted Auditing Standards.  Sloan v.*

1    *United States HUD*, 236 F.3d 756, 764 (D.C. Cir. 2001).  "[T]he heart of the

2    auditing standards is the exhortation that 'due professional care should be

3    used in conducting [an] audit and in preparing related reports.'  GOV'T

4    AUDITING STANDARDS  3.26;  3.28 ('Exercising due professional care

5    means using sound judgment in establishing the scope, selecting the

6    methodology, and choosing tests and procedures for the audit.')."  *Id.*, 236

7    F.3d at 764.  "Materiality" in the context of auditing means the examination

8    and disclosure of information that would be considered necessary to

9    understand the financial condition of the entity under audit.  *TSC Industries,*

10   *Inc. v. Northway, Inc.*, 426 U.S. 438 (1976).  COCO complete dependence

11   on government funding was a major audit factor, as the Ninth Circuit noted.

12        EY again attempts to prevail upon the Court that EY's reporting

13   obligations for matters of non-compliance with government laws and

14   regulations should be decided in accordance with *United States ex rel.*

15   *Graves v. ITT Educ. Serv., Inc.,* 284 F. Supp. 2d 487 (S.D. Tex. 2003), *aff'd*

16   111 App'x 296 (5th Cir. 2004) (unpublished).  We note that EY's counsel

17   filed a petition for writ of certiorari seeking review of the Ninth Circuit's in

18   *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166 (9th

19   Cir. 2006), and urged the Supreme Court that there was a conflict between

20   the circuits on the proper scope liability under the False Claims Act, arguing

1    that the Ninth Circuit's opinion in the *University of Phoenix* conflicted with

2    the Fifth Circuit's *Graves* decision.  *See*, Petition For Writ of Certiorari to

3    the United States Court of Appeals for the Ninth Circuit, *University of*

4    *Phoenix, Petitioner, v. United States ex rel. Mary Hendow and Julie*

5    *Albertson, Respondents,* No. 06-1006.  In similar fashion, EY's brief to the

6    Ninth Circuit in the *Corinthian* case argued that an auditor's responsibility to

7    disclose the effects of non-compliance with government laws and

8    regulations in the financial statements should be governed by the *Graves*

9    decision.  *See* EY's Ninth Circuit Brief, pp. 20-24, 27.  The Ninth Circuit

10    declined to adopt *Graves* – in both its *University of Phoenix* decision, and in

11    its *Corinthian Colleges* ruling.  The law is settled on this point, and mandate

12    has issued.  EY now attempts a collateral attack on the Ninth Circuit's

13    decision by again urging the Court to adopt *Graves*.

14        EY's motion is entirely without merit.  The arguments urged by EY

15    were fully considered by the Ninth Circuit.  EY makes no mention

16    whatsoever of AU § 317, *Illegal Acts By Client,* EY's consideration of

17    possible illegal acts, EY's response to detected illegal acts, and EY auditor's

18    obligation to disclose possible illegal acts "[t]o a funding agency or other

19    specified agency in accordance with requirements for the audits of entities

20    that receive financial assistance from a government agency."  AU § 317.23.

1    EY did not limit the scope of its audits, or otherwise disclaim

2    responsibility under *GAAS* and *Government Auditing* Standards for reporting

3    on violations of government laws and regulations.  While EY now attempts

4    to hide behind a third-party auditor, all of EY's opinions asserted that EY

5    itself fully performed the required audit work.  EY's attempts to make this

6    disclaimer in hindsight.  The auditing standards explicitly state that when the

7    auditor associates his name in the financial statements, he must make a

8    "clear-cut indication of ... the degree of responsibility the auditor is taking."

9    AU 504.01.  The professional standard governing the outsourcing of audit

10   procedures to another firm is AU § 543, *Part of Audit Performed by Other*

11   *Independent Auditors.*[1]  Where the audit function is conducted by a third-

12   party auditor, and the work performed by such third-party auditor relates to a

13   material matter that is of such importance to the financial statements that it

14   effects the overall financial condition of the company, the rule cautions the

15   principal auditor to re-evaluate whether it has sufficient evidence to serve as

[1] AU § 543.02 "The auditor considering whether he may serve as principal auditor may have performed all but a relatively minor portion of the work, or significant parts of the audit may have been performed by other auditors. In the latter case, he must decide whether his own participation is sufficient to enable him to serve as the principal auditor and to report as such on the financial statements. In deciding this question, the auditor should consider, among other things, the materiality of the portion of the financial statements he has audited in comparison with the portion audited by other auditors, the extent of his knowledge of the overall financial statements, and the importance of the components he audited in relation to the enterprise as a whole. [As modified, September 1981, by the Auditing Standards Board.]"

