Attorney No. 45515

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

CORINTHIAN COLLEGES, INC.                    )
                                             )
              Plaintiff,                     )
                                             )         **12CH23872**
        v.                                   )    Docket No.
                                             )
ILLINOIS ATTORNEY GENERAL, Lisa Madigan in   )
her official capacity,                       )
                                             )
              Defendant.                     )
                                             )
                                             )

**COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTION, PROTECTIVE ORDER and OTHER RELIEF**

        Plaintiff, CORINTHIAN COLLEGES, INC., ("the School"), for its Complaint for

Declaratory Judgment, Injunction and Other Relief, alleges as follows:

### Nature of the Action

        1.      The School is one of the largest post-secondary education companies in North

America.  It currently operates 6 campuses in Illinois and has served thousands of Illinois

students.  The School is proud of its educational programs and the opportunities it provides to its

students and graduates.  Defendant has commenced a number of investigations of private

colleges under the Illinois Consumer Fraud and Deceptive Business Practices Act, including an

investigation of the School.  Without identifying a single student complaint or other justification

for the intrusive investigation, Defendant issued to the School an extensive demand for

documents and information that includes the School's proprietary and confidential information.

        2.      The School desires to cooperate with Defendant and at the same time protect its

valuable confidential and proprietary information from disclosure to third parties and

competitors.  The School has already produced substantial amounts of non-confidential

information responsive to Defendant's demands.  It also has advised Defendant that it desires to

produce, and is ready to produce, the requested proprietary and confidential information upon the
entry of a reasonable confidentiality agreement to protect such information from disclosure to the
public and other third parties. Defendant, however, has refused to agree to *any* protections of the
School's proprietary and confidential information with respect to certain disclosures that
Defendant expects to make. The School seeks the Court's intervention to facilitate a prompt
resolution of the investigation which, while pending, hurts the very students the Defendant
purports to protect.

3.        Defendant's refusal to agree to a reasonable confidentiality agreement is based
upon its established policy and procedure relating to Defendant's handling of proprietary and
confidential information obtained in the course of its investigation under the Consumer Fraud
Act. Defendant's policy and procedure purport to authorize Defendant to disclose the School's
proprietary and confidential information to third parties without even notifying the School of
such disclosures in some circumstances. The policy and procedure violate the provisions of the
Illinois Trade Secrets Act.

4.        The School made numerous attempts over a six-month period to negotiate a fair
and compliant confidentiality agreement with Defendant to no avail. Defendant continues to
insist that it has authority to disclose the School's proprietary and confidential information to
third parties without notice to the School and without providing the School with the opportunity
to protect such information through judicial relief.

5.        The School brings this action to protect its proprietary and confidential
information and seeks: (1) a Declaratory Judgment that Defendant's policy and procedure
violate the School's rights under the Illinois Trade Secrets Act; (2) an Injunction to prevent
Defendant from violating the Trade Secrets Act with respect to any of the School's trade secrets

2

currently in Defendant's possession or which it may possess; (3) a Protective Order under the Trade Secrets Act to require Defendant to take reasonable, affirmative actions to protect the School's trade secrets; and (4) a Declaratory Judgment that Defendant's policy and procedure relating to the treatment of confidential business information and trade secrets are invalid, and an award of attorneys' fees and costs to the School as provided under Section 10-55(c) of the Illinois Administrative Procedure Act.  5 ILCS 100/10-55(c).

### Parties

6.    Plaintiff, Corinthian Colleges, Inc., is a business corporation organized under the laws of the State of Delaware with its headquarters located in California.

7.    Defendant Illinois Attorney General ("AG"), Lisa Madigan in her official capacity, is an executive office of the State of Illinois created by Article V, Section 1 of the Constitution of the State of Illinois (1970).  Defendant is also an "agency" within the meaning of Section 1-20 of the Illinois Administrative Procedure Act (5 ILCS 100/1-20).

### Venue

8.    Venue is proper in Cook County.  The Defendant's main office is located in Chicago and the transactions out of which the cause of action arose occurred in Cook County.

### Facts

**A.    Defendant's Civil Investigative Demand**

9.    On December 14, 2011, Defendant issued to the School a Civil Investigative Demand ("CID") stating that Defendant had commenced an investigation under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 *et seq.*, based on information received by Defendant from an unidentified source.  (A copy of the CID is attached hereto as Exhibit A.)  The stated purpose of the investigation was to "ascertain whether [the School] has engaged in, is engaging in, or is about to

engage in any practice declared to be unlawful under the Consumer Fraud Act." (Exhibit A at 1.) No area of concern was identified, not a single student complaint has been provided to the School and no other justification for the costly and sweeping CID has been provided to the School despite repeated requests.

10.   The CID is twenty-two pages long and under a listing of "Questions To Be Answered And Documents To Be Produced" enumerates 75 items, many with multiple subparts. Numerous demands for information in the CID relate to the School's proprietary and confidential business information including demands for the following information:

  a.   Employee personnel and disciplinary files;

  b.   Employee compensation data;

  c.   Personal information on all former students;

  d.   Internal School policy, training and marketing manuals;

  e.   Internal research and marketing reports;

  f.   Internal documents on student loans, grants, and scholarships;

  g.   Internal documents on the School's sources and potential sources of revenue;

  h.   Strategic planning documents;

  i.   Financial projections;

  j.   Information on all persons and entities with whom the School does business;

  k.   The School's financial investments and ownership interests.

11.   The CID warns that "failure to provide full and complete answers and/or to respond to additional requests may subject you to formal legal proceedings in accordance with Section 6 of the [Consumer Fraud Act.]" (Exhibit A at 21.) Section 6 of the Consumer Fraud Act authorizes, among other the things, Defendant's filing of a complaint in the Circuit Court to

enjoin the conduct of the School's educational trade or commerce, and to revoke or suspend the School's authority to educate students in Illinois.

### B.   The School's Production of Responsive Information and Documents

12.   In response to the Defendant's CID, the School has produced more than 5,500 pages of documents to Defendant.  On February 24, 2012, the School produced two computer disks containing more than 3,500 pages of documents responsive to the CID.  On March 26, 2012, the School produced more than 2,000 additional pages responsive to the CID.

13.   Prior to producing proprietary and confidential information, the School sought a confidentiality agreement with Defendant as set forth below.

### C.   Defendant's January 26th Letter with Proposed Confidentiality Agreement

14.   In January 2012, the School's legal counsel met with the Assistant Attorneys General assigned to the matter to discuss a schedule for production of information and documents responsive to the CID.  In recognition of the fact that Defendant was seeking confidential business information which Defendant had a duty to protect, the Assistant AGs stated that they would provide the School with a proposed confidentiality agreement.

15.   A letter dated January 26, 2012 from the AG's Office to the School's counsel further confirmed that Defendant recognized its duty to protect the School's confidential business information.  The letter was issued under the name and authority of Defendant.  (A copy of the January 26th letter is attached hereto as Exhibit B and hereafter referred to as "Defendant's January 26th Letter.")  The letter states that Defendant "hereby provides this letter as confirmation concerning the following protective provisions which will apply to confidential information that will be produced by [the School] in connection with the Attorney General's current investigation...."  Exhibit B at 1.

16.     Defendant's January 26th Letter included 10 "protective provisions" in numbered paragraphs.  Protective provision #5 recognized that Defendant is obligated to protect the School's confidential business information from disclosure under the provisions of Illinois' public record laws, and that reasonable protective measures include Defendant providing notice to the School and an opportunity for the School to obtain judicial relief in the form of a protective order prior to Defendant's disclosure of any information designated by the School as confidential.  Paragraph 5 of Defendant's January 26th Letter stated:

> "The Attorney General is subject to the provisions of Illinois' public records laws regarding maintenance and disclosure of documents and information supplied by the Attorney General.  The Attorney General commits to provide [the School] with advance notice of at least ten business days, unless a shorter period is required by law, before complying with any third party request for Confidential Information, which request is made pursuant to Illinois' public records laws.  Should [the School] seek from a court an appropriate protective order or in camera treatment of any Confidential Information within ten days of such notice, or within any other reasonable period as agreed to by [the School] and the Attorney General, the Attorney General shall not disclose, produce or otherwise reveal the contents of any information that is covered by the protective order, or subject to in camera treatment, unless and until further ordered by the Court."

Exhibit B, ¶5.

17.     Notwithstanding Defendant's expressed acknowledgement of its obligation to take affirmative measures to protect the School's confidential business information in response to requests from third parties, Defendant maintained that it had no duty whatsoever to protect the information from disclosures made on Defendant's own initiative.  For example, protective provision #6 in Defendant's January 26th Letter states that Defendant shall use all information obtained from the School for the investigation of possible claims.  Yet, if that use included Defendant's disclosure of the School's confidential business information to third parties, Defendant was not required by the protective provisions of the letter to provide any notice to the

6

School or to provide the School with any opportunity to seek judicial relief prior to such disclosure.

18.     In addition, protective provision # 4 of Defendant's January 26th Letter purported to allow Defendant to disclose the School's confidential information to the Attorney General of other States and to other law enforcement officers without notice to the School and without providing the School with the opportunity to seek judicial relief prior to disclosure.  Paragraph 4 of Defendant's January 26th Letter stated:

>       "Nothing in this letter shall prevent the Attorney General from sharing and discussing Confidential information with the other State Attorney General Offices and other law enforcement agencies.  The Attorney General will request any State Attorney General and other law enforcement agencies it shares Confidential information with to abide to the terms set forth herein."

19.     Further, Defendant recognized no obligation to take any measures to protect the School's confidential information that Defendant obtains from sources other than the School. So, for example, if in the course of its investigation or otherwise Defendant obtained information stolen from the School or otherwise unlawfully obtained, Defendant could disclose such information under the terms of Defendant's January 26th Letter without providing the School with any notice at all.

**D.     The Parties' Meeting on February 16th**

20.     On February 16, 2012, the School's counsel met with an Assistant AG to discuss the terms of Defendant's January 26th Letter.  The School was particularly concerned that Defendant's January 26th Letter contemplated and provided for Defendant's disclosure of the School's confidential information without providing any notice to the School.  Eager to produce documents to Defendant demonstrating that the School has no consumer issues (as also evidenced by the lack of complaints about the School by students), the School's counsel

reviewed Defendant's January 26th Letter with the Assistant AG paragraph by paragraph and
raised questions and issues that the School had with the various provisions.  At the conclusion of
the meeting, the Assistant AG stated that he would discuss the matters raised by the School's
counsel with others in Defendant's Office and get back to the School's counsel.

21.     Shortly after their meeting on February 16th, the Assistant AG telephoned the
School's counsel and requested that he put the School's issues and questions in writing.  On
March 12, 2012 the School's counsel sent the Attorney General's Office a letter as requested.  A
copy of the March 12, 2012 letter is attached hereto as Exhibit C.

**E.    The School's Letter of March 12th**

22.     In his letter of March 12th, the School's counsel reiterated the School's desire to
cooperate with Defendant regarding the CID and that the School had already started to produce
non-confidential information to Defendant.  With regard to confidential information, the
School's counsel raised, among other things, the following issues:

a.     That Defendant should protect the School's confidential information
regardless of the source of that information, including sources other than
the School;

b.     That Defendant actually obtain the agreement of other State's Attorneys
General and other law enforcement agencies to maintain the
confidentiality of the School's confidential information prior to disclosure
(as opposed to merely *requesting* that they maintain confidentiality as
proposed in Defendant's January 26th Letter);

c.     That Defendant, in the course of "using" the School's confidential
information for its investigation, obtain the agreement of any third parties
to whom the information is disclosed that they will maintain the
confidentiality of the information;

d.     That Defendant provide the School with 15 days notice prior to disclosure
of confidential information (as opposed to the 10 days proposed in
Defendant's January 26th Letter); and

8

e. That Defendant will maintain the confidentiality of the School's confidential information that may be used by Defendant in legal proceedings.

**F. Defendant's Email of March 15th and the School's Proposed Confidentiality Agreement**

23. In an email sent on March 15, 2012, to the School's counsel, an Assistant AG requested that, "In order to move things forward, please send our Office a redline of your proposed changes to the [Confidentiality] Agreement." (A copy of the Assistant AG's email sent March 15, 2012 is attached hereto as Exhibit D.) The email further indicated that the provisions set forth in Defendant's January 26th Letter reflected an established policy and procedure of Defendant:

> "While we understand your client has concerns about the Agreement, please keep in mind this Agreement previously has been negotiated extensively and sent up and down the chain several times. It is being used, in its current form, in other for-profit schools investigations."

Exhibit D.

24. In response to the Assistant AG's email of March 15th, the School's counsel sent a letter dated April 18, 2012, to Defendant's Office with the School's redline version of the confidentiality agreement. (A copy of the letter dated April 18, 2012 is attached hereto as Exhibit E.) The redline version addressed the School's concerns as previously communicated by the School's counsel to Defendant.

**G. Defendant Rejects All Proposed Changes to the Confidentiality Agreement Based On Defendant's Previously Established Policy and Practice**

25. An email sent on April 25, 2012, from an Assistant AG to the School's counsel stated that Defendant would not alter the language of Defendant's January 26th Letter and indicated that this determination was based on an established policy and procedure of Defendant. The email stated:

9

"While we understand [the School's] concerns, we are not able to
alter the language of the Letter. As I mentioned, we have
negotiated the language of this letter extensively in the past and
sent it up and down the chain several times. We have used the
Confidentiality Letter sent to you in other for-profit schools
investigations."

