1  BLANCA F. YOUNG (SBN 217533)
2  Blanca.Young@mto.com
   ACHYUT PHADKE (SBN 261567)
3  Achyut.Phadke@mto.com
   MUNGER, TOLLES & OLSON LLP
4  560 Mission Street
   Twenty-Seventh Floor
5  San Francisco, CA 94105-2907
   Telephone: (415) 512-4000
6  Facsimile: (415) 512-4077
7
   Attorneys for Defendants
8  CORINTHIAN COLLEGES, INC.,
   DAVID MOORE, JACK D.
9  MASSIMINO
10
                       U.S. DISTRICT COURT
11
          CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION
12
13
   UNITED STATES OF AMERICA,          CASE NO. CV 07-01984 PSG (MANx)
14 EX REL. NYOKA LEE and
   TALALA MSHUJA,                     **REPLY IN SUPPORT OF**
15                                     **CORINTHIAN COLLEGES, INC.,**
              Plaintiff,               **DAVID MOORE, AND JACK**
16                                     **MASSIMINO'S RULE 12(B)(1)**
        vs.                            **MOTION TO DISMISS FOR LACK**
17                                     **OF JURISDICTION**
   CORINTHIAN COLLEGES, INC.,
18 et al.
                                       Judge:  Hon. Philip S. Gutierrez
19            Defendants.              Place:  Courtroom 880
                                       Date:   March 11, 2013
20                                     Time:   1:30 p.m.
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ........................................................................................................ 2

I.      RELATORS' PROCEDURAL ARGUMENT IS WITHOUT MERIT .......... 2

II.     RELATORS' ACTION IS BASED UPON PUBLIC DISCLOSURES ........ 3

    A.   Relators Ignore That Jurisdiction Is Judged Based on the
        Original Complaint ............................................................................. 3

    B.   The General Allegation That the School Violated the Incentive
        Compensation Ban Suffices to Trigger the Bar ................................. 4

    C.   The Use of the Word "Quota" Does Not Change the Fact That
        Prior Public Disclosures Alleged HEA Violations .............................. 6

    D.   The False Claims Act Does Not Require Documents or Other
        Supporting Evidence to Be Publicly Disclosed .................................. 8

    E.   Prior Public Disclosures Alleged That the School's Practices
        Violated the Incentive Compensation Ban ......................................... 9

III.    RELATORS DO NOT AND CANNOT SHOW THEY ARE
      ORIGINAL SOURCES ............................................................................ 11

    A.   Neither Mshuja Nor Lee Has Direct or Independent Knowledge
        of the Alleged Fraud .......................................................................... 11

        1.   Mshuja Is Not an Original Source ............................................ 11

        2.   Lee Has No Knowledge of Any Compensation Practices
            at the School During the Relevant Time Period or at Any
            Campus Where She Did Not Work ........................................... 12

        3.   Lee Has No Knowledge of the Alleged Fraud Even from
            The Time Period She Worked for the School ........................... 14

            a.   The Lee Affidavit Is a Sham ........................................... 14

            b.   The Deposition Testimony Cited by Relators Does
                Not Establish Direct and Independent Knowledge ........ 18

            c.   The Ad Rep Flash Reports Prove Nothing ..................... 20

            d.   *EDMC* and *Hendow* Are Wholly Inapposite ................. 21

    B.   Relators Present No Evidence That They Met the Voluntary Pre-
        Filing Disclosure Requirement .......................................................... 22

    C.   Relators Present No Evidence That They Had A "Hand" in the
        Public Disclosures .............................................................................. 23

    D.   No Amount of Additional Discovery Will Help Relators .................. 24

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes*,
323 F.3d 767 (9th Cir. 2003) ............................................................................24

*Foster v. Arcata Assoc., Inc.*,
772 F.2d 1453 (9th Cir. 1985) ..........................................................................17

*Hagood v. Sonoma County Water Ag'y*,
81 F.3d 1465 (9th Cir. 1996) .........................................................................3, 5

*Indep. Towers of Wash. v. Washington*,
350 F.3d 925 (9th Cir. 2003) ............................................................................15

*Kohler v. CJP, Ltd.*,
818 F. Supp. 2d 1169 (C.D. Cal. 2011) ...........................................................17

*Lanzarone v. Guardsmark Holdings, Inc.*,
2006 WL 4393465 (C.D. Cal. Sept. 7, 2006) ...................................................17

*Lopez v. Strayer Educ. Corp.*,
698 F. Supp. 2d 633 (E.D. Va. 2010) ...............................................................22

*Morongo Band of Mission Indians v. Cal. State Bd. Of Equalization*,
858 F.2d 1376 (9th Cir. 1988) .......................................................................1, 3

*Rockwell Int'l Corp. v. United States*,
549 U.S. 457 (2007) ................................................................................passim

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
131 S.Ct. 1885 (2011) .........................................................................................5

*Schultz v. DeVry, Inc.*,
2009 WL 562286 (N.D. Ill. Mar. 4, 2009) .......................................................22

*Sergio Const., Inc. v. Northrbrook Property & Cas. Ins. Co.*,
5 Fed. Appx. 761 (9th Cir. 2011) ......................................................................25

*Shared Med. Res., LLC v. Histologics*,
LLC, 2012 WL 5570213 (C.D. Cal. Nov. 12, 2012) .......................................23

*Silva v. Bancorp*,
2011 WL 7096576 (C.D. Cal. 2011) ...................................................................4

*Toliver v. Benov*,
2010 WL 4916632 (C.D. Cal., Sept. 29, 2010)................................................22

*U.S. ex rel. Aflatooni v. Kitsap Physicians Svcs.*,
163 F.3d 516 (9th Cir. 1999) ............................................................................12

*U.S. ex rel. Devlin v. California*,
84 F.3d 358 (9th Cir.1996)................................................................................12

*U.S. ex rel. Duxbury v. Ortho Biotech Prods. L.P.*,
2010 WL 3810858 (D. Mass. Sept. 27, 2010)............................................13, 14

*U.S. ex rel. Glaser v. Wounded Care Consultants, Inc.*
2007 WL 2934885, at *1 (S.D. Ind. Oct. 5, 2007) ..........................................24

1
2

**TABLE OF CONTENTS**
**(continued)**

**Page**

3   *U.S. ex rel. Harshman v. Alcan,*
       197 F.3d 1014 (9th Cir. 1999)............................................................5, 10, 12

4
5   *U.S. ex rel. Hendow v. Univ. of Phoenix,*
       461 F.3d 1166 (9th Cir. 2006) ....................................................... 21

6   *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.,*
       498 F.Supp.2d 25 (D.D.C. 2007) ....................................................6, 14, 23

7   *U.S. ex rel Jamison v. McKesson Corp.,*
       649 F.3d 322 (5th Cir. 2011)......................................................................... 3

8   *U.S. ex rel. Jones v. Collegiate Funding Servs., Inc.,*
       469 F. Appx. 244 (4th Cir. 2012) .................................................... 10

9
10  *U.S. ex rel. Lee v. Corinthian Colleges et al.,*
       655 F.3d 984 (9th Cir. 2011) ("Lee").............................................6, 7, 18, 19

11  *U.S. ex rel. Leveski v. ITT Educ. Svcs.,*
       2011 WL 3471071 (S.D. Ind. Aug. 8, 2011)............................................. 22

12  *U.S. ex rel. Longstaffe v. Litton Indus. Inc.,*
       296 F. Supp. 2d 1187 (C.D. Cal. 2003)......................................................5, 17

13  *U.S. ex rel. Meyer v. Horizon Health Corp.,*
       565 F.3d 1195 (9th Cir. 2009) .......................................................4, 24

14
15  *U.S. ex rel. Pilecki-Simko v. Chubb Institute,*
       2010 WL 1994794 (D.N.J. May 17, 2010) ............................................... 19

16  *U.S. ex rel. Reagan v. East Texas Med. Ctr. Reg. Healthcare Sys.,*
       384 F.3d 168 (5th Cir. 2004) ........................................................ 11