1    principal auditor in the engagement.

2         This lawsuit is EY's first disclosure that all audit compliance

3    questions were relegated to a third party auditor. EY gave no previous

4    indication that it was limiting the scope of its audit by disclaiming giving

5    an opinion on whether Corinthian's recruiters were paid illegal incentive

6    compensation in the recruiting process.

7         The Ninth Circuit recently examined EY's complicity in a stock

8    option backdating scheme that took place over the course of eight (8)

9    years and involved several billion dollars in *New Mexico State Investment*

10   *v. Ernst & Young*, No. 09-55632 (9th Cir. 2011), where the Court rejected

11   EY's assertion that it was, at most, negligent.  *New Mexico* held that "an

12   auditor, in fulfilling duties of public trust, should take a long hard look

13   at a transaction of $700 million, roughly a quarter of Broadcom's

14   reported revenue... ." *Id.* at *5051.   Consideration of the "drastic

15   overstatement of financial results can give rise to a strong inference of

16   scienter .... [and] constitute strong circumstantial evidence of reckless or

17   conscious behavior", *Id.* *5053*, citing Carley Capital Group v. Deloitte &*

18   *Touche*, 27 F. Supp. 2d 1324, 1339-40 (N.D. Ga. 1998).

19        EY has admitted that it completely abdicated its responsibilities

20   under *GAAS* and *Government Auditing Standards* to audit Corinthian

21   Colleges' compliance with laws and regulations where ninety percent

22   (90%) of the Company's revenues were derived.   The accounting

1   judgments EY made "were such that no reasonable accountant would

2   have made the same decisions if confronted with the same facts."  *In re*

3   *Software Toolworks Inc.*, 50 F.3d 615, 628 (9th Cir. 1994) (quoting *Miller v.*

4   *Pezzani (In re Worlds of Wonder Securities Litig.)*, 35 F.3d 1407, 1426 (9th

5   Cir. 1994)).

6          Under FASB Statement No. 5, *Accounting For Contingencies,* the

7   mechanism for reporting the significant risks and uncertainties that an entity

8   faces is outlined. Material risks must be recorded in the financial statements,

9   even if they are not quantifiable. The AICPA Industry Audit Guide Audits of

10  Federal  Government  Contractors  (2001)  ("AAG-FGC")  explains  the

11  requirements of FASB No. 5 for U.S. Government contractors.

12          "3.44 Significant items of a known controversial nature also
13          should be disclosed in the notes to the financial statements,
14          although estimates of ultimate amounts to be realized are not
15          determinable. The government contractor is subject to a degree
16          of risk different for its commercial counterpart because of the
17          unilateral contract of the government to terminate a contract....

18          Finally, Relators direct the Court's attention to the GAO Report

19  entitled "Stronger Federal Oversight Needed to Enforce Ban on Incentive

20  Payments  to  School  Recruiters"  Report  No.  "GAO-11-10  Incentive

21  Compensation Ban" dated October 2010, issued to Congress while this case

22  was      pending      in      the      Ninth      Circuit.      *See*,

23  http://www.gao.gov/new.items/d1110.pdf.   The principal finding of GAO-

11-10 Incentive Compensation Ban was that the United States Government relies on the work of independent auditors in assessing compliance by the for-profit education industry with the recruiter compensation restriction.

> Education uses annual independent audits, program reviews, and other processes to monitor schools for potential violations, but primarily relies on the audits. Annual audits are conducted by independent auditors who evaluate school compliance with all federal student aid rules, including the ban on incentive compensation for recruiters.

WHEREFORE, EY's Motion to Dismiss Relators' First Amended Complaint should be denied. EY should be ordered to immediately produce all its work papers for the years 2001 to the present for audits of Corinthian Colleges, Inc. Furthermore, the Motion to Dismiss filed by Corinthian Colleges, Inc., David Moore, and Jack Massimino should be denied. Corinthian Colleges, Inc., David Moore, and Jack Massimino should be ordered to respond to Relators outstanding discovery requests within thirty (30) days.

DATED:     February 24, 2012          Respectfully submitted:


                                      **LEVY & ASSOCIATES PC**

1

2            By: _____//SDL//_____
3                    SCOTT D. LEVY
4
5            Attorney for Relators/ Plaintiffs
6            Nyoka June Lee and Talala Mshuja