A copy of the Assistant AG's email sent on April 25, 2012, is attached hereto as Exhibit F.

**H.    The School's Proposed Solution of May 8**

26.    In a further effort to resolve the dispute between the parties over the

confidentiality agreement, and to provide reasonable protection for the School's proprietary and

confidential information, the School's counsel sent a letter dated May 8, 2012, to Defendant's

Office. The letter suggested a solution based in part upon a proposed protective order that

Defendant's Office had proffered in a separate and unrelated court proceeding. In that other

proceeding, the proposed protective order was also said to be approved by Defendant's Office.

In the May 8th letter to Defendant's Office, the School's counsel suggested that the terms of

Defendant's proposed protective order in the other case might be acceptable to the School in

connection with Defendant's CID with two small revisions. The first revision was to clarify the

conditions under which information would lose its confidential status in the event of an

authorized disclosure. The second revision deleted a sub-paragraph that authorized access to

confidential material by other government agencies. The reason for this revision was that such

agencies would not be parties to a confidentiality agreement between the School and Defendant,

and therefore not bound by its terms, and such agencies could obtain the information directly

from the School (which would allow the School the opportunity to directly enter into a

confidentiality agreement with such other agencies). Further, such disclosure would serve no

purpose to protect Illinois residents and would likely only increase the School's costs in another

investigation.

27.     An Assistant AG responded to the School's May 8th Letter in an email to the School's counsel sent on May 8, 2012 stating that counsel's suggestion would be reviewed.  A copy of Assistant AG's email sent on May 8, 2012, is attached hereto Exhibit G.

**I.      Defendant Rejects the School's Proposed Solution and Threatens Litigation**

28.     In a letter dated May 14, 2012, to the School's counsel, an Assistant AG advised that Defendant would not agree to the School's proposed protective agreement stating:  "In sum, our Office will not use the . . . protective order as a template for the Confidentiality Letter.  Nor will we agree to either of your proposed changes."  (A copy of the Assistant AG's letter dated May 14, 2012 is attached hereto as Exhibit H.)  The Assistant AG's letter concluded by threatening litigation against the School if it did not produce its proprietary and confidential information pursuant to the terms of Defendant's January letter:

> "If your client will not produce Confidential documents according
> to that letter's terms, we will recommend that our Office move
> forward with subpoena enforcement efforts through the court."

Exhibit H.

**J.      The School Requests a Meeting with Defendant to Resolve Differences**

29.     On May 17, 2012, the School's counsel sent an email to the Assistant AG requesting a face-to-face meeting to "discuss a resolution to the gridlock we have reached in trying to get an acceptable Confidentiality agreement" and to "discuss some options that may allow us to get pas[t] the issues that have prevented us from reaching a mutually acceptable agreement."  A copy of the email sent May 17, 2012, is included in Exhibit I hereto.

30.     The Assistant AG responded to the request for a meeting in an email dated May 18, 2012, stating that "we do not think it is necessary to meet" and suggested a telephone call instead.  Exhibit I.

11

31.    The School's counsel spoke with the Assistant AG and her supervisor within

Defendant's Office regarding the confidentiality of the School's information obtained by

Defendant.  The parties' discussion included:  (i) the protection of confidential information and

documents the Defendant may receive from non-School sources, including information that was

illegitimately obtained; and (ii) access to confidential materials by other governmental agencies

outside of Illinois.  No agreement was reached.

32.    Following the telephone discussion, the School's counsel sent a letter dated

June 5, 2012, to the Assistant AG to memorialize the discussion and to confirm the School's

understanding of Defendant's positions.  (A copy of the letter dated June 5, 2012 is attached

hereto as Exhibit J.)  Again, the School's counsel expressed the School's concerns about

proprietary and confidential documents obtained from non-School sources and the disclosure to

other non-Illinois governmental agencies.

33.    The School's counsel also advised Defendant's Office that the School was willing

to agree to Defendant's sharing of the School's confidential information with other governmental

agencies outside Illinois if such agencies would agree in writing to abide by the parties'

confidentiality agreement and that Defendant provide the School with notice of the disclosure of

confidential information to other agencies.  The School's counsel further advised that he

understood Defendant's position to be that it would only ask other governmental agencies to

adhere to the confidentiality provisions contained in Defendant's January 26th Letter but would

not ask for written acknowledgement from such agencies or inform the School that its

confidential information was being disclosed.

34.    In his letter of June 5, 2012, to Defendant's Office, the School's counsel

continued to reiterate the School's interest in resolving the issues of confidentiality but noted that

Defendant had repeatedly rejected the School's reasonable proposals and refused to make any

modifications in Defendant's original proposal of January 26, 2012, to address the School's

legitimate concerns.  The School's counsel requested that Defendant confirm the School's

understanding of the State's position as set forth in the letter and to clarify Defendant's position

if it was not accurately represented in the letter.

> **K.**     **Defendant Rejects All of the School's Proposals, Offers No Modifications to the Terms of Defendant's January 26th Letter, and Again Threatens Litigation**

35.     An Assistant AG sent a letter dated June 14, 2012, to the School's counsel

indicating that Defendant had a long-standing, established policy and procedure in dealing with

other governmental agencies and that "your client's documents are not so special that we are

going to establish any new notice and/or written undertakings procedures….."  The Assistant AG

further stated that "the Public Records Act does not allow us to negotiate side arguments [*sic*]

that would enable your client to expand the narrow trade secret exemption to the Public Records

Act."  The letter concluded with the following threat of litigation:

> "I hope that I have made clear that our position is set forth in the
> draft Confidentiality Agreement we have sent to you.  If you wish
> to debate it further, that will have to await more formal
> proceedings before a judge in Chancery."

A copy of the Assistant AG's letter dated June 14, 2012, is attached hereto as Exhibit K.

36.     The School is ready to produce confidential material and demonstrate that there

are no consumer protection issues related to its provision of educational services to students.

The School simply desires to protect the commercially sensitive information it has spent millions

of dollars developing and which it has assiduously protected over the years.

## Count I – Declaratory Judgment
## Illinois Trade Secrets Act

37.   The School incorporates, and re-alleges by reference, the allegations contained in

Paragraphs 1-36 herein.

38.   The School's proprietary and confidential information sought by Defendant

includes "trade secrets" within the meaning of the Trade Secrets Act in that the information is

sufficiently secret for the School to derive economic value, actual or potential, from the

information not being generally known to other persons who could obtain economic value from

its disclosure or use; and the information is the subject of efforts that are reasonable under the

circumstances to maintain its secrecy or confidentiality. *See* 765 ILCS 1065/2(d).

39.   The School's trade secrets include but are not limited to the School's internal

policies, training and marketing manuals; internal research and marketing reports; internal

information on student loans, grants and scholarships; internal documents on the School's

sources and potential sources of revenue; the School's strategic planning documents; and

financial analyses and projections.

40.   Defendant's CID states that the School's refusal to produce the demanded

information may result in Defendant commencing litigation to enjoin the conduct of the School's

education of students, and to revoke or suspend the School's authority to provide educational

services in Illinois.  Defendant has twice threatened the School with litigation unless it produces

its trade secrets.

41.   Defendant knows or has reason to know that its acquisition of the School's

proprietary and confidential information gives rise to a duty on the part of Defendant to maintain

the confidentiality and limit the use of the information.  Defendant's knowledge of this duty is

evidenced by, among other things, Defendant's policy and procedure of entering into

14

confidentiality agreements with parties from whom Defendant obtains confidential business information.

42.      Defendant knows or has reason to know that it may obtain the School's confidential business information from persons who owe a duty to the School to maintain the secrecy and limit the use of the information.  On information and belief, Defendant has contacted and will contact current and former employees of the School who possess or had access to the School's confidential information, and Defendant has obtained or may obtain the School's confidential information from such current and former employees.  Defendant knows or has reason to know that such current and former employees owe a duty to the School to maintain the confidentiality and limit the use of the information.

43.      Defendant has threatened to disclose and use the School's proprietary and confidential information without providing notice to the School and without providing the School with the opportunity to seek judicial relief to protect against Defendant's disclosure and use of the information.  Among other things, Defendant has advised the School that Defendant will not provide notice of disclosure of confidential business information to other governmental agencies and will not provide notice of disclosure of confidential business information if Defendant obtains the information from a source other than the School, even if the source illegally or improperly obtained or disclosed the confidential information.

44.      Defendant is subject to the provisions of the Illinois Trade Secrets Act which, by its terms, is applicable to a "government, governmental subdivision or agency...."
765 ILCS 1065/2(c).

45.      Section 3(a) of the Trade Secrets Act states that, "Actual or threatened misappropriation may be enjoined."  765 ILCS 1065/3(a).

15

46.     Under the Trade Secrets Act, "misappropriation" means the "acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means." 765 ILCS 1065/2(b)(1). Defendant is a "person" within the meaning of the Trade Secrets Act. 765 ILCS 1065/2(c).

47.     Under the Trade Secrets Act, "misappropriation" also means the disclosure or use of a trade secret by a person who "at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was (i) derived from or through a person who utilized improper means to acquire it; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use…." 765 ILCS 1065/2(b)(2)(B).

48.     Defendant has threatened the misappropriation of the School's trade secrets within the meaning of the Trade Secrets Act.

49.     A controversy exists between the School and Defendant regarding Defendant's refusal to take efforts that are reasonable under the circumstances to maintain the secrecy and confidentiality of the School's trade secrets, including Defendant's refusal to provide the School with notice of Defendant's disclosure and use of the trade secrets.

50.     The School will be adversely affected and suffer irreparable harm by Defendant's disclosure and use of the School's trade secrets without taking efforts that are reasonable under the circumstances to maintain the confidentiality of the School's trade secrets, including Defendant's refusal to provide the School with notice of Defendants disclosure and use of the trade secrets.

51.     The School is in immediate danger of sustaining a direct injury due to Defendant's failure to take efforts that are reasonable under the circumstances to maintain the

16

confidentiality of the School's trade secrets. Defendant has threatened to sue the School to obtain its trade secrets and has advised the School that, once it obtains the trade secrets, it has no obligation to notify the School of Defendant's disclosure or use of the information to other governmental agencies or notify the School of Defendant's disclosure or use of the School's trade secrets obtained from sources other than the School. Defendant may already possess trade secrets obtained from other sources and may already have disclosed and used the trade secrets without notice to the School. Defendant's CID further states that Defendant may seek to enjoin the conduct of the School's educational services, and to revoke or suspend the School's authority to educate students in Illinois if the School does not produce information, including the trade secrets, to Defendant.

52.     The School's status, rights and responsibilities are affected by the controversy alleged above and will be affected by the relief requested in this Complaint.

53.     A declaratory judgment that Defendant's threatened misappropriation of the School's trade secrets constitutes a violation of the Illinois Trade Secrets Act will terminate the controversy, or some part thereof, giving rise to this action.

WHEREFORE, the School, Corinthian Colleges, Inc., respectfully requests that this Honorable Court enter a Declaratory Judgment that:

(a)     Defendant's disclosure of the School's trade secrets to other governmental agencies without prior notice to the School constitutes a misappropriation in violation of the Illinois Trade Secrets Act;

(b)     Defendant's disclosure or use of the School's trade secrets obtained from persons whom Defendant knows or has reason to know acquired the trade secrets by illegal or improper means constitutes a misappropriation of the School's trade secrets in violation of the Illinois Trade Secrets Act;

(c)     Defendant's disclosure or use of the School's trade secrets obtained from persons whom Defendant knows or has reason to know acquired the trade secrets under circumstances giving rise to a duty to maintain its secrecy or

limit its use constitutes a misappropriation of the School's trade secrets in violation of the Illinois Trade Secrets Act; and,

(d)    Defendant's disclosure or use of the School's trade secrets obtained from persons whom Defendant knows or has reason to know owed a duty to the School to maintain their secrecy or limit their use constitutes a misappropriation of the School's trade secrets in violation of the Illinois Trade Secrets Act;

and that the Court grant the School any and all additional relief to which it is entitled upon the premises.

## Count II - Injunction
## Illinois Trade Secrets Act

54.    The School incorporates, and re-alleges by reference, the allegations contained in Paragraphs 1-53 herein.

55.    Section 3(a) of the Trade Secrets Act states that, "Actual or threatened misappropriation may be enjoined." 765 ILCS 1065/3(a).

56.    The School possesses a clearly ascertainable right that needs protection. The School has a statutory right to the protection of its trade secrets under the Trade Secrets Act and further possesses a statutory right to seek to enjoin the actual or threatened misappropriation of its trade secrets. 765 ILCS 1065/1 *et seq.*

57.    Defendant has taken the position that it has no duty or obligation to maintain the confidentiality of the School's trade secrets that Defendant obtains from sources other the School, even if those sources obtained the trade secrets through illegal or other improper means, or even if the other sources owe a duty to the School to maintain the secrecy and confidentiality of the trade secrets. Defendant may already possess trade secrets obtained from such other sources and may already have disclosed and used the trade secrets without notice to the School, or disclose or use such trade secrets in the future.

18

58.     The School will suffer irreparable harm by Defendant's disclosure and use of the

School's trade secrets without taking the acquisition without to taking efforts that are reasonable

under the circumstances to maintain the confidentiality of the trade secrets.  Such efforts would

include, at minimum, providing the School with 15 days written notice of Defendant's intent to

disclose the trade secrets in order for the School to have time to assess the potential harm to the

School if the information is disclosed or used, and to seek judicial relief to protect its trade

secrets if necessary.