17  *U.S. ex rel. Repko v. Guthrie Clinic, P.C.,*
       2011 WL 3875987 (M.D. Pa. Sept. 1, 2011) ........................................... 13

18  *U.S. ex rel. Rosales v. S.F. Housing Auth.,*
       173 F. Supp. 2d 987 (N.D. Cal. 2001).........................................................5

19
20  *U.S. ex rel. Springfield v. Quinn,*
       14 F.3d 645 (D.C. Cir. 1994)........................................................................5

21  *U.S. ex rel. Stone v. Rockwell Int'l Corp.,*
       282 F.3d 787 (10th Cir. 2002) ................................................................. 13

22  *U.S. ex rel. Vuyyuru v. Jadhav,*
       555 F.3d 337 (4th Cir. 2009) .................................................................13, 17

23  *U.S. ex rel. Washington v. Education Management Corp.,*
       871 F.Supp.2d 433 (W.D. Pa. 2012) ....................................................6, 21, 22

24
25  *United States ex rel. Smith v. Yale Univ.,*
       415 F. Supp. 2d 58 (D. Conn. 2006) ........................................................ 13

26  *United States v. Amlani,*
       169 F.3d 1189 (9th Cir. 1999)....................................................................... 23

27  *United States v. Catholic Healthcare West,*
       445 F.3d 1147 (9th Cir. 2006) ....................................................................... 11

28

- iii -

1
2

# TABLE OF CONTENTS
## (continued)

**Page**

3

*Wang v. FMC Corp.,*
  975 F.2d 1412 (9th Cir. 1992) ................................................................. passim

4

*Yeager v. Bowlin,*
  693 F.3d 1076 (9th Cir. 2012) .................................................... 15, 17

5
6

## FEDERAL STATUTES

7

31 U.S.C. § 3730(e)(4) ................................................................ 1, 23

8

31 U.S.C. §3730(e)(4)(A) ......................................................... 4, 5, 8, 9

9

31 U.S.C. § 3730(e)(4)(B) ............................................................ 9, 23

10

11

## FEDERAL RULES OF CIVIL PROCEDURE

12

Rule 8 ....................................................................................... 6, 10

13

Rule 9(b) ................................................................................... 6, 21

Rule 26 .......................................................................................... 23

14

Rule 56(d) ............................................................................. 2, 24, 25

15

## LOCAL RULES

16

L.R. 7-9 .......................................................................................... 15

17

L.R. 79-5 ......................................................................................... 22

18
19
20
21
22
23
24
25
26
27
28

- iv -

# **PRELIMINARY STATEMENT**

Relators utterly fail to carry their burden to show that jurisdiction exists over this action under the False Claims Act ("FCA"), which bars qui tam actions based on allegations that have been publicly disclosed if the relator is not an "original source."  31 U.S.C. § 3730(e)(4).

Faced with crippling evidence that they are not original sources, Relators spend the bulk of their opposition brief arguing that the jurisdictional bar was never triggered in the first place.  Relators' principal argument is that there are allegations in the First Amended Complaint ("FAC") regarding the School's compensation practices that supposedly do not appear in earlier public disclosures.  Even if this argument were factually accurate (which it is not), jurisdiction must exist at the time the lawsuit is filed, making the FAC irrelevant.  *Morongo Band of Mission Indians v. Cal. State Bd. Of Equalization,* 858 F.2d 1376, 1380 (9th Cir. 1988).  The Original Complaint, which controls, merely repeats allegations in earlier public disclosures to the effect that the School violated the Higher Education Act's ("HEA's") ban on incentive compensation.  In any event, consistent with the attorney-generated nature of this case, all of the "new" allegations in the FAC were publicly disclosed long before both the Original Complaint and the FAC were filed.

Unable to dispute these dispositive facts, Relators take an ostrich-like approach and simply ignore them.  Instead, Relators advance a series of frivolous arguments that are at odds with the text of the statute, contrary to binding precedent (which Relators fail to cite), and mischaracterize the public record.

Relators' argument that they are original sources fares no better.  Relators do not even attempt to show that Talala Mshuja qualifies as an original source.  Clearly they cannot.  As for Nyoka Lee, Relators argue that she has direct and independent knowledge of the alleged fraud by relying on a case that has effectively been overruled by the Supreme Court, and by submitting an affidavit that, like the rest of this case, was put together by their attorney and blatantly contradicts the fatal

1 admissions Lee made at her deposition.  As Lee's deposition testimony

2 conclusively shows, she has no knowledge whatsoever of the School's

3 compensation practices from the relevant time period (2005 and on), and did not in

4 any event witness any earlier unlawful compensation practices at the School.

5       Beyond that, Relators present no evidence (because there is none) that they

6 voluntarily provided the information on which their allegations are based to the

7 government *before* this action was filed, and Relators do not even dispute (and

8 therefore concede) that they had no hand in bringing about the public disclosures.

9 These are each independent requirements for Relators qualify as original sources,

10 and Relators make no effort to show they are met.

11       Indeed, Relators tacitly admit that they cannot prove they are original sources

12 by requesting additional discovery under Rule 56(d).[1]  But no amount of discovery

13 can alter what Relators knew—or, more accurately, what they didn't know—before

14 this action was filed.  On that question, Relators' deposition testimony is

15 unambiguous: they knew nothing about any purportedly improper compensation

16 practices at the School, and only sued the School because they were recruited by

17 attorneys who had already filed the same formulaic lawsuit against other

18 institutions.  This is exactly the kind of parasitic lawsuit that the FCA forbids.

19 **ARGUMENT**

20 **I.   RELATORS' PROCEDURAL ARGUMENT IS WITHOUT MERIT**

21       As an initial matter, there is no dispute that the FCA's public disclosure bar

22 requires a two-step analysis that first addresses whether the Relators' allegations

23 have been publicly disclosed, and then examines whether Relators qualify as

24 original sources.  *Wang v. FMC Corp.*, 975 F.2d 1412, 1415-16 (9th Cir. 1992).

25 Relators argue that Defendants have "urged" a "procedural sequence" that "is

26 completely backwards from Ninth Circuit law,"  (Opp. at 13), but it is Relators who

27

28

---

[1] All references to "Rules" are to the Federal Rules of Civil Procedure.

have it backwards.  Whereas courts "treat[] the 'based upon public disclosure' step as a 'quick trigger to get the more exacting original source inquiry,'" *Hagood v. Sonoma County Water Ag'y*, 81 F.3d 1465, 1476 n.18 (9th Cir. 1996) (internal quotations omitted), Relators focus almost their entire opposition on whether there has been a public disclosure and barely address whether they are original sources.  Either way, their arguments fail.

## II.   RELATORS' ACTION IS BASED UPON PUBLIC DISCLOSURES

### A.   Relators Ignore That Jurisdiction Is Judged Based on the Original Complaint

Relators' argument that there has been no public disclosure fails out of the starting blocks because it depends entirely on allegations that do not exist in the only pleading that matters: the Original Complaint.  Relators argue that their lawsuit is unique in alleging that the School's "recruiter compensation practices, *as implemented*," violated the HEA.  (Relators' Opposition ("Opp."), Docket Entry ("Doc.") 190, at 2; *see also id.* at 5-9.)  Even if that claim were true (it is not), Relators' allegations about the School's practice in implementing its compensation program appeared for the first time in the FAC.  "[T]he amendment process," however, "cannot be used to create jurisdiction retroactively where it did not previously exist."  *U.S. ex rel Jamison v. McKesson Corp.,* 649 F.3d 322, 328 (5th Cir. 2011).  "[S]ubject matter jurisdiction must exist as of the time the action is commenced," and therefore a court must "look to the original, rather than to the amended complaint," to "determin[e] federal court jurisdiction."  *Morongo Band*, 858 F.2d at 1380.[2]