59.     The School lacks an adequate remedy at law.

60.     The School is likely to prevail on the merits of this matter.

WHEREFORE, the School, Corinthian Colleges, Inc., respectfully requests that this

Honorable Court enter an Order:

(a)     preliminarily and permanently enjoining Defendant from disclosing the
School's trade secrets to other governmental agencies without first
providing the School with 15 days written prior notice of Defendant's
intent to disclose, which notice also identifies the information subject to
the disclosure and the name and address of the governmental agency to
whom disclosure is to be made;

(b)     preliminarily and permanently enjoining Defendant from disclosing or
using the School's trade secrets obtained from persons whom Defendant
knows or has reason to know acquired the trade secrets by illegal or
improper means without first providing the School with 15 days written
prior notice of Defendant's intent to disclose, which notice also identifies
the information subject to the disclosure and the name and address of the
person to whom disclosure is to be made;

(c)     preliminarily and permanently enjoining Defendant's disclosure or use of
the School's trade secrets obtained from persons whom Defendant knows
or has reason to know acquired the trade secrets under circumstances
giving rise to a duty to maintain its secrecy or limit its use without first
providing the School with 15 days written prior notice of Defendant's
intent to disclose, which notice also identifies the information subject to
the disclosure and the name and address of the person to whom disclosure
is to be made;

19

   (d)  preliminarily and permanently enjoining Defendant's disclosure or use of
the School's trade secrets obtained from persons whom Defendant knows
or has reason to know owed a duty to the School to maintain their secrecy
or limit their use without first providing the School with 15 days written
prior notice of Defendant's intent to disclose, which notice also identifies
the information subject to the disclosure and the name and address of the
person to whom disclosure is to be made;

   (e)  awarding the School any and all additional relief to which it is entitled
upon the premises.

**Count III - Protective Order**
**Illinois Trade Secrets Act**

  61.  The School incorporates, and re-alleges by reference, the allegations contained in
Paragraphs 1-60 herein.

  62.  Section 3(c) of the Trade Secrets Act provides that, "In appropriate
circumstances, affirmative acts to protect a trade secret may be compelled by a court order."
765 ILCS 1065/3(c).

  63.  Under the circumstances of this proceeding as alleged in this Complaint, it is
appropriate for the Court to compel Defendant to take affirmative acts to protect the School's
trade secrets. It is reasonable and appropriate for Defendant to be required to provide the School
with 15 days written notice prior to Defendant's disclosure or use of the School's trade secrets.

  WHEREFORE, the School, Corinthian Colleges, Inc., respectfully requests that this
Honorable Court enter an Order:

   (a)  compelling Defendant to provide the School with 15 days written notice of
Defendant's intent to disclose or use any of the School's trade secrets,
regardless of the source of the trade secrets or the agencies or persons to
whom disclosure is intended, which notice must identify the information
subject to the disclosure or use; and the name and address of the
governmental agency or person to whom disclosure is to be made; and

   (b)  awarding the School any and all additional relief to which it is entitled
upon the premises.

20

### Count IV – Declaratory Judgment
### Illinois Administrative Procedure Act

64.    The School incorporates, and re-alleges by reference, the allegations contained in

Paragraphs 1-63 herein.

65.    Section 10-55(c) of the Illinois Administrative Procedure Act ("APA") provides:

> (c)    In any case in which a party has any administrative rule
> invalidated by a court for any reason, including but not limited to
> the agency's exceeding its statutory authority or the agency's
> failure to follow statutory procedures in the adoption of the rule,
> the court shall award the party bringing the action the reasonable
> expenses of the litigation, including reasonable attorney's fees.

5 ILCS 100/10-55(c).

66.    The purpose of Section 10-55 is "to discourage enforcement of invalid rules and

to provide incentive to those subject to regulations to oppose doubtful rules where compliance

would otherwise be less costly than litigation." *City of Chicago v. Illinois Commerce Comm'n*,

187 Ill. App. 3d 468, 470 (1st Dist. 1989)(citing to Section 10-55's predecessor).  Furthermore,

"if a party expends the time and legal costs to invalidate an administrative rule, that party is

entitled to seek litigation expenses as a separate cause of action." *Rodriguez v. Dep't of Fin &

Prof'l Regulation*, 2011 Ill. App. LEXIS 1301, at *9 (1st Dist. Dec. 27, 2011).  While attorneys

fees statutes are generally strictly construed, the Illinois Supreme Court "has suggested a liberal

reading" of the APA provision for attorneys fees. *Rodriguez, supra, citing Citizens Organizing

Project v. Dep't of Natural Resources*, 189 Ill. 2d 593 (2000).

67.    Defendant is an "agency" within the meaning of Section 10-55(c) of the APA.

68.    Under the APA, the term "rule" includes "each agency statement of general

applicability that implements, applies, interprets, or prescribes law or policy…."

(5 ILCS 100/1-70.)  For purposes of the attorney's fees provision of the APA the term "rule" is

21

defined as "a principle, procedure, or regulation governing conduct or action." *Ardt v. State*,
292 Ill. App.3d 1059 (1st Dist. 1997).

69.     Under Section 4 of the Illinois Consumer Fraud Act, the Defendant is authorized
to "prescribe such forms and promulgate such rules and regulations as may be necessary" to
accomplish the objectives and to carry out the duties prescribed by the Act.  815 ILCS 505/4.

70.     The terms of the confidentiality agreement set forth in Defendant's July 26th
Letter constitutes a statement of general applicability that implements and prescribes
Defendant's policy and procedure in connection with Defendant's treatment of confidential
information obtained in the course of investigations under the Consumer Fraud Act.  As such,
these terms constitute "rules" for purposes of the attorney's fee provision of the APA.

71.     As alleged in this Complaint, the terms of Defendant's July 26th Letter and
Defendant's actions pursuant to those terms violate and threaten to violate the School's rights to
the protection of its trade secrets under the Illinois Trade Secrets Act and, to that extent, the
Defendant's policy and procedure, as embodied in the terms of Defendant's July 26th Letter,
should be invalidated.

72.     The School should be awarded its attorney fees and costs relating to its opposition
to Defendant's policy and procedure relating to the treatment of trade secrets obtained under the
Consumer Fraud Act, including attorney's fees and costs associated with the School's attempts to
negotiate a reasonable confidentiality agreement with Defendant and associated with bringing
and maintaining this action to invalidate the policy and procedure.

73.     A controversy exists between the School and Defendant as to Defendant's policy
and procedure relating to the measures to be taken to maintain the confidentiality of the School's
trade secrets obtained by the School.

74.     The School will be adversely affected and potentially suffer irreparable harm by

Defendant's failure to take reasonable efforts to protect the confidentiality of the School's trade

secrets, and the School is in immediate danger of sustaining a direct injury due to Defendant's

actions and failure to act.

75.     The School's status, rights and responsibilities are affected by the controversy

alleged above and will be affected by the relief requested in this Complaint.

76.     A declaratory judgment as to Defendant's confidentiality policy and procedure

will terminate the controversy, or some part thereof, giving rise to this action.

WHEREFORE, the School Corinthian Colleges, Inc., requests that the Court grant the

following relief:

> (a)   enter a Declaratory Judgment that Defendant's policy and procedures
> relating to the treatment of trade secrets obtained under the Consumer
> Fraud Act are invalid because they violate the Illinois Trade Secrets Act in
> the following respects:
>
>> (i)    they purport to authorize Defendant's disclosure of trade secrets to
>> other governmental agencies outside of Illinois without prior notice
>> to the owner of the trade secrets in violation of the Trade Secrets
>> Act;
>>
>> (ii)   they purport to authorize Defendant's disclosure or use of trade
>> secrets obtained from persons whom Defendant knows or has
>> reason to know acquired the trade secrets by illegal or improper
>> without prior notice to the owner of the trade secrets in violation of
>> the Trade Secrets Act;
>>
>> (iii)  they purport to authorize Defendant's disclosure or use of trade
>> secrets obtained from persons whom Defendant knows or has
>> reason to know acquired the trade secrets under circumstances
>> giving rise to a duty to maintain their secrecy or limit their use
>> without prior notice to the owner of the trade secrets in violation of
>> the Trade Secrets Act; and,
>>
>> (iv)   they purport to authorize Defendant's disclosure or use of trade
>> secrets obtained from persons whom Defendant knows or has
>> reason to know owed a duty to the School to maintain their secrecy

23

or limit their use without prior notice to the owner of the trade secrets in violation of the Trade Secrets Act.

(b)    award the School its attorneys fees and costs in opposing Defendant's policy and procedures including attorney's fees and costs associated with the School's attempts to negotiate a reasonable confidentiality agreement with Defendant and associated with bringing and maintaining this action to invalidate the policy and procedures; and,

(c)    grant the School any additional relief to which it is entitled upon the premises.

CORINTHIAN COLLEGES, INC., Plaintiff

By: _____
One of Its Attorneys

Michael J. Hayes
Daniel J. Lawler
Claire M. Reed
K&L GATES LLP
70 West Madison Street
Suite 3100
Chicago, IL  60602
Phone:  (312) 372-1121
Fax:  (312) 827-8000

24

**CT Corporation**

**Service of Process
Transmittal**
12/15/2011
CT Log Number 519650561

||||||||||||||||||||||||||||||||||||||||||||||||||||

| **TO:** | William A. Calhoun II, Assistant General Counsel
Corinthian Colleges, Inc.
6 Hutton Centre Drive, Ste 400
Santa Ana, CA 92707- |
|---|---|
| **RE:** | **Process Served in Illinois** |
| **FOR:** | Corinthian Colleges, Inc. (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | RE: In Re: Corinthian Colleges, Inc., etc. // To: To: Corinthian Colleges, Inc. |
| **DOCUMENT(S) SERVED:** | Demand |
| **COURT/AGENCY:** | Office of the Attorney General - IL, IL
Case # None Specified |
| **NATURE OF ACTION:** | Business records, phone records, employment records, email records - Marion Rice, Chiquilla Ellis, Steven Musrari, etc. |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 12/15/2011 postmarked on 12/14/2011 |
| **JURISDICTION SERVED :** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 797850582046
Email Notification, William A. Calhoun II wcalhoun@cci.edu |
| **SIGNED:**
**PER:**
**ADDRESS:**

**TELEPHONE:** | C T Corporation System
Thad DiBartelo
208 South LaSalle Street
Suite 814
Chicago, IL 60604
312-345-4336 |

**EXHIBIT**

**A**

Page 1 of  1 / TD

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal
opinion as to the nature of action, the amount of damages, the
answer date, or any information contained in the documents
themselves. Recipient is responsible for interpreting said
documents and for taking appropriate action. Signatures on
certified mail receipts confirm receipt of package only, not
contents.

STATE OF ILLINOIS
OFFICE OF THE ILLINOIS ATTORNEY GENERAL

IN RE:                              )
                                    )
CORINTHIAN COLLEGES, INC.,          )
a Delaware Corporation,             )          Inv. No.:      2011 CONSL 04755
                                    )          CID. No.:      2011-130
                                    )
        Respondent.                 )

CIVIL INVESTIGATIVE DEMAND

To:     Corinthian Colleges, Inc.
        Attn: Jack Massimino, President
        6 Hutton Centre Drive, Suite 400
        Santa Ana, California  92707

        Corinthian Colleges, Inc.
        Attn: Legal Department
        c/o C.T. Corporation System, Registered Agent
        208 South LaSalle Street, Suite 814

        This investigation has been initiated pursuant to information received by the Office of the

Illinois Attorney General concerning the alleged commission by CORINTHIAN COLLEGES,

INC., (hereinafter "Respondent" or "you" or "your") of practices declared to be unlawful under

the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815

ILCS 505/1 *et seq.* The Illinois Attorney General believes it to be in the public interest that an

investigation concerning the above referenced activities is made to ascertain whether Respondent

has engaged in, is engaging in, or is about to engage in any practice declared to be unlawful

under the Consumer Fraud Act. Furthermore, the Illinois Attorney General has determined that

the investigation needs additional information that will be obtained through an examination of

Respondent's records, books, documents and papers.

NOW, THEREFORE, the Illinois Attorney General, pursuant to the authority granted by Section 3 of the Consumer Fraud Act, 815 ILCS 505/3, requires Respondent to file a written statement, signed and verified by an officer, director, or principal of Respondent, within thirty (30) days of being served this Civil Investigative Demand that states under oath that the provided answers and documents are true, correct, and complete. The Statement should be filed with and at the Office of the Illinois Attorney General, Consumer Fraud Bureau, Attn: Kevin Hudspeth, Assistant Attorney General, 100 W. Randolph Street, 12th floor, Chicago, Illinois, 60601, within thirty (30) days of this Civil Investigative Demand's date of service.

## I.  DEFINTIONS

This Civil Investigative Demand shall be read and interpreted in accordance with the definitions set forth below:

A.    "State" or "identify," when used in reference to a person, whether an individual, corporation, or entity, means: to provide his, her, or its full name, last known address, and last known telephone number. In the case of an individual, his or her present or last known position or business affiliation should also be given.

B.    "Identify," when used in reference to a document, means: to provide the date, author, addressee or intended recipient, type or title of document, or some other means of identifying the document, and its present or last known location and custodian. If any such document no longer remains under your control, describe the reasons for the document's change in possession.