Relators fail to respond to these authorities, and do not even attempt to

---

[2] Courts will "reevaluat[e]" jurisdiction based on an amended complaint if jurisdiction existed initially, and the amendment alleges a new fraud not identified in the original complaint.  *Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 473 (2007).  But where jurisdiction does not exist at the outset of the case, an amended pleading cannot create it.  *Jamison*, 649 F.3d at 328.

defend the Original Complaint.  *Silva v. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. 2011) ("when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded").  Indeed, they cannot.  Even a cursory comparison of the Original Complaint against the prior public disclosures reflects the same alleged fraud and the same alleged underlying violation of the HEA.  (*Compare, e.g.*, 2005 Securities Complaint ¶ 226 (School Dfts' RJN ("RJN"), Doc. 152, Ex. 13) (School and its management "falsely represented that they were in compliance with Title IV regulations regarding the payment of bonuses, commissions, and other incentives") *with* Compl. ¶ 9 ("Corinthian and its co-defendants falsely represented that Corinthian complied with HEA's prohibition against using incentive payments for recruiters, which is a core prerequisite to receive any HEA, Title IV funds").  The identity between the prior public disclosures and the Original Complaint more than meets the requirement that the public disclosure be "substantially similar to [] the relator's allegations."  *U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 (9th Cir. 2009).[3]

## B.   The General Allegation That the School Violated the Incentive Compensation Ban Suffices to Trigger the Bar

Relators attempt to avoid this result by arguing that "[a]llegations of generic HEA recruiter compensation violations are insufficient to trigger a public disclosure."  (Opp. at 10.)  That argument is not only illogical, but is flatly inconsistent with the text of the FCA and governing precedent.

The FCA's public disclosure bar is triggered when either the "allegations" or the "transactions" at issue are publicly disclosed.  31 U.S.C. §3730(e)(4)(A).  As the Supreme Court recently observed, "[t]he phrase 'allegations or transactions' in

---

[3] The cookie-cutter nature of this case is underscored by the barrage of prior FCA lawsuits against other career schools that allege the same violation of the HEA and the same false certification theory.  (School Dfts. Mot. to Dismiss, Doc. 150 ("Mot."), at 6-8.)

§ 3730(e)(4)(A) . . . suggests a wide-reaching public disclosure bar." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S.Ct. 1885, 1892 (2011).  Thus, in what Relators acknowledge is a "seminal case" on the public disclosure bar (Opp. at 9), the D.C. Circuit explained that the term "allegations," as used in the FCA, "connotes a conclusory statement implying the existence of provable supporting facts." *U.S. ex rel. Springfield v. Quinn*, 14 F.3d 645, 653-54 (D.C. Cir. 1994). The Ninth Circuit has adopted a similarly broad interpretation, holding that bald "allegations divorced from the information on which they are based can constitute public disclosure," *U.S. ex rel. Harshman v. Alcan*, 197 F.3d 1014, 1020 (9th Cir. 1999), and treating the public disclosure question as a "quick trigger" to get to the "more exacting" original source question.  *Hagood*, 81 F.3d at 1476 n.18.

Moreover, where, as here, a relator alleges a false statement of compliance with federal law, the Ninth Circuit has held that the bar will be triggered if a prior public disclosure alleges that the underlying statute or regulation was violated, even if fraud is not mentioned and the details of the violation are not disclosed.  *Alcan*, 197 F.3d at 1020, 1016-17, 1020 (9th Cir. 1999).  In *Alcan,* the court specifically rejected as "without merit" an argument that the bar was not triggered because the public disclosure (an earlier-filed complaint) "did not include *details* of the violations" or "plead *facts* establishing FCA liability"—the very argument Relators make here.  *Id.* at 1020 (emphasis added); *accord U.S. ex rel. Rosales v. S.F. Housing Auth.*, 173 F. Supp. 987 (N.D. Cal. 2001) (bar triggered where "gravamen" of relator's claim was publicly disclosed, even where "all of the purported *means* by which the [alleged] fraud was perpetrated may not have been commonly known"); *U.S. ex rel. Longstaffe v. Litton Indus. Inc.*, 296 F. Supp. 2d 1187, 1192-96 (C.D. Cal. 2003) (bar triggered where same "broad categories" of alleged wrongdoing were reported in public sources.)

Thus, "[t]he level of public disclosure necessary to trigger the bar is relatively low, may be general in nature, and a relator's ability to provide more

REPLY ISO RULE 12(B)(1) MOT. TO DISMISS - CASE NO. CV 07-01984 PSG (MANX)

specific information than that relayed by the public disclosure is irrelevant." *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F.Supp.2d 25, 46 (D.D.C. 2007).  In other words, a conclusory—or, to use Relators' term, "generic"—allegation of either the same fraud or the same underlying statutory or regulatory violation does, in fact, suffice to trigger the bar.

That "relatively low" standard is easily met here, and explains why the result does not vary whether one looks to the Original Complaint or the FAC.  Although the FAC adds detail about the School's alleged practices in implementing its compensation plan, the FAC alleges the same fraud and the same underlying violation of the incentive compensation ban identified in the numerous public disclosures that preceded this lawsuit.  (*See* FAC ¶¶ 12, 25.)  Those public disclosures are "substantially similar" to the "gravamen" of the fraud alleged in both the Original Complaint and the FAC, and therefore trigger the bar.

The only authorities cited by Relators on this issue—the Ninth Circuit's decision in this case, *U.S. ex rel. Lee v. Corinthian Colleges et al.*, 655 F.3d 984 (9th Cir. 2011) ("*Lee*"), and a district court case from Pennsylvania, *U.S. ex rel. Washington v. Education Management Corp.*, 871 F.Supp.2d 433 (W.D. Pa. 2012) ("*EDMC*")—are utterly inapposite.  (Opp. at 10-11.)  Neither case mentions, let alone analyzes, the public disclosure bar.  *Lee* and *EDMC* merely discuss what a relator must do to state a claim under Rules 8 and 9(b).  *Lee*, 655 F.3d at 994-995; *EDMC*, 871 F.Supp.2d at 461.  Whereas Rules 8 and 9(b) require a relator to allege specific facts supporting the allegation of fraud, the FCA is far less exacting and requires only a conclusory allegation for the public disclosure bar to be triggered.

### C.   The Use of the Word "Quota" Does Not Change the Fact That Prior Public Disclosures Alleged HEA Violations

Relators make the similarly flawed argument that the Ninth Circuit in *Lee* purportedly held that allegations of the kind that were publicly disclosed do not allege a violation of the HEA.  (Opp. at 4-5, 10-11, 15-16, 30-36.)  Relators

1  characterize *Lee* as holding that "enrollment quotas do not violate the [HEA]

2  recruiter compensation ban as a matter of law." (Opp. at 15.) They then

3  characterize the public disclosures as alleging that the School used "quotas," (Opp.

4  at 4-5, 30-36), and argue that because "quotas" are supposedly "perfectly legal," no

5  HEA violation was alleged in any public disclosure before this action was filed.

6  (Opp. at 4-5, 15-16, 30-36.) This argument misconstrues both *Lee* and the public

7  record, and again misapprehends the FCA standard for public disclosure.

8      In the portion of the *Lee* opinion on which Relators rely, the Ninth Circuit

9  held that an allegation that employees were "*disciplined, demoted, or terminated*"

10  for failing to meet an enrollment quota "does not . . . state a violation of the HEA

11  incentive compensation ban." *Lee*, 655 F.3d at 993 (emphasis added) (Opp. at 10,

12  15-16, 36.) The Ninth Circuit, however, expressly distinguished these types of

13  "adverse employment actions" from the compensation practices to which the

14  incentive compensation ban in the HEA is addressed. *Id.* With respect to

15  compensation practices, the Ninth Circuit held that if meeting a quota was the *only*

16  basis for a salary increase, that *would* violate the HEA. *Id.* at 995-996 (violation of

17  the HEA could be stated if relators alleged that "meet[ing] enrollment quotas . . .