C.    "Document" or "documents," as used herein, includes but is not limited to: all abstracts, agreements, all physical forms of correspondence, analyses, applications, books, certificates, charters, charts, communications, computer cards, computer print-outs, computer

2

read-outs, computer tapes, contracts, correspondence, diaries, displays, drafts, drawings, e-mails, estimates, films, graphs, journals, letters, licenses, manuals, maps, meeting reports, memoranda, memoranda of all conversations including telephone calls, notes, orders, opinions, permits, photographs, photo maps, plans, press releases, recordings, reports, research, resolutions, sketches, specifications, statements, statistical records, studies, summaries, tapes, telegrams, texts, time records, transcripts, video tapes, writings and work papers, and any copies not identical to the original, regardless of whether the documents are an original or a copy, and whether ever sent or received or intended to be sent or received.

D.     "Person(s)" means: all entities and includes, but is not limited to, natural persons, joint owners, associations, companies, partnerships, joint ventures, corporations, trusts, and estates.

E.     "Respondent(s)" means: CORINTHIAN COLLEGES, INC.  and/or Everest College and any other physical or online school owned by CORINTHIAN COLLEGES, INC. operating in Illinois at any time from January 1, 2006 to the present, and any of their former or present parent or subsidiary companies as well as all former and present agents, employees, officers, principals, successors, assigns, or other persons acting on their behalf, respective predecessors, successors, or any affiliates of the foregoing.

F.     "Consumer(s)" means: any person, as defined herein, who contracts for or agrees to purchase or lease goods and/or services supplied or delivered by Respondent.

G.     "Good(s)" and/or "service(s)" means: any tangible or intangible product or contract for the performance of any act or the payment of money.

3

H.      The relevant time period for all interrogatories or requests in this Civil

Investigative Demand shall be the time period from January 1, 2006 until the date this Civil

Investigative Demand is served, unless otherwise specified.

## II.   DIRECTIONS

A.      If any of the documents are in existence but not in the possession, control, or

custody of Respondent, please identify the name and address of the person(s) or firm(s) having

possession, control, or custody of such documents.

B.      If any document no longer exists, state whether it is missing, has been lost,

destroyed, or otherwise disposed. If this third classification applies, explain the reasons for and

nature of this disposal and provide the approximate date of this disposal.

C.      Unless otherwise specified and agreed to by the Illinois Attorney General's

Office, responsive documents shall be produced in electronic, native file format and also

converted into Concordance load files in accordance with these instructions:

1)      The Concordance load file shall contain a hyperlink field that points to each

produced native file.

2)      The Concordance load file shall also include all extracted metadata and

bibliographical data in text delimited format (.DAT file).

3)      The .DAT file must include field headers. Note: Once metadata fields have been

established, the field names and field order should be maintained throughout the

course of production, unless they are being changed to solve a problem.

4)      The production must include searchable text for each document. The searchable

text shall be extracted directly from the electronic document when an electronic

document is available or OCR'd when the document(s) exists only in paper form.

4

5)   The text shall be produced as either the last field in the concordance .DAT file or as separate document based text (.TXT) files.

6)   If the searchable text is being produced as .TXT files, it shall be named based on its associated document bates number.

7)   The production shall include single page, Tagged Imaged File Format (TIFF, black and white, Fax IV compressed, 300x 300dpi) image files. The image files shall be bates stamped, and the files shall be named based on their associated bates stamp.

8)   The production shall also include an Opticon (.opt) image base file. This file shall have one record for each image file. The image base shall be produced in sequential order with appropriate document break information.

9)   Unless otherwise indicated, documents are to be produced on computer CD/DVD media.

10)   The production shall provide, as metadata fields, parent child relationships for all compound documents (emails, zip files, etc.).

11)   When a document cannot be converted to a static Concordance production, the Native file must be provided and a link to that native file must be provided in the Concordance.DAT file.

12)   Questions regarding electronic production should be directed to Kevin Hudspeth, telephone number (312) 814-8435. He will arrange for communication with the appropriate in-house technical expert.

D.   Each cover letter accompanying a production shall include an index that provides:

5

1)     A description of the types of documents, their contents and the corresponding document control number(s).

2)     The Civil Investigative Demand interrogatories or requests to which the documents are responsive.

E.     If any documents required by this Civil Investigative Demand are not provided because of a claim of privilege, work product, or trade secret, they should be meticulously described and explanations should be offered that detail the reasons for withholding such documents.

F.     If any document(s) produced in response to this request does not contain a publication date or state the author, provide the publication date and author if known.

G.     The person(s) answering this Civil Investigative Demand on behalf of Respondent should make a due and diligent search through Respondent's records, as well as his or her own records, and should interview and otherwise perform the necessary inquiry with all officers, directors, agents, and employees in order to acquire all information requested hereafter.

## III.    QUESTIONS TO BE ANSWERED AND DOCUMENTS TO BE PRODUCED

The Illinois Attorney General considers answers to the interrogatories and requests for documents below to be necessary to the investigation of this matter. Each of Respondent's answers to the interrogatories and requests for documents shall numerically correspond to each numbered question. Respondent shall also set forth in full each interrogatory and request for documents submitted herein, immediately preceding each answer.

1)     Identify, as defined herein, all persons answering or assisting in the preparation of the response to this Civil Investigative Demand.

2)     For each individual identified in response to Demand No. 1, provide the following:

    a.    Title or position;

    b.    Previous title or position, if any;

    c.    Nature of current duties and responsibilities;

    d.    Start date of employment.

3)    Explain in detail the admissions requirements for Respondent's physical and online schools operating in Illinois.

4)    Provide copies of all versions of entrance examinations administered to prospective students of Respondent's physical and online schools operating in Illinois.

5)    Provide copies of all versions of enrollment agreements for Respondent's physical and online schools operating in Illinois.

6)    Explain in detail how Respondent solicits or recruits individuals to become admissions representatives or any other type of employee who guides prospective students through the enrollment and/or admissions process (hereafter "admissions representative").

7)    Explain in detail the duties and responsibilities of admissions representatives at Respondent's physical and online schools operating in Illinois.

8)    Provide copies of any and all compliance codes and/or manuals provided to admissions representatives at Respondent's physical and online schools operating in Illinois outlining disciplinary actions and proceedings for any violation of any Code of Conduct.

9)    Provide copies of discipline reports of any admission representative at Respondent's physical and online schools operating in Illinois who violated the Code(s) of Conduct.

7

10)     Provide copies of all versions of financial aid applications, agreements and disclosures provided to prospective students of Respondent's physical and online schools operating in Illinois.

11)     Explain in detail how Respondent solicits or recruits individuals to become financial aid counselors or any other type of employee who guides prospective students through the financial aid process (hereafter "financial aid counselor").

12)     Explain in detail the duties and responsibilities of financial aid counselors at Respondent's physical and online schools operating in Illinois.

13)     Provide copies of any and all compliance codes and/or manuals provided to financial aid counselors at Respondent's physical and online schools operating in Illinois outlining disciplinary actions and proceedings for any violation of any Code of Conduct.

14)     Provide copies of discipline reports of any financial aid counselor at Respondent's physical and online schools operating in Illinois who violated the Code(s) of Conduct.

15)     Provide a list of all current and former admissions representatives, financial aid counselors or other employees or agents of Respondent or their independent contractors which have or had direct or indirect responsibilities relating to marketing to, enrolling, or providing financial counseling to Illinois students. For each individual identified, provide the individual's last known address, telephone number, e-mail address, and job title, and clearly identify the individual as a current or former employee or agent.

16)     For each such employee, agent or independent contractor indentified in Demand No. 15, provide any employment or similar contract and such other documents that indicate:

      a.     His or her title and a description of his or her responsibilities;

      b.     The period of his or her employment or affiliation with Respondent;

8

c.   Performance evaluations;

d.   Salary history;

e.   Compensation plan;

f.   Incentive package;

g.   Any bonuses, prizes, or other things of value of any kind given to him or her and the reason for such bonuses, prizes or other things of value;

h.   Any reductions in salary and the reason for such reduction;

i.   Any free or reduced tuition given to him or her, and whether the value of that free or reduced tuition was ever increased or decreased and if so, the reason for the increase or decrease;

j.   His or her last known address, email address and telephone number.

17)   Provide the name, last known address, email address, telephone number and job title for all other current and former Illinois employees of Respondent not identified in Demand No. 15. For each individual identified, clearly identify the individual's status as a current or former employee.

18)   Provide a list of all advertising agencies with whom Respondent contracted or otherwise did business for the purpose of soliciting Illinois consumers during the relevant time period, and provide copies of any contracts or other written agreement related thereto.

19)   Provide copies of any and all promotional materials, brochures, manuals, pamphlets, direct mail advertisements, radio or television advertisements, or other documents used to market Respondent to prospective Illinois students.

20)   Provide recorded calls between prospective Illinois students and Respondent's admissions representatives as outlined below. If the recordings are made by a third party, please identify that third party. Include with this production the following:

9

a.   All recorded phone calls between prospective Illinois students and Respondent's admissions representatives for the ten days immediately prior to the start of the first terms of 2006 through 2011;

b.   All recorded phone calls between prospective students and Respondent's financial aid counselors for the ten days immediately prior to the start of the first terms of 2006 through 2011;

c.   All recorded phone calls between new Illinois students and Respondent's admissions representative for the ten day immediately following the start of the first terms of 2006 through 2011;

d.   All recorded phone calls between new Illinois students and Respondent's financial aid counselors for the ten days immediately prior to the start of the first terms of 2006 through 2011;

e.   All recorded phone calls from Respondent's employee hotline (1-800-611-2101 ext. 615 or any other number similarly designated during the relevant time period) that refer or relate to employee violations of Corinthian's Code of Conduct;

f.   All recorded phone calls from Respondent's Student Helpline (1-800-874-0255 or any other number similarly designated during the relevant time period) that refer or relate to (1) issues or concerns with financial aid; (2) accreditation; or (3) job prospects and employability before or after graduation.

21)   Provide all written documentation, including all logs, internal communications, and/or other correspondence, relating to any of the items identified in subsections (e) and (f) of Demand No. 20.

22)   Provide a printout or screenshot of each advertisement or communication used by Respondent or used on behalf of Respondent via the internet, email, Facebook, Twitter, YouTube, Flickr, or other electronic communication medium used to market Respondent to prospective Illinois students.

23)   Provide a copy of each script, Frequently Asked Questions, Q & A, or other guidance documents that were used or instructed to be used by admissions representatives or

financial aid counselors of Respondent or on its behalf in their communications with prospective

Illinois students.

      24)      Provide copies of training manuals and other materials, instruction manuals, and

training presentations and films used to train Respondent's admission representatives, financial

aid counselors, and their supervisors or managers operating in Illinois and/or contacting

prospective Illinois students, including but not limited to:

           a.      Materials reflecting changes or proposed changes in training, instruction, shadowing, or mentoring;

           b.      Slide-show presentations, power points, or videos;

           c.      Written or printed notes from or video or audio recordings of seminars or conferences;

           d.      Performance evaluations;

           e.      Strategic planning documents;

           f.      Financial analyses;

           g.      Communications with public and securities analysts.

      25)      Provide all documents, including but not limited to Respondent's internal

communications, relating to Respondent's evaluation or review of the impact, success or

effectiveness of each document referenced in Demand Nos. 19 –24, including but not limited to

documents discussing or referring in any way to:

           a.      The effectiveness of advertising campaigns or communications with prospective students;

           b.      Focus Groups.

      26)      Provide all documents not covered by Demand Nos. 19 – 24, including but not

limited to Respondent's internal communications concerning disclosures or other communication

provided to prospective Illinois students regarding:

a.      Completion and graduation rates;

b.      Loan default rates;

c.      Retention rates;

d.      Job placement rates;

e.      Employment rates;

f.      Salaries of graduates;

g.      Career assistance that would be provided;

h.      Accreditation in general;

i.      National accreditation;

j.      Regional accreditation;

k.      Programmatic accreditation;

l.      The quality of instruction;

m.      The qualification and experience of its teachers;

n.      The transferability of credits to other institutions;

o.      The cost of attendance;

p.      The appropriateness of the course of study to qualify for state licensure;

q.      The nature of financial aid available;

r.      Federal Pell Grant recipient diversity data;

s.      The qualification of admission representatives and financial aid counselors.

27)     Provide all documents, including but not limited to Respondent's internal communications, pertaining to the employment rate of Respondent's Illinois graduates, including but not limited to the following:

a.      Respondent's definition of "employment";

12

b.     Respondent's criteria for "employment";

c.     The length of time a graduate must be employed in order for that graduate to be considered "employed" for the purposes of calculating employment rates;

d.     The method used by Respondent to calculate average wages or salary for employed graduates;

e.     All documents provided to any accreditation bodies concerning Respondent's job placement/ employment rates; and

f.     All training and instructional documents that contain guidance as to how Respondent's placement rates/ employment rates should be advertised or represented to students.

28)     Provide a list of all employers known by Respondent to currently employ, or to have employed at any point after graduation, any of Respondent's graduates.

29)     Provide a list of all licensees, affiliates, sponsors, partnerships, corporations, or any other individual or legal or corporate entity with whom Respondent does or did business. For each entity identified, provide a brief description of the nature of the contractual relationship involved.

30)     Provide a list of all businesses, corporations, partnerships, subsidiary corporations, affiliates, or other corporate or legal entities in which Respondent maintains any ownership interest, including ownership of any class of stock.