18  was *the* basis on which [admissions representatives] would receive promotional

19  salary increases.") Relators' assertion that "[e]nrollment quotas are not fraudulent

20  as a matter of law" (Opp. at 16) is an inaccurate statement of *Lee's* holding.

21      Relators also mischaracterize the prior public disclosures by suggesting they

22  made only the amorphous allegation that "recruiters were forced to meet enrollment

23  quotas, targets and goals." (Opp. at 30.) In fact, the public disclosures allege that

24  the School used enrollment quotas to determine employee *compensation*—the very

25  conduct the Ninth Circuit held would violate the HEA. In the 2005 Securities

26  Action, for example, the plaintiffs alleged that: "hitting target numbers . . .

27  *determined whether a representative would receive the annual raise* of 20% or not"

28  (2005 Securities Compl. ¶ 232 (RJN Ex. 13)); "*bonuses were given* to . . .

REPLY ISO RULE 12(B)(1) MOT. TO DISMISS -
CASE NO. CV 07-01984 PSG (MANX)

1   [employees] who met their quotas, in violation of the HEA's prohibition against

2   incentive compensation" (*id.* ¶ 228); "*yearly raises* were based on whether [the

3   employee] met his/her enrollment goals" (*id.* ¶ 244); and "Directors of Admission

4   . . . received quarterly *bonuses contingent upon meeting target numbers* set by

5   corporate" (*id.* ¶ 231) (emphases added).  Similarly, Representative Waters alleged

6   that the School used a "thinly disguised *incentive compensation or quota* system."

7   (2005 Hearing Report at 19 (RJN Ex. 12) (emphasis added).)

8        But Relators' argument fails for a more basic reason:  No factual detail about

9   the School's compensation practices had to be publicly disclosed in order to trigger

10  the jurisdictional bar.  The allegation that the School violated the HEA ban was

11  enough, regardless of what was publicly disclosed about "quotas" or School

12  practices.  *See supra* at 4-6.  Relators' claim that the Court must look to the "factual

13  assertions *beneath* the allegations of recruiter compensation violations" in the

14  public disclosures is wrong as a matter of law.  (Opp. at 30 (emphasis added).)

15       **D.    The False Claims Act Does Not Require Documents or Other**
             **Supporting Evidence to Be Publicly Disclosed**
16

17       Relators similarly misconstrue the public disclosure bar when they argue that

18  the School somehow "judicially admitted" that no public disclosure occurred when

19  the School asserted that documents relating to the compensation of admissions

20  representatives and "Ad Rep Flash Reports" are confidential.  (Opp. at 20-23.)  This

21  argument once again ignores the statutory text, which "distinguishes between

22  'allegations' and the 'information on which the allegations are based.'"  *Wang*, 975

23  F.2d at 1418.  Only the former is mentioned in the subsection of the FCA that

24  discusses the requirements for triggering the public disclosure bar.  *See* 31 U.S.C. §

25  3730(e)(4)(A).  Once the bar is raised by the disclosure of "allegations" (or

26  "transactions"), the relator must then show he is an original source who, among

27  other things, has direct and independent knowledge of the "information on which

28  the allegations are based"—a requirement set forth in a separate subsection of the

1    Act.  31 U.S.C. § 3730(e)(4)(B).  As the Ninth Circuit has explained, "[t]he Act

2    appears to be invoking the common logical distinction between the assertion and its

3    proof . . . An allegation can be made public"—and thus trigger the bar—"*even if its*

4    *proof remains hidden*."  *Wang*, 975 F.2d at 1418 (emphasis added).  The Supreme

5    Court agrees: "Section 3730(e)(4)(A) bars actions based on publicly disclosed

6    allegations *whether or not the information on which those allegations are based has*

7    *been made public*."  *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 471

8    (2007) (emphasis added).

9          The fact that purportedly relevant documents "remain[] hidden" is therefore

10   inconsequential.  Even if documents such as the Ad Rep Flash Reports supported

11   Relators' allegations (and they do not, *see infra* at 20-21), the information in these

12   documents need not have been publicly disclosed for the jurisdictional bar to apply.

13         **E.     Prior Public Disclosures Alleged That the School's Practices**
           **Violated the Incentive Compensation Ban**
14

15         Relators also incorrectly assert that they were the first to allege that the

16   School *in practice* paid prohibited incentive compensation to admissions

17   employees.  Though that specific allegation is unnecessary to trigger the public

18   disclosure bar, it was in fact made in numerous public disclosures before both the

19   Original Complaint and the FAC were filed.

20         The 2005 Securities Action, for example, does not mention any written

21   compensation plan by the School, but instead describes alleged compensation

22   *practices* that purportedly violated the HEA.  (2005 Securities Compl. ¶¶ 228-234

23   (RJN Ex. 13).)  The 2005 Securities Action further alleges that the School used

24   various devices to disguise its alleged violations, (*see e.g., id.* ¶ 229 ("The president

25   told CW29 'incentives are against the rules but when you call them training items,

26   it is okay'")), and Representative Waters alleged that the School employed a "thinly

27   disguised incentive compensation or quota system" (2005 Hearing Report at 19

28   (RJN Ex. 12))—previewing the FAC's allegation that the School's written policy is

a "smoke screen used to disguise the fact that its recruiters are compensated solely based on recruitment, admission, and enrollment numbers."  (FAC ¶ 14.)

Numerous other public disclosures also alleged that career schools used "sham" written policies to cover up purportedly illegal compensation practices. (*See* School Dfts. Mot. to Dismiss, Doc. 150 ("Mot.") at 12-15.)  Relators themselves concede that a Notice of Proposed Rulemaking in 2010 "pointed out the same problem" later alleged in the FAC in 2011, namely "that the schools disguised their actual recruiter compensation practices behind a facially valid compensation plan."  (Opp. at 6-7.)[4]  Relators argue that such industry-wide disclosures were insufficient to identify the School's involvement in the alleged fraud.  (Opp. at 5-9.) But unlike the defendants in the cases on which Relators rely, the School was directly accused of being front and center in participating in alleged industry-wide abuses of the HEA incentive compensation ban.  (*See, e.g.*, 2005 Hearing Report, at 19-20; *see also* 2005 Securities Compl. ¶¶ 224-233.)  These circumstances lead to the inevitable logical conclusion that allegations against the industry implicate the School; and indeed Relators' counsel had no trouble targeting the School among other career education institutions sued on similar formulaic theories.  *Alcan*, 197 F.3d at 1019 (where circumstances make it "highly likely that the government could easily identify" the industry participants involved in the alleged wrongdoing, industry-wide disclosures suffice to trigger the bar); *U.S. ex rel. Jones v. Collegiate Funding Servs., Inc.*, 469 F. Appx. 244, 255 (4th Cir. 2012) (bar triggered where "the publically-available information underlying this case . . . does not establish

[4] Relators cannot rely on the FAC while ignoring public disclosures made between the filing of the FAC and the Original Complaint. The FCA does not countenance lawsuits by a relator with no direct or independent knowledge of the alleged fraud, who files a defective complaint that does not even survive scrutiny under Rule 8 (like Relators' Original Complaint), and then parrots information from intervening public disclosures in an amended pleading. *Rockwell*, 549 U.S. at 473 (rejecting an interpretation of the public disclosure bar that "would leave the relator free to plead a trivial theory of fraud . . . and later amend the complaint to include theories from the public domain or from materials in the Government's possession").

1   merely an industry-wide set of allegations" but named the defendant among

2   potential wrongdoers in the industry).  Taken together, the public disclosures of

3   industry-wide practices and the School's purportedly central role in those practices

4   was more than sufficient to alert the government to the alleged fraud.  *See United*

5   *States v. Catholic Healthcare West*, 445 F.3d 1147, 1151 n.1 (9th Cir. 2006) ("the

6   elements of the fraud allegation need not have been made public in a single

7   document") (citing cases); *U.S. ex rel. Reagan v. East Texas Med. Ctr. Reg.*

8   *Healthcare Sys.*, 384 F.3d 168, 174 (5th Cir. 2004) ("when the [various public

9   disclosures] are considered as a whole, the entire basis of [the relator's] claim has

10  been disclosed within the meaning of the FCA").