31)     Provide a list of all licensees, affiliates, sponsors, partnerships, corporations, businesses or any other individual or legal or corporate entity with whom Respondent maintains any official or unofficial agreements or arrangements concerning employment of Respondent's graduates.

32)     For each entity identified in Demand Nos. 29, 30, and 31, identify any and all graduates of Respondent's schools currently employed or employed at any point after graduation

13

by any entity identified. For each graduate identified, provide (a) last known telephone number, address, and e-mail address; (b) the campus from which the graduate graduated; and (c) the hiring criteria used to determine the graduate's eligibility for employment.

33) Provide all documents, including but not limited to research, studies, and surveys of graduates that Respondent uses to substantiate job placement/employment in field of study representations made to Illinois consumers.

34) Provide Respondent's internal communications regarding the documents responsive to Demand No. 33.

35) Provide all documents, including but not limited to research, studies, and surveys of graduates that Respondent uses to substantiate job placement/employment in field of study representations made to any accrediting bodies.

36) Provide Respondent's internal communications regarding the documents responsive to Demand No. 35.

37) Provide the following information for all students who completed programs of instruction at Respondent's physical and online schools operating in Illinois. For the purposes of this Demand only, in lieu of contact information, please generate an identification number for each student and provide:

    a.    The student's school and program of instruction;

    b.    The name of the admissions representatives and financial aid counselors that were responsible for the student's enrollment and financial aid information;

    c.    The grants, scholarships, or loans awarded to or taken out by the student or his or her parents for each course of study, including, but not limited to, loans provided by Respondent;

    d.    The cost to the student for each course of study;

14

e.     The amounts billed to the student for each course of study;

f.     Whether the student withdrew from the course of study before being awarded a degree or certificate, and if so, when;

g.     The date the student completed the program of instruction;

h.     The student's most recent employment information, including the student's position or job title, start date, and salary.

38)     Provide the name, address and telephone number of five (5) randomly selected students who graduated from each degree program offered at each of Respondent's physical and online schools operating in Illinois for each month of the relevant time period. If available, provide email addresses for these students as well.

39)     Explain in detail the duties and responsibilities of Respondent's high school representatives (if applicable).

40)     Provide a list of all Illinois high schools where Respondent's high school representatives have conducted workshops (if applicable).

41)     Provide copies of all complaints made by Illinois students attending one of Respondent's physical or online schools operating in Illinois in which the student complained that they were misled about their job prospects and/or the value of a degree to a faculty member, Program Chair, Academic Dean, Director of Student Services, Program Director, and/or Central Administration Office representative employed by Respondent.

42)     For each complaint identified in Demand No. 41, provide all documentation and correspondence, including but not limited to Respondent's internal communications related to that complaint's review and resolution by Respondent.

15

43)    Provide copies of all complaints submitted by Illinois consumers to accrediting

agencies for Respondent's physical and online schools operating in Illinois, including but not

limited to accrediting agencies for specific programs at each of those schools.

44)    For each complaint identified in Demand 43, provide all documents and

correspondence, including but not limited to Respondent's internal communications related to

review and resolution of those complaints by the accrediting agencies and/or Respondent.

45)    Produce any compliance audits and related records, including but not limited to,

any notices, deficiencies, and/ or related documents or correspondence from the Illinois

Department of Veterans Affairs Approving Agency concerning Respondent's Illinois schools.

46)    Provide copies of all files, including but not limited to admissions, academic, and

financial aid files, for the following individuals:

    a. Marion Rice;
    b. Chiquilla Ellis;
    c. Steven Musrari;
    d. Lylah Moore;
    e. Michael Jackson;
    f. Jennifer Cherveny;
    g. Alisha Montgomery;
    h. Tiffany Brown;
    i. Ashley Graham;
    j. Charlie Baines, II;
    k. Saphronia Boyd;
    l. Gina Theurer;
    m. Sheretha Helm;
    n. Antonio Castillo;
    o. Aracelli Dantzler;
    p. Crystal Heinze;
    q. Stephanie Musselman;
    r. Andrea Svela;
    s. Karen Smith.

47)    For each individual identified in Demand No. 46, provide copies of all documents

or correspondence, including internal communications, related to the resolution of any

16

complaints made by these individuals directly to Respondent or forwarded to Respondent by any entity.

48)    Provide a chart showing all payments credited to the student financial accounts of each individual identified in Demand No. 46, including payments:

    a.    Made directly by the individual;

    b.    Received from any private lender on behalf of the individual;

    c.    Received from the federal government on behalf of the individual, including a description of the nature of the funds received, i.e., whether received as a grant to the individual or a loan to the individual;

    d.    Made by Respondent as part of Respondent's private loan to the individual;

    e.    Made or received by any other identifiable source.

49)    Provide all records on which the person answering Demand No. 48 relied when creating the chart responsive to that Demand.

50)    Provide a chart showing all charges made to the student financial accounts of each individual indentified in Demand No. 46, including, but not limited to:

    a.    Charges for tuition;

    b.    Charges for fees;

    c.    Charges for books;

    d.    Charges for other identifiable products or services.

51)    Provide all records on which the person answering Demand No. 50 relied when creating the chart responsive to that Demand.

52)    Provide a chart showing all money distributed by Respondent to each individual identified in Demand No. 46 in connection with a loan taken by each individual.

17

53)     Provide all records on which the person answering Demand No. 52 relied when creating the chart responsive to that Demand.

54)     Provide a chart showing all money returned by Respondent to any lender on behalf of the individuals identified in Demand No. 46 in connection with a loan taken by each individual.

55)     Provide all records on which the person answering Demand No. 54 relied when creating the chart responsive to that Demand.

56)     Provide a chart showing all credits provided by Respondent to any lender to the student financial accounts of the individuals identified in Demand No. 46 in connection with a loan taken by each individual.  Include an explanation of the nature of the credit, the amount of the credit, and the reason for the credit.

57)     Provide all records on which the person answering Demand No. 56 relied when creating the chart responsive to that Demand.

58)     Describe in detail the procedures related to any programs for institutional or in-house student aid financing maintained by Respondent, including but not limited to financing through Respondent's Genesis Discount Lending Program.

59)     Provide a list of all Illinois consumers who received institutional or in-house student aid financing from Respondent, including but not limited to Respondent's Genesis Discount Lending Program, or who otherwise signed any Retail Installment Contract with Respondent.

60)     Provide all documents, including but not limited to Respondent's internal communications relating to institutional or in-house student aid financing to Illinois consumers,

18

including but not limited to any reports or plans to reduce or increase the number or amount of such financing.

61)    If not already produced in response to Demand Nos. 59, provide all documents showing terms of institutional or in-house student aid financing to Illinois consumers, including but not limited to private extensions of credit offered by Respondent such as:

a.    All signed applications for any institutional or in-house student aid financing offered by Respondent;

b.    All documents given to prospective Illinois students disclosing terms of any institutional or in-house student aid financing offered by Respondent.

c.    All documents showing Respondent's compliance with the Truth in Lending Act in relation to any institutional or in-house student aid financing offered by Respondent, including but not limited to interim student credit disclosures, application or solicitation disclosures, approval disclosures, and final disclosures.

62)    State whether Respondent maintains any licenses under the Illinois Sales Finance Agency Act, 205 ILCS 660/3, or any other state or federal licenses relating to banking, lending or financing of any kind.  Provide a copy of each such license identified.

63)    Provide a list of all loan servicers with which Respondent contracted.

64)    Provide all documents, including but not limited to Respondent's internal communications relating to Respondent's analysis of the percentage of revenue obtained from Title IV funding under the Higher Education Act (HEA), such as Federal Pell Grants, Federal Supplemental Educational Opportunity Grants, Federal Family Education Loans, Stafford Loans, and William D. Ford Federal Direct Loans, including but not limited to any reports or plans to reduce or increase those percentages.

65)    Provide all documents, including but not limited to Respondent's internal communications relating to Respondent's eligibility to receive Title IV HEA funding, including

19

but not limited to communications and agreements (such as the Program Participant Agreement)

with or commitments made to the United States Department of Education.

66)     Provide all documents, including but not limited to Respondent's internal

communications relating to Respondent's analysis of the percentage of revenue obtained from

Department of Defense or Veterans Administration funding, including but not limited to any

reports or plans to reduce or increase that percentage.

67)     Provide all documents, including, but not limited to, Respondent's internal

communications, relating to Respondent's analysis of the percentage of revenue obtained from

other loan, grant, or scholarship funding, including but not limited to any reports or plans to

reduce or increase that percentage.

68)     Provide all documents, including but not limited to Respondent's internal

communications, relating to Respondent's analysis of the percentage of revenue obtained from

tuition, including but not limited to any reports or plans to reduce or increase that percentage.

69)     Provide copies of any and all documents, including, but not limited to,

Respondent's internal communications, discussing student loan default rates, including but not

limited to any reports and default rate improvement plans.

70)     Provide all documents, including but not limited to Respondent's internal

communications, relating to communications with the Illinois Board of Higher Education

concerning its licensure to conduct business in Illinois, including but not limited to approval of

its courses of study and courses and the qualifications and experience of its teachers.

71)     Describe Respondent's organizational structure.   Include organizational charts.

72)     Provide all documents related to any change in ownership or control of

Respondent or any entity it acquired, including but not limited to communications with any

accrediting agency or governmental regulatory agency regarding any change in ownership or control of Respondent or any entity it acquired.

73)    Provide all documents sufficient to show Respondent's basis for its estimates and projections of growth in revenue or enrollment filed with the Securities Exchange Commission or communicated to the public or securities analysts.

74)    Provide any and all documents, including but not limited to Respondent's internal communications, regarding investigations or legal actions taken against Respondent by any student or governmental body relating to alleged consumer fraud violations or marketing misrepresentations.

75)    Describe the relationship between Corinthian Colleges, Inc. and Corinthian Schools, Inc. Provide all records or other relevant documentation on which the person responding to this Demand relied when answering.

IV.    **FURTHER EXAMINATION**

You are hereby notified that Respondent, its agents, servants, employees, and other affiliated individuals may be required to provide oral testimony regarding this matter on a future date. You are also notified that information or documentation pursuant to this Civil Investigative Demand may be required by the Illinois Attorney General.

You are further notified that failure to provide full and complete answers and/or to respond to additional requests may subject you to formal legal proceedings in accordance with Section 6 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/6.

V.    **COMPLIANCE**

Compliance with this Civil Investigative Demand does not relieve Respondent from complying with any other requirement imposed by another subpoena or Civil Investigative

Demand duly served by the Illinois Attorney General or any other governmental agency. Failure to comply may result in court action against Respondent.

## VI.    CONTINUING DUTY TO UPDATE

This Civil Investigative Demand should be regarded as continuing for ninety (90) days after the date of service. Supplemental information should be provided within ten (10) days of its finding.

## VII.    SEVERABILITY

Should any provision or part of this Civil Investigative Demand be held to be invalid, unenforceable, or void for any reason whatsoever, that language shall be severed from the remaining portions, which will remain enforced.

PEOPLE OF THE STATE OF ILLINOIS,
LISA MADIGAN
Illinois Attorney General,

BY: _____

JAMES D. KOLE, Chief
Consumer Fraud Bureau

_____12/14/2011_____
Date

LISA MADIGAN
Illinois Attorney General

JAMES D. KOLE, Chief
Consumer Fraud Bureau

Kevin Hudspeth, AAG
Consumer Fraud Bureau
100 West Randolph Street, 12th Floor
Chicago, IL 60601
312/814-8435

22

# OFFICE OF THE ATTORNEY GENERAL
### STATE OF ILLINOIS

**Lisa Madigan**
ATTORNEY GENERAL

January 26, 2012

Michael J. Hayes Sr.
Partner, K & L Gates LLP
Attorney for Corinthian Colleges, Inc.
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207

*Re:* **Corinthian Colleges, Inc. Investigation, Inv. No. 2011 CONSL 04755**

Dear Mr. Hayes:

In the interest of encouraging voluntary cooperation with the Illinois Attorney General, expediting the above-referenced investigation, and permitting the investigation to proceed without delay, the Illinois Attorney General (the "Attorney General") hereby provides this letter as confirmation concerning the following protective provisions which will apply to confidential information that will be produced by Corinthian Colleges, Inc. ("Corinthian") in connection with the Attorney General's current investigation of Corinthian under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*:

1.   Corinthian will designate information as "Confidential" only if, in Corinthian's good faith view, such information constitutes trade secret information under Illinois law and the Illinois Freedom of Information Act, 5 ILCS §140/7 (1)(g), or information falling within the scope of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232(g) and its implementing regulations, 34 C.F.R. Part 99.

2.   To the extent the Attorney General requests information falling within the scope of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232(g) and its implementing regulations, 34 C.F.R. Part 99, it is the Attorney General's position that Civil Investigative Demands and subpoenas related to this investigation are issued for a "law enforcement purpose" and Corinthian shall produce responsive information, unredacted, without first notifying or obtaining consent from students, former students or parents.

3.   The limitations on disclosure of Confidential information imposed by this agreement shall not apply to information designated "Confidential" which: (1) is published; (2) Corinthian discloses to others without restriction; or (3) the Attorney General lawfully obtains from a source other than Corinthian.