11       Because the School's allegedly illegal compensation practices were the

12  subject of prior public disclosures, the jurisdictional bar was raised even under

13  Relators' faulty interpretation of the public disclosure rule.

## III.   RELATORS DO NOT AND CANNOT SHOW THEY ARE ORIGINAL SOURCES

15       Relators devote little space, and even less effort, to their argument that Lee or

16  Mshuja are "original sources."  The limited arguments they make only underscore

17  the inescapable fact that neither Relator satisfies the original source requirement.

### A.   Neither Mshuja Nor Lee Has Direct or Independent Knowledge of the Alleged Fraud

#### 1.   Mshuja Is Not an Original Source

21       Faced with Mshuja's testimony that everything he learned about this case

22  came from his attorneys, the Internet, or Lee (Mot. at 24-26), Relators do not even

23  attempt to show that Mshuja has direct or independent knowledge of information

24  underlying their claims.  The only discussion of Mshuja's knowledge in the

25  opposition brief consists of three conclusory sentences, citing no supporting

26  evidence, to the effect that Mshuja had a "working relationship with recruiters in

27  the admissions department," and on that basis supposedly has direct and

28

REPLY ISO RULE 12(B)(1) MOT. TO DISMISS -
CASE NO. CV 07-01984 PSG (MANX)

1   independent knowledge of the alleged HEA violations (Opp. at 36, 37-38).  This in

2   no way satisfies Relators' burden.  *See, e.g.*, *U.S. ex rel. Aflatooni v. Kitsap*

3   *Physicians Svcs.*, 163 F.3d 516, 526 (9th Cir. 1999) (relator not an original source

4   where Relator could not point to any "evidence in the record which suggests he has

5   'information,' as opposed to speculation," of the alleged fraud).[5]

### 2. Lee Has No Knowledge of Any Compensation Practices at the School During the Relevant Time Period or at Any Campus Where She Did Not Work

8   Similarly, Relators do not and cannot dispute that Lee has no knowledge—

9   direct, independent, or otherwise—of the School's compensation practices for any

10  school campus during the relevant time period from 2005 onwards, or at any

11  campus other than where she worked.  Not only did Lee expressly disavow such

12  knowledge, (Mot. at 21-22), the only compensation practices she was able to

13  describe were entirely compliant with the HEA.  (Mot. at 16-21.)

14  Relators suggest that Lee's knowledge of the School's compensation

15  practices prior to January 1, 2005 makes her an original source for all subsequent

16  time periods and all other locations.  (Opp. at 40.)  Setting aside that Lee was

17  unaware of any non-compliant compensation practices during the time she worked

18  for the School, the FCA simply "does not permit such claim smuggling."  *Rockwell*,

19  529 U.S. at 476.  In *Rockwell*, the Supreme Court rejected the argument that a

20  relator could have "direct and independent knowledge" for alleged fraudulent

21  conduct that took place *after* the relator stopped working for the defendant:

22  *Because [the Relator] was no longer employed by Rockwell at the time*, he

23  did not know that the pondcrete was insolid; he did not know that pondcrete

24  _____

[5] Relators challenge the School Defendants' reliance on *U.S. ex rel. Devlin v. California*, 84 F.3d 358 (9th Cir.1996), suggesting that working in (or in Mshuja's case, near) the School's admissions department necessarily makes them original sources.  (Opp. at 36.)  But the Ninth Circuit has repeatedly rejected similar arguments.  *See Alcan*, 197 F.3d at 1020-21 (rejecting argument that relator became aware of a fraud "due to his status as a member of [a] union" because relator had no direct involvement with alleged fraudulent scheme); *Aflatooni*, 163 F.3d at 525-26.

1    storage was even subject to RCRA; he did not know that Rockwell would fail

2    to remedy the defect; he did not know that the insolid pondcrete leaked while

3    being stored onsite; and, of course, he did not know that Rockwell made false

4    statements to the Government regarding pondcrete storage.

5    *Id.* at 475 (emphasis added).

6          Multiple courts have since confirmed that a relator cannot have direct and

7    independent knowledge of alleged fraudulent activity occurring after the relator's

8    employment with the defendant ended, even if the relator had knowledge of similar

9    activity during her employment (which is not the case here).  *See, e.g.*, *U.S. ex rel.*

10   *Vuyyuru v. Jadhav*, 555 F.3d 337, 352-53 (4th Cir. 2009) ("Relator Vuyyuru cannot

11   be a direct and independent source with respect to any allegations of fraud

12   involving SRMC or its facilities after March 2003, because, by that time, Relator

13   Vuyyuru had withdrawn from practicing medicine at SRMC"); *U.S. ex rel. Duxbury*

14   *v. Ortho Biotech Prods. L.P.*, 2010 WL 3810858, at *2 (D. Mass. Sept. 27, 2010)

15   (holding that Relator lacked "direct and independent" knowledge for claims

16   postdating employment even where Relator qualified as original source for claims

17   during employment period); *U.S. ex rel. Repko v. Guthrie Clinic, P.C.*, 2011 WL

18   3875987 at *16-17 (M.D. Pa. Sept. 1, 2011) (finding that relator did not have direct

19   or independent knowledge of information post-dating his employment.).

20         The one case that Relators cite for their position, *United States ex rel. Smith*

21   *v. Yale Univ.*, 415 F. Supp. 2d 58, 74 (D. Conn. 2006), based its analysis on the

22   Tenth Circuit's ruling on original source issues in *Rockwell* that was later reversed

23   by the Supreme Court.  *Smith,* 415 F. Supp. 2d at 73-74 (citing *U.S. ex rel. Stone v.*

24   *Rockwell Int'l Corp.*, 282 F.3d 787, 802-03 (10th Cir. 2002)).  The entire legal

25   premise for the holding in *Smith* has therefore been gutted.  But even if *Smith* were

26   still good law, the case is distinguishable.  In *Smith*, "only a small number of the

27   allegations" involved conduct that took place after the relator ceased working for

28   the defendant.  415 F. Supp. 2d at 73.  By contrast, during the more than half-

REPLY ISO RULE 12(B)(1) MOT. TO DISMISS -
CASE NO. CV 07-01984 PSG (MANX)

1   decade long time period at issue in this lawsuit—2005 on forward—Lee was

2   employed at the School for just five months in 2005, and disavowed any knowledge

3   of the School's compensation practices during that time.  (Mot. at 21-22.)

4          Similarly, Lee's lack of any knowledge regarding campuses where she did

5   not work prevents her from being an original source for the vast majority of the

6   campuses covered by Relators' complaint.  *See, e.g.*, *Duxbury*, 2010 WL 3810858,

7   at *2 (finding that relator only had direct or independent knowledge as to

8   geographic region over which he was district manager); *see also Hockett*, 498 F.

9   Supp. 2d at 54 (finding relator was not an original source of institution-wide

10  allegations where there was "no evidence that relator had any direct or independent

11  knowledge of anything that happened at any other Columbia/HCA hospital–let

12  alone that fraud was committed at them").  Relators make no argument on this

13  issue, effectively conceding the point.

14          **3.    Lee Has No Knowledge of the Alleged Fraud Even from The Time Period She Worked for the School**

15

16          In any event, Lee's deposition testimony conclusively established that she

17  had no knowledge of any violation of the ban on incentive compensation by the

18  School, *even during the period she worked there*.  (Mot. at 16-20.)  In fact, at her

19  deposition, Lee directly contradicted the central allegations in the FAC, testifying

20  that the School adhered to its written compensation plan and took other factors into

21  account in evaluating and compensating admissions representatives.  (Mot. 15-23.)