Michael J. Hayes. Sr.
Partner. K & L Gates LLP
January 26. 2012

4.      Nothing in this letter shall prevent the Attorney General from sharing and discussing
        Confidential information with the other State Attorney General Offices and other law
        enforcement agencies. The Attorney General will request any State Attorney General
        Office and other law enforcement agencies it shares Confidential information with to
        abide to the terms set forth herein. Additionally, nothing in this letter shall prevent
        the Attorney General from informing third parties of the fact of an investigation as
        needed to conduct the investigation. Without limiting the scope of this paragraph,
        nothing in this letter shall prevent the Attorney General from contacting any
        consumers (even if the consumer's name was provided by Corinthian) or from
        discussing with a consumer any information that he/she allegedly received from
        Corinthian or confirming that a consumer actually received the information.

5.      The Attorney General is subject to the provisions of Illinois' public records laws
        regarding maintenance and disclosure of documents and information supplied by the
        Attorney General. The Attorney General commits to provide Corinthian with advance
        notice of at least ten business days, unless a shorter period is required by law, before
        complying with any third party request for Confidential information, which request is
        made pursuant to Illinois' public records laws. Should Corinthian seek from a court
        an appropriate protective order or in camera treatment of any Confidential
        information within ten days of such notice, or within any other reasonable period as
        agreed to by Corinthian and the Attorney General, the Attorney General shall not
        disclose, produce or otherwise reveal the contents of any information that is covered
        by the protective order, or subject to in camera treatment. unless and until further
        ordered by the Court.

6.      All "Confidential" information obtained by the Attorney General from Corinthian
        during the pre-suit investigation shall be used by the Attorney General for the
        investigation and enforcement of possible claims by the State, the evaluation of
        possible settlement of any claims by the Attorney General, any preparation for trial of
        such claims, and in litigation of such claims.

7.      In the event of litigation, the Attorney General shall notify Corinthian, through its
        counsel, of its intention to make public any Confidential information. Before the
        Attorney General makes such information publicly available, including through filing
        with a court, and before the Attorney General produces or otherwise reveals the
        existence, identity or contents of any Confidential information. the Attorney General
        shall provide Corinthian a reasonable time to seek from the Court an appropriate
        protective order or in camera treatment of Confidential information. In no event shall
        such time be fewer than ten business days (or within an extended period as ordered
        by a court or agreed to by Corinthian and the Attorney General).

2

Michael J. Hayes, Sr.
Partner, K & L Gates LLP
January 26, 2012

8.    Notwithstanding the foregoing, should any litigation or legal proceedings be initiated
      concerning any "Confidential" information provided pursuant to the Civil
      Investigative Demand or any subsequent supplementary demand(s), the Attorney
      General may use any such information for litigation purposes. If Confidential
      information is introduced at trial or at a public hearing, such information loses its
      confidential status, unless otherwise ordered by the Court.

9.    The obligations of confidentiality imposed by this agreement shall survive the
      conclusion of this investigation, to the extent permitted by applicable law, including
      Illinois freedom of information laws.

10.   Nothing in this letter is intended to restrict or alter state laws, regulations or rules.

      Please let me know if you have any questions or concerns.

                                              Sincerely,

                                              Kevin Hudspeth
                                              Assistant Attorney General
                                              Consumer Fraud Bureau
                                              (312) 814-8435

3

**K&L|GATES**

K&L Gates LLP
70 West Madison Street
Suite 3100
Chicago, IL 60602-4207

T 312.372.1121    www.klgates.com

March 12, 2012

Michael J. Hayes, Sr.
D 312.807.4201
F 312.827.8176
michael.hayes@klgates.com

Kevin Hudspeth, Esq.
Assistant Attorney General
Illinois Attorney General's Office
100 W. Randolph Street
Chicago, Illinois 60601

Re:     **Corinthian Colleges, Inc. – Confidentiality Agreement**

Dear Kevin:

As you recall, we met to discuss several issues raised by the draft "Confidentiality Agreement" ("CA") the Office tendered to us so that we can properly protect the School's production of sensitive documents requested in the Civil Investigative Demand ("CID"). As we mentioned, many of the documents the Office has requested are proprietary and confidential and constitute trade secrets. Release of such information would cause the School injury in the marketplace or expose it to various other liabilities. During our meeting of February 16, 2012, we discussed the terms of the CA tendered to us on a paragraph–by–paragraph basis. I raised the questions and issues we had with various provisions. In some instances, we also sought clarification of certain terms and issues. At the conclusion of our meeting, you indicated that you would discuss those matters with others at the Office and get back to us. Shortly thereafter you called me and requested that we put our issues and questions in writing. I agreed to do so. I have reviewed my notes and have attempted to restate our concerns below.

However, before I get to those issues, I want to reiterate to you that my client is proud of the valuable service it provides to students and is looking forward to cooperating with the Office regarding its request for documents and information. Indeed, the School has already begun production of some of the information that the Office requested and which we believe does not contain confidential or proprietary information in need of protection by a CA. We will continue to produce such other non-confidential non-proprietary information as we gather it.

Turning to the issues raised in our recent meeting, we note the following:

1.      We have no real objection to Paragraph 1 but want to make sure that the Attorney General's office recognizes that confidential documents include proprietary and financial information that might injure the School's competitive position in the marketplace if publically released;

CI-9280371 v1

**EXHIBIT**

**C**

PENGAD 800-631-6989

Kevin Hudspeth, Esq.
March 12, 2012
Page 2

2.      In regard to the Attorney General's "position" that a CID constitutes "law
enforcement purpose" under FERPA and its implementing regulations, please
send us your authority.  Among other arguments, we believe that only criminal
proceedings constitute "law enforcement purposes" . . .. If you have any authority
from the federal agencies charged with enforcing FERPA we would value seeing
those.

3.      We are in general agreement with Paragraph 3 but raised a point of
clarification about subpart 3 regarding information obtained "from a source other
than" the School.  For example, an assistant attorney general from another State
could provide the Office with documents in contravention of that state's
confidentiality agreement with the School.  We would expect, at a minimum, such
information to remain confidential independent of the source.  In other words, the
nature of the document matters more than the source.  You indicated you would
seek clarification.

4.      We appreciate the Office's desire to share information as stated in
Paragraph 4, but fail to see how Illinois-specific information is relevant to other
states nor how other state information relates to the limited, state-specific
jurisdiction of the Illinois Attorney General.  Similar provisions do not exist in the
confidentiality agreements the School has with other attorneys general.  At a
minimum the third party needs to acknowledge the CA and agree to honor its
terms.

        Additionally, the School has other concerns about the paragraph 4, I have
tried to express them herein.  The School will not object to *former* student contact
by the Office, however, the School hopes the Office will be sensitive to the
impact such contact might have.  The mere contact from an attorney or
investigator may carry great weight to the student, immediately implying simply
by stating the "Attorney General's Office," liability or wrongdoing by the school
being investigated even though no finding—or even an allegation—of
wrongdoing has occurred.  This may chill former students from returning to
school to complete their education and is detrimental to the former student.  We
trust the Office will be cognizant of this impact and therefore will carefully
conduct such contact, including a disclosure that no allegation or finding of
wrongdoing has occurred.

        Similarly, current students should not be contacted as the mere fact of
contact carries a significant likelihood the student will drop for fear of some
untoward behavior by the School.  This does a significant disservice to the student
and to the School.  Likewise, contacting externship sites or employers has a

Kevin Hudspeth, Esq.
March 12, 2012
Page 3

tremendous adverse impact on current and future students. Contact by the Office
may carry a significant stigma, causing employers and externship sites to cancel
affiliation with the School or to cease hiring hardworking, successful graduates.
In so doing, the Office would greatly injure the very students it is purporting to
protect. We trust this will not occur.

Furthermore, the School wishes to be clear that the Office should assume
that all employees are currently represented by counsel and therefore should not
be contacted by the Office except through counsel;.

5.     The first sentence is a statement that the Illinois public records laws apply
to the Attorney General for documents and information "supplied by the Attorney
General." None of the documents we will produce are supplied by the Attorney
General. Did you mean to say supplied "to" the Attorney General, or does this
"by the Attorney General" mean to third parties?

Also, given the nature of material requested under the CID and the location of the
School's corporate offices, we think a 15-business-day period after actual notice
is more reasonable. Again, you were going to discuss this with others in the
office;

6.     We understand that Paragraph 6 merely says that information obtained
from the School may be used by the Attorney General in the investigation,
preparation for and trial of any claims and against the School. However, we can
envision that during the course of such investigation, preparation and trial the
information may be shown to third parties outside the Attorney General's Office,
such as experts. We would expect the Attorney General to advise all such parties
of the CA and obtain their acknowledgment that they will be bound by its terms
before the information is shared. In regard to trial, pretrial or post-trial
proceedings, we would expect that any use of CA material will be filed and used
under seal unless the parties agree otherwise or the Court orders its public use.
You were going to check on this issue;

7.     We generally think that Paragraph 7 places too much of a burden on the
School and does not give it enough time to digest the information, make decisions
and take appropriate judicial action if needed. We would request actual notice
and 15 business days to take action. You were to get back to us on this issue;

Kevin Hudspeth, Esq.
March 12, 2012
Page 4

8.     In Paragraph 8 we believe the litigation or the legal proceedings mentioned needs to be limited to legal proceedings or litigation between the parties to this CA. We think the provisions of this paragraph are somewhat redundant with the terms of Paragraph 7. We are also concerned that the term "public hearing" is not defined or limited. It could refer to a public "legislative" or "administrative hearing" unrelated to the legal proceeding or litigation referred to above and to which the School may or may not be a party. Finally, we want to make sure that Paragraph 8 does not limit or eliminate the CA status of documents filed or introduced at trial or a public hearing "under seal" as provided in Paragraph 6. You were going to discuss this with the appropriate people within your office;

9.     We are fine with this provision; and

10.    We are fine with this provision.

## Other Issues The School Wants to Emphasize

a.     As noted above, we suggest the CA also contain a provision, or we could have a separate understanding, that the Attorney General will only contact employees of the School through counsel.

b.     Should the Office decide to contact externship sites and/or employers of the School's graduates, we also believe that there should be an agreement that the Attorney General's Office will give the School reasonable notice of its intent to contact such employers and engage in good faith negotiations regarding an introductory script regarding what will be said to the employers. Involving such employers in a State Attorney General investigation can have a chilling affect on those businesses and severely curtail their continued willingness to work with the School and its students. As stated above, this will injure current and future students that the Office is purporting to protect.

The concerns we have expressed herein are genuine concerns that we are more than willing to discuss with the Office. We will continue to gather the material that is responsive to the CID and deliver that which is non-confidential and non-proprietary and which does not require the protection of a CA.

Kevin Hudspeth, Esq.
March 12, 2012
Page 5

I look forward to your response.  If you have any questions, please feel free to contact me or Claire Reed.

Very truly yours,

Michael J. Hayes, Sr.

MJH/jal

cc:     William Calhoun
        William Potter

**Reed, Claire M.**

| | |
|---|---|
| **From:** | Hayes, Michael J. |
| **Sent:** | Thursday, March 15, 2012 6:12 PM |
| **To:** | Reed, Claire M. |
| **Subject:** | FW: Corinthian |

**From:** Casey, Michele [mailto:MCasey@atg.state.il.us]
**Sent:** Thursday, March 15, 2012 4:28 PM
**To:** Hayes, Michael J.
**Subject:** Corinthian

Dear Mike,

Thank you for your March 12, 2012 letter. I think there may have been a miscommunication somewhere along the way regarding potential negotiations of the Confidentiality Agreement. Please note that our Office takes no position regarding any of the statements made in your letter.

In the past, we have requested and reviewed redlines from schools proposing changes to the Agreement's language. In order to move things forward, please send our Office a redline of your proposed changed to the Agreement.

While we understand your client has concerns about the Agreement, please keep in mind this Agreement previously has been negotiated extensively and sent up and down the chain several times. It is being used, in its current form, in other for-profit schools investigations.

We look forward to receiving your redline.

Sincerely,


Michele A. Casey
Assistant Attorney General
Consumer Fraud Bureau
Office of the Illinois Attorney General
100 W. Randolph St., 12th Floor
Chicago, IL 60601
Phone:    312-814-3876
Fax:        312-814-2593

E-MAIL CONFIDENTIALITY NOTICE: This electronic mail message, including any attachments, is for the intended recipient(s) only. This e-mail and any attachments might contain information that is confidential, legally privileged or otherwise protected or exempt from disclosure under applicable law. If you are not a named recipient, or if you are named but believe that you received this e-mail in error, please notify the sender immediately by telephone or return e-mail and promptly delete this e-mail and any attachments and copies thereof from your system. If you are not the intended recipient, please be aware that any copying, distribution, dissemination, disclosure or other use of this e-mail and any attachments is unauthorized and prohibited. Your receipt of this message is not intended to waive any applicable privilege or claim of confidentiality, and any prohibited or unauthorized disclosure is not binding on the sender or the Office of the Illinois Attorney General. Thank you for your cooperation.

**EXHIBIT**

**D**

PENGAD 800-631-6989

5/30/2012

Michele A. Casey
Assistant Attorney General
Consumer Fraud Bureau
Office of the Illinois Attorney General
100 W. Randolph St., 12th Floor
Chicago, IL 60601
Phone:    312-814-3876
Fax:        312-814-2593

E-MAIL CONFIDENTIALITY NOTICE: This electronic mail message, including any attachments, is for the intended recipient(s) only.  This e-mail and any attachments might contain information that is confidential, legally privileged or otherwise protected or exempt from disclosure under applicable law.  If you are not a named recipient, or if you are named but believe that you received this e-mail in error, please notify the sender immediately by telephone or return e-mail and promptly delete this e-mail and any attachments and copies thereof from your system.  If you are not the intended recipient, please be aware that any copying, distribution, dissemination, disclosure or other use of this e-mail and any attachments is unauthorized and prohibited.  Your receipt of this message is not intended to waive any applicable privilege or claim of confidentiality, and any prohibited or unauthorized disclosure is not binding on the sender or the Office of the Illinois Attorney General.  Thank you for your cooperation.