22  Relators' attempts to evade this dispositive testimony all fail.

23          a.    *The Lee Affidavit Is a Sham*

24          Unable to rehabilitate Lee's testimony through extensive questioning at her

25  deposition, Relators' counsel has now produced an affidavit from Lee that

26  contradicts her sworn deposition testimony.  (Affidavit of Nyoka June Lee filed in

27  support of Relators' Opposition, Doc. 190-4  ("Lee Affidavit").)  The Lee Affidavit

28  is a sham and should be disregarded.

1    *First*, Relators present no argument based on the contents of the Lee

2    Affidavit, stating only that it "is incorporated hereto for all purposes."  (Opp. at 37.)

3    The Court is under no obligation to consider the affidavit in the absence of any

4    reasoned explanation as to how it bears on the issues before the Court.  *See* L.R. 7-9

5    (opposing papers must include a "*complete* memorandum which shall contain a

6    *statement of all the reasons in opposition*" to a motion) (emphasis added); *Indep.*

7    *Towers of Wash. v. Washington,* 350 F.3d 925, 929-30 (9th Cir. 2003) ("Our circuit

8    has repeatedly admonished that we cannot manufacture arguments [for a party],"

9    that "we review only issues which are argued specifically and distinctly," and that

10   "[w]e require contentions to be accompanied by reasons.")

11   *Second,* Lee's affidavit is a transparent attempt to rewrite the record.  It is

12   well established that "a party cannot create an issue of fact by an affidavit

13   contradicting his prior deposition testimony," and courts routinely disregard such

14   sham evidence.  *Yeager v. Bowlin*, 693 F.3d 1076, 1078 (9th Cir. 2012).

15   In paragraphs 7 and 8 of the affidavit, Lee states: "I had a very clear

16   understanding during my employment at [the School] that my compensation was

17   based *solely* on my recruitment numbers," (Lee Affidavit ¶ 7 (emphasis added)),

18   and that "[m]aking my  numbers was the *only* requirement to get a raise."  (*Id.* ¶ 8

19   (emphasis added).)  In direct contrast, Lee testified at her deposition that:

20   • "Part of my performance" and "[p]art of my raise" was based on

21   compliance with 18 qualitative factors set out in written compensation

22   programs for admission representatives.  (Lee Depo. Transcript ("Lee

23   Dep."), Ex. A to Corrected Phadke Decl., Doc. 192, at 359:21-361:24; *see*

24   also Phadke Decl. Exs. G-I (under seal), Docs. 162-7 to 162-9 (written

25   compensation plan materials setting out 18 factors).)

26   • Non-enrollment related criteria set forth in written compensation policies

27   accurately described her job responsibilities, and she understood her

28   performance would be evaluated based on those criteria.  (Lee Dep. 66:3-

72:18; 121:7-123:11; *see also* Phadke Decl. Exs. G-I (under seal).)

- Her eligibility for a raise was based on numerical and "other factors" set forth in the written compensation program,  (Lee Dep. 354:4-12), and "in [her] experience the directors of admissions, the other people that were responsible for determining salary raises . . . just did what the written policy told them to do" and "the written policy is what she followed." (*Id.* at 114:2-115:11; 170:6-19.)

- She signed documentation for a raise she received in 2002, which provided an explanation for the raise that was entirely *unrelated* to enrollment numbers.  (*Id.* at 88:8-90:4; Phadke Decl. Ex. J (under seal), Doc. 162-10.)

The contradictions do not stop there.  In paragraph 7 of the Lee Affidavit, Lee states: "My actual recruitment numbers, and my Lead-to-Conversion ratios were routinely discussed with me . . .  as being the *entire* basis for grading my performance."  (Lee Affidavit ¶ 7 (emphasis added).)  Paragraph 9 of the Lee Affidavit similarly states: "If Corinthian Colleges had any other basis" besides enrollment numbers "for evaluating my performance as a recruiter, I was never made aware of what those factors were."  (*Id.* ¶ 9.)  Lee's deposition testimony, in direct contrast, was that:

- She "underst[ood] that [her] performance was being evaluated" based on more than a dozen qualitative, non-enrollment criteria identified in performance reviews and written compensation plans that she signed, (Lee Dep. at 68:7-15, 69:9-23, 70:10-15, 71:16-22, 72:6-72:18, 121:7-123:9), and that these criteria reflected "what she was supposed to do as an admissions rep." (*Id.* 66:21-22.)

- She understood that directors of admission and others followed the School's written policies, (*id.* at 114:2-115:11; 170:6-19), which spelled out non-enrollment criteria that were graded in performance evaluations.

(*Id.* 114:2-5 (admitting that Lee "knew the company policies")); *see also*
Phadke Decl. Ex. G (written compensation policy signed by Lee setting
out qualitative evaluation factors) (under seal).)

- She did not know what factors her supervisors considered when grading
  her performance evaluation forms. (*Id.* at 72:19-73:7, 74:9-15, 77:3-
  79:24, 93:23-94:12, 95:2-21.)

- She believed an evaluation she received giving her high scores on
  qualitative criteria reflected an "honest" evaluation. (*Id.* at 79:22-80:20.)

The Lee Affidavit is not an attempt to "elaborat[e] upon," "explain[]" or
"clarify[]" prior testimony. *See Yeager*, 693 F.3d at 1081. Far from it. The
affidavit is entirely conclusory and includes no explanation whatsoever for
contradicting Lee's extensive prior deposition testimony. The "clear and
unambiguous" inconsistencies between the deposition and affidavit expose the Lee
Affidavit for a sham, and it should be disregarded as such. *Id.* at 1080; *Foster v.
Arcata Assoc., Inc.*, 772 F.2d 1453, 1462 (9th Cir. 1985) (a declaration "in direct
contradiction with [deponent's] prior deposition testimony" may be disregarded);
*Lanzarone v. Guardsmark Holdings, Inc.*, 2006 WL 4393465 at *6 (C.D. Cal. Sept.
7, 2006) ("To the extent Plaintiff's declaration can be read to contradict his clear
deposition testimony . . . the Court disregards the declaration and further finds that
the declaration is contradictory and a sham and cannot be credited").

*Third*, even if the Lee Affidavit were considered, it does not outweigh Lee's
sworn deposition testimony. Relators must establish subject matter jurisdiction "by
a preponderance of the evidence . . . using competent proof," *Longstaffe*, 296 F.
Supp. 2d at 1190 (citation omitted), and the Court may "weigh the evidence
presented, and determine the facts in order to evaluate whether [it has] power to
hear the case." *Kohler v. CJP, Ltd.*, 818 F. Supp. 2d 1169, 1172 (C.D. Cal. 2011);
*see also Vuyyuru*, 555 F.3d at 349. In contrast to Lee's attorney-drafted,
conclusory, and self-serving affidavit, Lee's deposition testimony was extensive

1   and detailed, and it clearly showed that she has no direct or independent knowledge

2   of any incentive compensation violation at the School.  Significantly, Lee's attorney

3   was at her deposition and was unable to rehabilitate her testimony despite an

4   extensive 90 minutes of questioning, none of which is attached to Relators'

5   opposition.  (Supp. Young Decl. in Support of School Dft's Mot. ("Supp. Young

6   Decl.") ¶ 3.)  His attempt to do so by way of an after-the-fact declaration, where the

7   witness is not subject to cross examination, should be rejected.

8              b.      *The Deposition Testimony Cited by Relators Does Not*
9                      *Establish Direct and Independent Knowledge*

10          Unable to counter Lee's deposition testimony, Relators all but ignore it.

11  Remarkably, on a motion on which they bear the burden of proof, Relators' *only*

12  discussion of Lee's testimony appears in two sentences and a string cite to a

13  handful of passages from the transcript.  (Opp. at 38.)  This feeble gesture only

14  underscores the complete absence of proof that Lee is an original source.