5/30/2012

## K&L|GATES

K&L Gates LLP
70 West Madison Street
Suite 3100
Chicago, IL  60602-4207

T 312.372.1121      www.klgates.com

April 18, 2012

Claire M. Reed
D 312.807.4231
F 312.827.1276
claire.reed@klgates.com

**Via E-mail (mcasey@atg.state.il.us)**
**(khudspeth@atg.state.il.us)**
Ms. Michele Casey
Mr. Kevin Hudspeth
Assistant Attorney General
Office of the Illinois Attorney General
100 W. Randolph Street, 12th Floor
Chicago, Illinois 60601

RE:    Corinthian Colleges, Inc.
       Civil Investigative Demand No. 2011-130

Dear Ms. Casey and Mr. Hudspeth:

Attached please find the redline version showing our requested changes to the
confidentiality agreement.

Please let me know if you have any questions about the redline agreement or if you
would like to further discuss this matter.  Mike Hayes and I would be pleased to meet with
you to discuss the changes and our reasoning for these changes.

Very truly yours,

*Claire M Reed*

Claire M. Reed

Enc.

CI-9292047 v1

EXHIBIT

E

PENGAD 800-631-6989

# OFFICE OF THE ATTORNEY GENERAL
## STATE OF ILLINOIS

Lisa Madigan                               January 26, 2012
ATTORNEY GENERAL

Michael J. Hayes Sr.
Partner, K & L Gates LLP
Attorney for Corinthian Colleges, Inc.
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207

*Re:* **Corinthian Colleges, Inc. Investigation, Inv. No. 2011 CONSL 04755**

Dear Mr. Hayes:

    In the interest of encouraging voluntary cooperation with the Illinois Attorney General, expediting the above-referenced investigation, and permitting the investigation to proceed without delay, the Illinois Attorney General (the "Attorney General") hereby provides this letter as confirmation concerning the following protective provisions which will apply to confidential information that will be produced by Corinthian Colleges, Inc. ("Corinthian" or "the School") in connection with the Attorney General's current investigation of ~~Corinthian~~the School under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/I *et seq.*:

1.   ~~Corinthian~~The School will designate information as "Confidential" only if, in ~~Corinthian's~~the School's good-faith view, such information constitutes trade secret information under Illinois law and the Illinois Freedom of Information Act, 5 ILCS § 140/7 (1)(g), or information falling within the scope of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232(g) and its implementing regulations, 34 C.F.R. Part 99. or is of a proprietary or financial nature and disclosure to competitors would impact the competitive advantage of the School or its compliance with other laws (such as securities laws), its students and/or its graduates (hereinafter "Confidential Information").

2.   ~~To the extent the Attorney General requests information falling within the scope of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232(g) and its implementing regulations, 34 C.F.R. Part 99, it is the Attorney General's position that Civil Investigative Demands and subpoenas related to this investigation are issued for a "law enforcement purpose" and Corinthian shall produce responsive information, unredacted, without first notifying or obtaining consent from students, former students or parents.~~

~~3~~2.   The limitations on disclosure of Confidential Information imposed by this agreement shall not apply to information designated "Confidential" ~~which: (1) is~~that has been published~~; (2) Corinthian discloses to others,~~ or that the School has previously disclosed without a confidentiality restriction~~; or (3).~~ If the Attorney General ~~lawfully obtains from a source other than Corinthian.~~receives information that has been produced by the School to another state's attorney general's office the Attorney General will maintain the confidentiality of that

Corinthian AG confidentiality agreement-9283883V1 and Corinthian AG confidentiality agreement-9283883V5

information if it is subject to a confidentiality restriction either by agreement between the School and the other state's attorney general (regardless of whether such agreement has been contravened by the other state's attorney general's office), or by applicable law in the state where the information was produced.

500 South Second Street, Springfield, Illinois b2706Illinois 62706 • (217) 782,1090782-1090 • TTY: (877) 844-5461 • pxtFax. (217) 782.70+6782-7046 100 West Randolph Srreet Street, Chicago, Illinois 0ub01Illinois 60601 • 1312(312) 814-3000 • TAN-1800TTY (800) 964-3013 • Fax: (312) 814-3806814-3806 1001 East Min Main, Carbondale—Illnoie o2901 • + 018 Illinois 62901 • (618) 529-0400 • TTY: (877) 075-9339 • Fax. 1b(618) 529-6416

Michael J. Hayes, Sr.
Partner, K & L Gates LLP
January 26, 2012

43.   Nothing in this letter shall prevent the Attorney General from sharing and discussing Confidential information with the other State Attorney General Offices and other law enforcement agencies. The Attorney General will request any State Attorney General Office and other law enforcement agencies it shares Confidential information with to abide to the terms set forth herein. Additionally. Nothing in this letter shall prevent the Attorney General from informing third parties of the fact of an investigation as needed to conduct the investigation. Without limiting the scope of this paragraph, nothing in this letter shall prevent the Attorney General from contacting any consumersformer student (even if the consumer'sformer student's name was provided by Corinthianthe School) or from discussing with a consumerformer student any information that he/she allegedly received from Corinthianthe School or confirming that a consumerformer student actually received the information.

4.   Recognizing that communication between the Attorney General and the School's current students (who are also the School's current and ongoing customers) could have a significant, negative impact on the School's business, even in the absence of a determination of wrongdoing by any court or tribunal in the State of Illinois, the Attorney General agrees to give the School's counsel at least two weeks, written notice before contacting any of the School's currently enrolled students. The Attorney General need not give such notice for each current student contacted, but only once to notify the School that the Attorney General deems it necessary to contact current students. In addition, given that the Attorney General and the School both desire to maximize the School's current students chances of obtaining in-field employment after graduation, the Attorney General agrees not to communicate with employers or providers of externships who retain or hire graduates of the School concerning the subject matter of this investigation, without first giving the School's counsel two weeks, written notice that the Attorney General deems it necessary to contact such employers or providers of externships. Communication between the Attorney General and the School's current employees shall take place only after notice to the School's counsel, who may exercise the right to be present during such communications.

Corinthian AG confidentiality agreement-9283883V1 and Corinthian AG confidentiality agreement-9283883V5

5.      The Attorney General is subject to the provisions of Illinois' public records laws regarding maintenance and disclosure of documents and information supplied by the Attorney General. The Attorney General commits to provide ~~Corinthian~~the School with actual, advance written notice of at least ~~ten~~fifteen (15) business days, unless a shorter period is required by law, before complying with any third-party request for Confidential Information, which request is made pursuant to Illinois' public records laws.  Should ~~Corinthian~~the School seek from a court an appropriate protective order or *in camera* treatment of any Confidential Information within ~~ten~~fifteen (15) days of such notice, or within any other reasonable period as agreed to by ~~Corinthian~~the School and the Attorney General in writing, the Attorney General shall not disclose, produce or otherwise reveal the contents of any information that is covered by the School's draft protective order, or subject to in camera treatment, unless and until further ordered by the Court.

6.      All "Confidential" Information obtained by the Attorney General from ~~Corinthian~~the School during the ~~pre-suit~~ investigation ~~shall~~may be used by the Attorney General for the investigation and enforcement of possible claims by the State, the evaluation of possible settlement of any claims by the Attorney General, any preparation for trial of such claims, and in litigation of such claims. following the notice period prescribed in Paragraph 5. If, during the course of such investigation or litigation, the Attorney General's Office shows such information to third parties, such as experts, the Attorney General's Office will advise such parties of this Agreement and obtain acknowledgment that those parties will be bound by the terms of this Agreement. Use of Confidential Information in trial, pre-trial or post-trial proceedings will be filed and used under seal unless the parties agree otherwise or the Court orders its public use.

7.      In the event of litigation, the Attorney General shall notify ~~Corinthian~~the School, through its counsel, of its intention to make public any Confidential Information pursuant to the notice period prescribed in Paragraph 5. Before the Attorney General makes such information publicly available, including through filing with a court, and before the Attorney General produces or otherwise reveals the existence, identity or contents of any Confidential Information, the Attorney General shall provide ~~Corinthian a reasonable time~~the School with notice pursuant to Paragraph 5 to seek from the Court an appropriate protective order or *in camera* treatment of Confidential Information. ~~In no event shall such time be fewer than ten business days (or within an extended period as ordered by a court or agreed to by Corinthian and the Attorney General).~~

Corinthian AG confidentiality agreement-9283883V1 and Corinthian AG confidentiality agreement-9283883V5

Michael J. Hayes, Sr.
Partner, K & L Gates LLP
January 26, 2012

8.      Notwithstanding the foregoing, should any litigation or legal proceedings be initiated
        concerning any "Confidential" Information provided pursuant to the Civil
        Investigative Demand or any subsequent supplementary demand(s), the Attorney
        General may use any such information for litigation purposes pursuant to the
        notice provisions prescribed in Paragraph 5. If Confidential Information is
        introduced at trial or at a public hearing related to the litigation or legal proceedings
        and following compliance with Paragraph 5, such information loses its confidential
        status, unless filed or introduced at trial "under seal," for *in camera* review or
        otherwise ordered by the Court.

9.      The obligations of confidentiality imposed by this agreement shall survive the
        conclusion of this investigation, to the extent permitted by applicable law, including
        Illinois freedom of information laws.

        10. Nothing in this letter is intended to restrict or alter state laws, regulations or rules.
        Please let me know if you have any questions or concerns.

                                        Sincerely,

                                        Kevin Hudspeth
                                        Assistant Attorney General
                                        Consumer Fraud Bureau
                                        (312) 814-8435

Corinthian AG confidentiality agreement-9283883V1 and Corinthian AG confidentiality
agreement-9283883V5

| Summary Report: Litéra® Change-Pro ML WIX 6.5.0.390 Document Comparison done on 4/18/2012 4:46:27 PM | |
|---|---|
| **Style Name:** KL Standard | |
| **Original Filename:** | |
| **Original DMS:** dm://CI/9283883/1 | |
| **Modified Filename:** | |
| **Modified DMS:** dm://CI/9283883/5 | |
| **Changes:** | |
| Add | 66 |
| Delete | 58 |
| Move From | 6 |
| Move To | 6 |
| Table Insert | 0 |
| Table Delete | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| **Total Changes:** | 136 |

**Reed, Claire M.**

| | |
|---|---|
| **From:** | Casey, Michele [MCasey@atg.state.il.us] |
| **Sent:** | Wednesday, April 25, 2012 8:42 AM |
| **To:** | Reed, Claire M. |
| **Cc:** | Hayes, Michael J. |

**Subject:** RE: Corinthian redline of confidentiality agreement

Dear Mike and Claire,

Thank you for your redline. I wanted to get back to you regarding the results of our Office's evaluation of Corinthian's proposed language regarding the Confidentiality Letter.

While we understand Corinthian's concerns, we are not able to alter the language of the Letter. As I mentioned, we have negotiated the language of this letter extensively in the past and sent it up and down the chain several times. We have used the Confidentiality Letter sent to you in other for-profit schools investigations.

Please note that our Office will, per the terms of Paragraph 4, request that other State Attorney General Offices and law enforcement agencies abide by the terms of the Confidentiality Letter.

Please feel free to contact me with any questions.

Sincerely,

Michele A. Casey
Assistant Attorney General
Consumer Fraud Bureau
Office of the Illinois Attorney General
100 W. Randolph St., 12th Floor
Chicago, IL 60601
Phone:   312-814-3876
Fax:      312-814-2593

E-MAIL CONFIDENTIALITY NOTICE: This electronic mail message, including any attachments, is for the intended recipient(s) only. This e-mail and any attachments might contain information that is confidential, legally privileged or otherwise protected or exempt from disclosure under applicable law. If you are not a named recipient, or if you are named but believe that you received this e-mail in error, please notify the sender immediately by telephone or return e-mail and promptly delete this e-mail and any attachments and copies thereof from your system. If you are not the intended recipient, please be aware that any copying, distribution, dissemination, disclosure or other use of this e-mail and any attachments is unauthorized and prohibited. Your receipt of this message is not intended to waive any applicable privilege or claim of confidentiality, and any prohibited or unauthorized disclosure is not binding on the sender or the Office of the Illinois Attorney General. Thank you for your cooperation.

**From:** Reed, Claire M. [mailto:claire.reed@klgates.com]
**Sent:** Wednesday, April 18, 2012 6:57 PM
**To:** Casey, Michele; Hudspeth, Kevin
**Cc:** Hayes, Michael J.
**Subject:** Corinthian redline of confidentiality agreement

Attached please find a transmittal letter and redline copy of the draft confidentiality agreement. Please feel free to call Mike Hayes or me with any questions.

5/30/2012

**EXHIBIT**

**F**

PENGAD 800-631-6989

Thank you,
Claire

**Claire M. Reed**
K&L Gates LLP
70 W. Madison Street
Suite 3100
Chicago, Illinois 60602
Phone: (312) 807-4231
Fax: (312) 827-1276
claire.reed@klgates.com
www.klgates.com

This electronic message contains information from the law firm of K&L Gates LLP.  The contents may be
privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an
intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is
prohibited.  If you have received this e-mail in error, please contact me at claire.reed@klgates.com.