15          Relators argue that Lee's deposition testimony shows that "she was evaluated

16  based entirely on her 'numbers'."  (*Id.*)  Not so.  As discussed above and in the

17  School Defendants' motion, Lee repeatedly testified that far from being evaluated

18  based "entirely" on numbers, she understood that her performance was judged on

19  many other factors as well.  (Mot. at 17-20.)  Moreover, she testified that her only

20  basis for saying her compensation was tied to "numbers" was her belief that she

21  could be *terminated* for not meeting enrollment targets.  (*Id.* at 20-21; Lee Dep. at

22  48:11-16, 49:5-52:17, 203:17-205:13.)  Termination and incentive compensation

23  are two different things, however; only the latter is prohibited by the HEA.  *Lee*,

24  655 F.3d at 993.  As Lee acknowledged, "being compensated is one thing, your

25  numbers is another when you work in admissions."  (Lee Dep. at 140:14-15.)

26          The snippets of testimony Relators cite for their position does not support it.

27  For instance, Relators cite Lee's testimony explaining that she received "flash"

28  reports tracking her numbers, (Opp. at 38, citing Lee Dep. at 54:3-54:23), but as

1   discussed below, Lee acknowledged that those reports were not used in connection

2   with compensation.  *See infra* at 20-21.

3        Relators also point to Lee's testimony that she was "sure" her supervisor

4   recommended her for a promotion in 2001 based on "numbers" because of a

5   conversation she had with him.  (*Id.*, citing Lee Dep. 81:10-83:15.)  Setting aside

6   that the promotion occurred well outside the relevant time period, Lee was unable

7   to identify when or where the conversation took place, whether anyone else heard

8   it, or what specifically was said.  (Lee Dep. 82:7-83:8.)  The only factual basis Lee

9   offered to support that this conversation ever happened was that her supervisor

10  "was always talking about [my numbers] with me."  (*Id.* at 83:6-10.)  But talking

11  about numbers does not amount to a violation of the HEA.  "By the very job

12  description, a recruiter's job is to recruit," 67 Fed. Reg. 67056, and tracking

13  enrollment numbers is not prohibited.  *Lee*, 655 F.3d at 993-994.  Indeed, the safe

14  harbor *permitted* promotions based on numbers as long as they were based on other

15  factors as well, *id.*, and Lee repeatedly testified to her understanding that the School

16  considered factors *in addition* to numbers in giving raises.  *Supra* at 15-16.[6]

17       Relators also cite testimony that Lee believed she got a promotion in 2003

18  based on her numbers, and that other representatives were compensated based on

19  their numbers.  (Opp. at 38, citing Lee Dep. at 90:13, 94:13, 140:12-142:22.)  But

20  when asked whether anyone told her that her numbers were the reason for the 2003

21

---

22  [6] Relators' suggestion that these non-enrollment factors were merely "basic job
    requirements" fails.  (Opp. at 3.)  Lee was evaluated on promptness and accuracy of
23  communications, accurate classification of student inquiries, compliance with
    applicable regulations, ensuring paperwork was completed, and accuracy in
24  recordkeeping, among other things.  (Lee Dep. at 67:6-72:18; Phadke Decl. Exs. G-
    K (under seal).)  These are very the kind of "concrete, merit-based metrics" that the
25  Ninth Circuit has indicated would make for a compliant compensation system
    under the HEA.  *Lee*, 655 F.3d at 995. n.6 (approving of the compensation system
26  addressed in *U.S. ex rel. Pilecki-Simko v. Chubb Institute*, 2010 WL 1994794 at *
    3-4 (D.N.J. May 17, 2010), *aff'd by* 443 F. Appx. 754 (3d Cir. 2011), which
27  awarded points "for not only enrollment starts, but also student retention, success at
    recruiting activities, records-keeping, and professionalism").

28

1   promotion, Lee conceded: "No, I do not recall a conversation like that."  (Lee Dep.

2   at 90:11-25.)  Similarly, Lee could provide no specifics to back up her testimony

3   about how other representatives were compensated, and in fact admitted that she

4   "never discussed their compensation" with them (*id.* at 142:3-22), and never

5   promoted anyone herself.  (*Id.* at 101:19-102:7.)

6       Relators also point to Lee's testimony that the director in San Francisco told

7   her to "[p]roduce the numbers," (Opp. at 38, citing Lee Dep. 127:2-130:17), but

8   ignore Lee's testimony that this discussion did *not* occur in the context of

9   addressing her compensation.  (Lee Dep. 129:10-130:1.)  Tellingly, Relators'

10  Exhibit 3, which purports to include all of the testimony cited in their brief, *omits*

11  the page of Lee's testimony in which she makes this clear  (Opp., Ex. 3. Doc. 190-3

12  (including pages 127-128 and 130 of the transcript, and omitting page 129).)

13      Finally, in support of their claim that Directors of Admissions were paid

14  based solely on enrollment numbers, Relators rely on a single line of deposition

15  testimony that says nothing of the sort.  (Opp. at 38, citing Lee Dep. 150:14.)

16  When she was directly questioned about Directors of Admission, Lee confirmed

17  that she had no firsthand knowledge of how they were compensated other than by a

18  fixed salary.  (Lee Dep. 98:12-21, 134:8-21, 150:4-7; Mot. at 21.)

19       In contrast to the meager and wholly unremarkable testimony cited in the

20  opposition brief, the School Defendants' motion catalogues admission after

21  admission in which Lee directly contradicted the allegations in the complaint and

22  conceded that she had no knowledge of any relevant information from the operative

23  time period.  (Mot. at 15-23.)  Relators do not acknowledge or address this

24  evidence, effectively conceding they have no response to it.

25                    c.    *The Ad Rep Flash Reports Prove Nothing*

26      Relators' reliance on "Ad Rep Flash Reports" is equally unavailing.  Relators

27  claim that such reports "demonstrate that the Defendant compensates its recruiters

28  based solely on their success in securing enrollments in violation of the HEA."

1  (Opp. at 22.)  This bare assertion is devoid of any supporting evidence.  The record

2  shows that the reports were not used as the basis for compensation decisions, let

3  alone as the *sole* basis.  Lee testified that the reports were not used to make

4  compensation decisions, but rather, to stimulate competition.  (Lee Dep. at 241:1-

5  15.)  And Lee admitted, and the reports readily confirm, that the reports nowhere

6  mention compensation.  (Lee Dep. 148:23-149:13; Add'l Excerpts to Lee Dep.

7  (Supp. Young Decl., Ex. A), at 55:11-15; *see* Lee Affidavit, Ex. 1 (under seal).)

8  The fact that Lee saw reports that tracked enrollment numbers while she worked at

9  the School does not somehow make her an "original source" of Relators'

10  allegations, which relate to the School's *compensation* practices *after* that time.

11                          d.       *EDMC and Hendow Are Wholly Inapposite*

12          Like the evidence they cite, the legal authorities on which Relators rely are

13  both sparse and inapposite.  Relators spend pages discussing *EDMC* in connection

14  with their original source arguments (Opp. at 28-30), but *EDMC* has nothing to do

15  the original source question.  In *EDMC*, the court merely found that relators had

16  adequately pleaded a claim for relief.  *See EDMC*, 871 F.Supp.2d 433, 462.  The

17  defendants' arguments in that case concerning the relators' lack of knowledge were

18  made in the context of arguing that the complaint failed to meet the specificity

19  requirement of Rule 9(b).  *Id.* at 449-50.  Relators' lengthy digression into the

20  *EDMC* opinion serves no purpose.

21          Relators also cite *EDMC*, as well as *U.S. ex rel. Hendow v. University of

22  Phoenix* ("*Hendow*"), in connection with a rambling and incoherent argument

23  concerning program participation agreements ("PPAs").  (*See* Opp. at 16-20.)

24  Relators make much of *Hendow's* and *EDMC's* discussion of the regulatory

25  structure for certifying compliance with and submitting claims under Title IV of the

26  HEA, but to no end.  *Hendow* and *EDMC* addressed only the sufficiency of the

27  pleadings and say nothing about the level of knowledge a relator must have about

28  the Title IV certification and claims process to qualify as an original source.  Courts

REPLY ISO RULE 12(B)(1) MOT. TO DISMISS -
CASE NO. CV 07-01984 PSG (MANX)

1   addressing that specific question have found that a relator's lack of knowledge of

2   PPAs and/or the relevant scheme under the HEA disqualify the relator as an

3   original source.  *See Lopez v. Strayer Educ. Corp.*, 698 F. Supp. 2d 633, 640 (E.D.