5/30/2012

**Reed, Claire M.**

| | |
|---|---|
| **From:** | Casey, Michele [MCasey@atg.state.il.us] |
| **Sent:** | Tuesday, May 08, 2012 5:17 PM |
| **To:** | Hayes, Michael J.; Hudspeth, Kevin |
| **Cc:** | Reed, Claire M.; Lane, Julie A. |
| **Subject:** | RE: Corinthian |

Thank you Mike. I will review and advise.

Sincerely,


Michele A. Casey
Assistant Attorney General
Consumer Fraud Bureau
Office of the Illinois Attorney General
100 W. Randolph St., 12th Floor
Chicago, IL 60601
Phone:    312-814-3876
Fax:        312-814-2593

E-MAIL CONFIDENTIALITY NOTICE: This electronic mail message, including any attachments, is for the intended recipient(s) only. This e-mail and any attachments might contain information that is confidential, legally privileged or otherwise protected or exempt from disclosure under applicable law. If you are not a named recipient, or if you are named but believe that you received this e-mail in error, please notify the sender immediately by telephone or return e-mail and promptly delete this e-mail and any attachments and copies thereof from your system. If you are not the intended recipient, please be aware that any copying, distribution, dissemination, disclosure or other use of this e-mail and any attachments is unauthorized and prohibited. Your receipt of this message is not intended to waive any applicable privilege or claim of confidentiality, and any prohibited or unauthorized disclosure is not binding on the sender or the Office of the Illinois Attorney General. Thank you for your cooperation.



**From:** Hayes, Michael J. [mailto:michael.hayes@klgates.com]
**Sent:** Tuesday, May 08, 2012 5:08 PM
**To:** Casey, Michele; Hudspeth, Kevin
**Cc:** Reed, Claire M.; Lane, Julie A.
**Subject:** FW: Corinthian

Michele and Kevin, please see the attached letter and draft Agreement. I will send the original signed letter tomorrow but I wanted to get this out tonight. The letter explains where we got the body of the Agreement and what changes we are suggesting after consultation with the client. The materials I will send tomorrow will be identical with these except we will us letterhead for the letter. We have documents ready to deliver if we can get an agreement in place . Mike


This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at michael.hayes@klgates.com.

EXHIBIT

G

PENGAD 800-631-6989

6/21/2012



# OFFICE OF THE ATTORNEY GENERAL
## STATE OF ILLINOIS

**Lisa Madigan**
ATTORNEY GENERAL

May 14, 2012

Michael J. Hayes, Sr.
K & L Gates
70 West Madison Street, Suite 3100
Chicago, IL 60602

   Re: Corinthian Colleges, Inc. Investigation No. 2011-CONSL-04755

Dear Mike:

   Thank you for your May 8, 2012 letter concerning the Corinthian Confidentiality Letter. I will address each of your points in turn.

   First, your reference to the Wells Fargo protective order and your suggestion that it be used as some sort of template for the Corinthian Confidentiality Letter does not help move matters forward. We are not dealing with a protective order in this investigation. As you know, our Office has sued Wells Fargo. In that separate case, the two parties continue to negotiate a protective order. If agreed upon, the protective order will be entered by a court and govern discovery in an ongoing lawsuit.

   Our Office is investigating your client, Corinthian Colleges, Inc. We have not yet filed suit. We issued a Civil Investigative Demand (CID) on December 14, 2011, to which Corinthian is obligated to respond. Negotiations concerning the language of the Wells protective order have no bearing on this investigation. As with other for-profit schools investigations conducted by this Office, we are willing to provide, and have proffered, a Confidentiality Letter describing what our Office will and will not agree to do with respect to Confidential information provided by Corinthian in response to our CID.

   We cannot agree to your first proposed revision regarding third party disclosures. You suggest we should include language stating we will receive information from third parties "rightfully in possession and authorized to disclose such information". As Paragraph 3 indicates, our Office is free to use information, including information obtained from third parties, which "the Attorney General lawfully obtains from a source other than Corinthian". Our Office conducts its own investigations and makes its own determinations regarding third party information. We will not agree to language discussing the attributes of any third party. As you know, any information disclosed to our Office by a third party is subject to the Illinois Freedom of Information Act, 5 ILCS 140/1 *et seq.*, and becomes a public record.

1

EXHIBIT

H

PENGAD 800-631-6989

Nor can we agree to your second proposed revision. Our Office will make no changes to the language in Paragraph 3 of the Confidentiality Letter concerning its interaction with other law enforcement agencies.

In sum, our Office will not use the disputed Wells protective order as a template for the Confidentiality Letter. Nor will we agree to either of your proposed changes.

Please note that our Office served Corinthian with a CID on December 14, 2011. It is now May 14, 2012 – five months later – and Corinthian has not produced any Confidential documents.

Please clarify whether your client agrees or refuses to produce Confidential documents pursuant to the terms of the January 30, 2012 Confidentiality Letter. If your client will not produce Confidential documents according to that letter's terms, we will recommend that our Office move forward with subpoena enforcement efforts through the court.

Please feel free to contact me with any questions.


Sincerely,

Michele A. Casey
Assistant Attorney General
Consumer Fraud Bureau
312-814-3876

/ac

2

**Reed, Claire M.**

| | |
|---|---|
| **From:** | Casey, Michele [MCasey@atg.state.il.us] |
| **Sent:** | Friday, May 18, 2012 8:38 AM |
| **To:** | Hayes, Michael J.; Kole, James |
| **Cc:** | Reed, Claire M.; Lane, Julie A. |
| **Subject:** | RE: Corinthian |

Dear Mike,

Thank you for your email and voice mail. I will be back in the office on Wednesday, May
23. We are happy to schedule a call regarding the Corinthian Confidentiality Letter, but
we do not think it is necessary to meet.  Please let us know your availability on
Wednesday or later next week for a phone call.

Sincerely,

Michele

---

From: Hayes, Michael J. [michael.hayes@klgates.com]
Sent: Thursday, May 17, 2012 5:51 PM
To: Casey, Michele
Cc: Reed, Claire M.; Lane, Julie A.
Subject: Corinthian

Michele, sorry we could not connect today. I want to  stop over and discuss a resolution
to the gridlock we have reached in trying to get an acceptable Confidentiality agreement.
After reading your letter of May 14 the client asked that I have a meeting with you to
discuss some options that may allow us to get passed the issues that have prevented us
from reaching a mutually acceptable agreement. Unfortunately I am out tomorrow and I have
a medical appointment that will keep me out on Monday.  I can meet on Tuesday if you have
some time  to spare. I think it would be a worthwhile exercise, Please send me an email or
call if you can meet on Tuesday or  suggest another day.    Mike


[http://www.klgates.com/FCWSite/email_images/KLG_Logo_Boxed_Gray_RGB_
128x31.jpg]<http://www.klgates.com/>

Michael J. Hayes, Sr.
Partner
K&L Gates LLP
70 W. Madison Street, #3100
Chicago, Illinois  60602-4207
312.807.4201
312.827.8176
<mailto:[insert%20email%20address]>michael.hayes@klgates.com
www.klgates.com<http://www.klgates.com/>


This electronic message contains information from the law firm of K&L Gates LLP.  The
contents may be privileged and confidential and are intended for the use of the intended
addressee(s) only.  If you are not an intended addressee, note that any disclosure,
copying, distribution, or use of the contents of this message is prohibited.  If you have
received this e-mail in error, please contact me at michael.hayes@klgates.com.

**EXHIBIT**

I

# K&L|GATES

K&L Gates LLP
70 West Madison Street
Suite 3100
Chicago, IL  60602-4207

T  312.372.1121      www.klgates.com

June 5, 2012

Michael J. Hayes, Sr.
D  312.807.4201
F  312.827.8176
michael.hayes@klgates.com

Mr. Jim Kole
Chief, Charitable Trust Bureau
Office of the Illinois Attorney General
100 W. Randolph St., 12th Floor
Chicago, Illinois 60601

RE:    Corinthian Colleges, Inc. (the "School")
        Civil Investigative Demand No. 2011-130 (the "CID")

Dear Mr. Kole:

        I want to thank you and your colleagues for speaking with Claire Reed and me on
Wednesday afternoon regarding the draft confidentiality agreement (the "CA"). As we have
discussed, the School wants to cooperate with the CID and is ready to produce business
sensitive information once reasonable protections are in place. In fact, the School has
already provided a significant number of non-confidential documents to the Office. The
School sincerely believes that it must resolve concerns about the CA before providing
confidential and proprietary documents which it vigorously protects. During our call, we
discussed two main issues: (i) documents that the Office may receive—even illegitimately—
from third parties; and (ii) access to confidential materials by other governmental agencies
outside of Illinois.

        I want to make sure I understand the Office's positions on these issues. We are not
attempting to manufacture issues, but rather to understand where the Office stands on matters
involving documents, processes, procedures and policies that the School has spent millions of
dollars developing and protecting. One the first issue, we understand the Office's position to
be that if documents are received from any source other than the School those documents are
not entitled to confidentiality protections. This raises the obvious possibility of the Office
obtaining confidential and proprietary documents that have been stolen or are improperly
produced by a disgruntled former or current employee in violation of their agreements with
and obligations to the School. The Office's focus on the source of the production rather than
the nature of the documents seems to be unfair as these documents would then be publicly
available, including to competitors. To have such documents become publicly available does
not appear to serve any legitimate civil enforcement purpose but would place the School at a
serious competitive disadvantage. The School is simply concerned that third parties who
disclose its proprietary and confidential information to you are rightfully in possession and
authorized to disclose confidential and proprietary information to the Office; and if not, that

CI-9300945 v2

EXHIBIT

J

Mr. Jim Kole
June 5, 2012
Page 2

the documents are protected from disclosure to competitors or others seeking to misuse the
information. When we discussed this issue and the above scenarios, I want to be clear that
the Office advised that it would not consider the source of the information nor the methods
employed to obtain such information, that nothing would prevent the Office from using such
information, and that such information would be considered public and subject to the Illinois
FOIA law. Therefore, the Office refused to modify the CA to address the School's concerns.
If this is an improper characterization of the Office's position, please correct me in writing at
your earliest convenience.

Regarding the second issue, we discussed the access to confidential material by other
governmental agencies. While the School does not believe there is a legitimate reason to
share information with other agencies outside the state, it is willing to agree to such sharing
as long as such agencies agree in writing to abide by the CA and that we are informed by the
Office of all sharing of our confidential documents with other governmental agencies.
Candidly, this strikes me as a perfectly reasonable request. In our call, the Office stated that
it would ask other governmental agencies to adhere to the CA but would not ask for written
acknowledgement from such agencies or inform the School that such documents were being
forwarded to other governmental agencies. This again creates a very real likelihood that the
proprietary documents would become available to competitors and would place the School at
a competitive disadvantage. If this is an improper characterization of the Office's position,
please correct me in writing at your earliest convenience.

The School is very interested in resolving these issues and moving this matter
forward. The School sent a letter several months ago outlining general concerns with the
CA, submitted a markup of the School's suggested changes to the draft CA, and proposed an
agreement with language that has been approved by the Office in other cases. To date the
Office has rejected the School's suggested changes and has refused to make any
modifications to address the School's concerns. My client has asked that I make sure of your
position on those two issues before it continues to provide additional documents and
information or takes other appropriate action. If either of the above statements is an
improper characterization of the Office's position, please let me know as soon as possible. As
always, feel free to call me if you wish to further discuss this letter or the draft CA.

Very truly yours,

Michael J. Hayes, Sr.

cc:    Ms. Michele Casey
       Ms. Akeela White



## OFFICE OF THE ATTORNEY GENERAL
### STATE OF ILLINOIS

**Lisa Madigan**
ATTORNEY GENERAL

June 14, 2012

K&L Gates LLP
Michael J. Hayes, Sr.
70 West Madison Street
Suite 3100
Chicago, IL 60602-4207

Re: CID 2011-130 to Corinthian Colleges, Inc.

Dear Mr. Hayes,

Thank you for your letter of June 6 in which you attempt to restate our position with respect to a Confidentiality Agreement we sent many months ago. I disagree with most all of the characterizations in your letter, starting with the second line in which you identify me as Chief of the Charitable Trust Bureau. We have already extended to you and your client what in my tenure is the longest extension to respond to a subpoena (issued over six months ago), we have offered your client the <u>same</u> Confidentiality terms that two of Corinthian's for-profit school competitors (including one other client of yours) have already agreed to and produced Confidential documents under, and we have explained that the Public Records Act does not allow us to negotiate side arguments that would enable your client to expand the narrow trade secret exemption to the Public Records Act.

Further, as we have stressed on multiple occasions, we have offered to ensure that any other law enforcement agency who might request documents relating to our investigation will agree to the terms of the Confidentiality Agreement before we share any documents. As you should know, that is how law enforcement agencies have worked together for decades; your client's documents are not so special that we are going to establish any new notice and/or written undertakings procedures when to my knowledge we have <u>NEVER</u> had a problem with any law enforcement agency disclosure/leak of our Consumer Fraud Act investigative materials.

I hope that I have made clear that our position is set forth in the draft Confidentiality Agreement we have sent you. If you wish to debate it further, that will have to await more formal proceedings before a judge in Chancery.

Sincerely,

JAMES D. KOLE
Chief
Consumer Fraud Bureau

JDK:hl

**EXHIBIT**

**K**