4   Va. 2010); *U.S. ex rel. Leveski v. ITT Educ. Svcs.*, 2011 WL 3471071 (S.D. Ind.

5   Aug. 8, 2011); *Schultz v. DeVry, Inc.*, 2009 WL 562286 (N.D. Ill. Mar. 4, 2009).

6   Relators do not and cannot dispute that just like the relators in those cases, they lack

7   any knowledge about the School's PPAs or any other statements the School made

8   to the government, and were unaware of the HEA's prohibition on incentive

9   compensation until being recruited for this lawsuit.  (Mot. at 22-23, 24.)

10          In any event, the School Defendants' arguments do not depend on Relators'

11   lack of knowledge PPAs or the HEA.  While Relators do not know information

12   relating to these aspects of their claims, more fundamentally, they lack direct or

13   independent knowledge of the compensation practices alleged in this lawsuit.

14   (Mot. at 16-22, 24-26.)   As such, they are not original sources.

15          **B.    Relators Present No Evidence That They Met the Voluntary Pre-**
         **Filing Disclosure Requirement**

16

17          Relators also fail to show that they made a timely voluntary disclosure to the

18   government—an independent requirement to qualify as an original source.  Relators

19   merely assert, without evidentiary support, that they submitted a draft complaint

20   with unspecified "attachments" to some U.S. Attorney's office.  (Opp. at 36-37.)

21   But this unsubstantiated assertion does not satisfy Relators' evidentiary burden.

22   *See, e.g.*, *Toliver v. Benov*, 2010 WL 4916632 (C.D. Cal., Sept. 29, 2010) (no

23   jurisdiction where plaintiff failed "to provide any admissible evidence to support

24   any of his conclusory assertions").[7]

25   ---
     [7] Relators' suggestion that they will provide the draft complaint at a later date for *in
26   camera* review cannot be entertained.  Nothing prevented Relators from making an
     *in camera* filing with their opposition papers.  (*See* L.R. 79-5.)  Even if they had, *in
27   camera* review would be improper.  Relators bear the burden of showing that they
     made the necessary disclosure. They would "waive any privilege that could
28   possibly [be] attached [by] affirmatively relying on the privileged information."

Relators cannot in any event meet the pre-filing disclosure requirement by providing a draft complaint and unspecified attachments to the government.  To qualify as original sources, Relators must provide the government not with a draft complaint, but with the "information on which their allegations are based,"  31 U.S.C. § 3730(e)(4), in other words, their "proof."  *Wang*, 975 F.2d at 418.  As shown in the School Defendants' motion, Relators' Rule 26 disclosures admitted that the *only* documentary proof supporting their claims was a "Confidential & Privileged Disclosure Statement made to the U.S. Department of Justice Pursuant to 31 U.S.C. § 3730(e)(4)(b) and (b)(2), including 402 pages of internal communications between Corinthian Colleges and Nyoka Lee."  (Mot. at 43.)  And Relators' discovery responses established that they provided this document to the government only *after* they filed their complaint, too late to satisfy the disclosure requirement.  (*Id.* at 43-44.)  Indeed, Relators' claim that they timely satisfied the disclosure requirement of 31 U.S.C. § 3730(e)(4)(B) is belied by the very title that they gave the document they provided to the government on April 26, 2007— a "Disclosure Statement made to the U.S. Department of Justice Pursuant to 31 U.S.C. § 3730(e)(4)(b) and (b)(2)."  (Mot at 43.)  Relators offer no response to this argument, and effectively concede it.

As a result, Relators' claims are "doubly doomed."  *Hockett*, 498 F. Supp. 2d at 54-55.  Relators fail to show that they have direct or independent knowledge, and also fail to meet the voluntary pre-filing disclosure requirement.

## C.  Relators Present No Evidence That They Had A "Hand" in the Public Disclosures

Relators' claims for original source status in fact are "triply doomed."  Relators also make no attempt to show that either one of them satisfies the independent requirement under Ninth Circuit law that they have a "hand" in the

*Shared Med. Res., LLC v. Histologics,* LLC, 2012 WL 5570213 at *2 (C.D. Cal. Nov. 12, 2012); *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999).

1   public disclosure of their allegations.  *See Horizon Health*, 565 F.3d at 1201 (citing

2   *Wang*, 975 F.2d at 1418).  Accordingly, Relators fail to qualify as "original

3   sources" on this score as well.  (Mot. at 44-45.)

4          **D.     No Amount of Additional Discovery Will Help Relators**

5          Tacitly conceding that the record negates any argument that they are original

6   sources, Relators seek additional discovery under Rule 56(d).  (Opp. at 38-42.)  No

7   amount of discovery, however, can change the fact that Relators have no direct or

8   independent knowledge *of their own* to contribute to this case.   Indeed, the very

9   request for more discovery confirms that Relators' entire lawsuit depends on

10  information completely unknown to them.

11         Rule 56(d) requires Relators to show that they cannot present facts "*essential*

12  to justify [their] opposition" without further discovery.  (Emphasis added.)  But

13  here, further discovery would be both futile and cumulative.  Relators want

14  discovery of Ad Rep Flash Reports dating from 2000 to 2010 for 100 campuses.

15  (Opp. at 39.)  Such reports are unrelated to any jurisdictional issue before the Court.

16  Whether there was a public disclosure depends on the public record, not on

17  information in reports Relators can only access through discovery.  Nor are the

18  reports relevant to the original source question, since all of the relevant evidence on

19  that issue is already in Relators' possession.  As the court in *United States ex rel.*

20  *Glaser v. Wounded Care Consultants, Inc*. held in denying a similar request in the

21  context of a public disclosure motion, the relator "herself is in the best position to

22  know what the source of her knowledge was."  2007 WL 2934885, at *1 (S.D. Ind.

23  Oct. 5, 2007); *see also Burlington Northern Santa Fe R. Co. v. Assiniboine and*

24  *Sioux Tribes*, 323 F.3d 767, 774 (9th Cir. 2003) (motion for additional discovery

25  properly denied where requested discovery "bears no demonstrable nexus" to the

26  dispositive issue and "would be futile" to opposing summary judgment).

27         Moreover, given that Relators cannot show they are original sources based on

28  the more than 70 pages of Ad Rep Flash Reports they have already submitted in

connection with their opposition, piling on a decade's worth of additional reports will not help. *Sergio Const., Inc. v. Northrbook Property & Cas. Ins. Co.*, 5 Fed. Appx. 761, at *1 (9th Cir. 2011) (Rule 56(d) motion "was properly denied . . . because [the plaintiff] desired only to uncover cumulative evidence"). Even Relators acknowledge that the discovery they seek is not "essential" to their opposition, but at most would only "help corroborate" certain aspects of Lee's testimony. (Opp. at 39.)

## CONCLUSION

This is not a case where "whistleblowing insider[s]" have brought a fraud to the government's attention. *Wang,* 975 F.2d at 1419. This is a formulaic, parasitic lawsuit that was manufactured by lawyers, even down to the purported "evidence" submitted in opposition to this motion. The Original and First Amended Complaints in this case merely repeat allegations already in the public domain, and Relators confirmed in sworn deposition testimony that they have no direct or independent knowledge whatsoever about the fraud they have alleged. The FCA expressly rejects federal court jurisdiction over such parasitic claims. Relators' complete failure to prove that there is jurisdiction over this case requires that it be dismissed with prejudice.

Respectfully submitted,

DATED:  February 15, 2013

MUNGER TOLLES & OLSON LLP
Blanca F. Young
Achyut J. Phadke


By: /s/ *Blanca F. Young*


Attorneys for Defendants
Corinthian Colleges, Inc., David Moore, and Jack D. Massimino