ROBERT B. HUBBELL (BAR NO. 100904)
RHubbell@mofo.com
RYAN W. BORHO (BAR NO. 275484)
RBorho@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

RYAN G. HASSANEIN (BAR NO. 221146)
RHassanein@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-6606
Facsimile: (415) 268-7522

Attorneys for Defendant
ERNST & YOUNG LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. NYOKA LEE and TALALA MSHUJA,<br><br>Plaintiff,<br><br>vs.<br><br>CORINTHIAN COLLEGES INC., et al.<br><br>Defendants. | CASE NO. CV 07-01984 PSG (MANx)<br><br>**DEFENDANT ERNST & YOUNG LLP'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Ryan G. Hassanein, Declaration of Timothy J. Hatch, and [Proposed] Order filed concurrently herewith]<br><br>Date:  June 10, 2013<br>Time:  1:30 p.m.<br>Ctrm:  880<br>Judge: Hon. Philip S. Gutierrez |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 10, 2013, or as soon thereafter as the matter may be heard, in Courtroom 880, United States Courthouse, 255 East Temple Street, Los Angeles, California, 90012, before the Honorable Philip S. Gutierrez, Defendant Ernst & Young LLP ("EY") will, and hereby does, move the Court for an order awarding EY its attorneys' fees against Relators' counsel, Scott Levy, pursuant to Federal Rule of Civil Procedure 54(d), 28 U.S.C. § 1927, and this Court's inherent authority to impose sanctions.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Ryan G. Hassanein, the accompanying Declaration of Timothy J. Hatch, all pleadings and records on file in this case, and any argument at the hearing of this matter.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 7, 2013.

Dated:   April 25, 2013                     MORRISON & FOERSTER LLP


                                            By:  /s/ Ryan G. Hassanein
                                                 Ryan G. Hassanein

                                            Attorneys for Defendant
                                            ERNST & YOUNG LLP

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.   INTRODUCTION ........................................................................................... 1

II.   PROCEDURAL HISTORY ............................................................................ 2

III.  ARGUMENT ................................................................................................... 6

    A.   Relators' Counsel Engaged In Reckless Conduct From the Outset of This Lawsuit. ............................................................................ 7

    B.   EY's Attorneys' Fees Are Reasonable. ................................................ 12

IV.  CONCLUSION ............................................................................................. 15

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*B.K.B. v. Maui Police Dep't*,
  276 F.3d 1091 (9th Cir. 2002) ................................................................6

*Blum v. Stenson*,
  465 U.S. 886 (1984) ..............................................................................12

*Buster v. Greisen*,
  104 F.3d 1186 (9th Cir. 1997) ..............................................................11

*Carson v. Billings Police Dep't.*,
  470 F.3d 889 (9th Cir. 2006) ................................................................12

*Christensen v. Stevedoring Servs. of Am.*,
  557 F.3d 1049 (9th Cir. 2009) ..............................................................12

*City of Burlington v. Dague*,
  505 U.S. 557 (1992) ..............................................................................12

*Ferland v. Conrad Credit Corp.*,
  244 F.3d 1145 (9th Cir. 2001) ..............................................................12

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ..................................................................6

*Lahiri v. Universal Music & Video Distrib. Corp.*,
  606 F.3d 1216 (9th Cir. 2010) ........................................................ 6-7, 11

*Orian v. Fed'n Int'l des Droits de L'Homme*,
  No. 11-cv-6904 PSG, 2012 WL 994643 (C.D. Cal. Mar. 22, 2012) ...........14

*The Beam System, Inc. v. Checkpoint Sys., Inc.*,
  No. CV 95-4068-RMT AJWX,
  1997 WL 423113 (C.D. Cal. July 16, 1997) ................................... 13, 14

*Trauth v. Spearmint Rhino Cos. Worldwide, Inc.*,
  No. EDCV 09-01316-VAP, 2012 WL 4755682 (C.D. Cal. Oct. 5, 2012) ... 14-15

*Trulis v. Barton*,
  107 F.3d 685 (9th Cir. 1995) ............................................................6, 11

*U.S. ex rel. Herbert v. Nat'l Acad. of Scis.*,
   No. 90-2568, 1992 WL 247587 (D.D.C. Sept. 15, 1992) ................................ 11

*U.S. ex rel. Leveski v. ITT Educ. Servs.*,
   No. 1:07-cv-0867-TWP-MJD, 2012 WL 1028794 (S.D. Ind. Mar. 26,
   2012) ........................................................................................................... 11

*W. Coast Theater Corp. v. City of Portland*,
   897 F.2d 1519 (9th Cir. 1990) .................................................................... 11

**STATUTES**

28 U.S.C.
   § 1919 ............................................................................................................ 1
   § 1927 .......................................................................................... 1, 5, 6, 11

Higher Education Act of 1965 ("HEA") ....................................................... 2, 3

**OTHER AUTHORITIES**

Fed.R. Civ. P.
   Rule 11 ........................................................................................................ 10
   Rule 12(b)(1) ...................................................................................... 1, 5, 10
   Rule 16 ........................................................................................................ 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

After first recruiting Nyoka Lee and Talala Mshuja ("Relators") to pose as "whistleblowers" in this case, Texas-based attorney Scott Levy ("Relators' Counsel" or "Counsel") filed this False Claims Act ("FCA") suit against Corinthian Colleges, Inc. ("Corinthian" or "the School"), Jack Massimino, and David Moore (collectively, the "School Defendants") and the auditor of Corinthian's financial statements, Ernst & Young LLP ("EY"). On March 15, 2013, the Court granted Defendants' jurisdictional motions to dismiss under Rule 12(b)(1) and the FCA's public disclosure bar. EY now moves under 28 U.S.C. § 1927 for an award against Relators' Counsel of the attorneys' fees it incurred between the unsealing of the original complaint on February 25, 2009, through March 18, 2013, the date the Court entered its order granting Defendants' jurisdictional motions.

Prior to meeting their Counsel, neither Relator had *any* intention of filing this lawsuit, let alone *any* reason to suspect *any* wrongdoing by *any* Defendant. Moreover, as the Court found when it granted Defendants' Rule 12(b)(1) motions, neither Relator had personal knowledge of the factual allegations pled in this case. The source of Relators' allegations was instead their Counsel and numerous prior public disclosures, including several earlier *qui tam* actions filed by Relators' Counsel against other for-profit schools and their auditors. Notwithstanding the obvious defects in Relators' claim to jurisdiction in this attorney-driven litigation, Relators' Counsel pursued this inherently flawed suit and unreasonably and vexatiously multiplied the proceedings at every step along the way. In these circumstances, EY is entitled to recover from Relators' Counsel the attorneys' fees it incurred while defending this lawsuit since inception.[1]

---

[1] EY is not seeking to recover its attorneys' fees from Relators themselves, only their Counsel. EY has filed a separate Motion for Just Costs Under 28 U.S.C. § 1919, seeking $6,138.60 in costs from Relators. [Dkt. No. 238.]

## II. PROCEDURAL HISTORY

On March 26, 2007, Relators and their Counsel filed the original complaint in this case. The complaint alleged that Corinthian paid its admissions representatives based, in part, on their success in recruiting students. (Compl. ¶ 31. [Dkt. No. 1]) As a consequence, the complaint asserted, Corinthian's certifications of compliance with the incentive compensation ban of the Higher Education Act of 1965 ("HEA") were false. (*Id.* ¶ 41.)

As to EY, Relators alleged that EY falsely stated to the U.S. Department of Education ("DoE") that Corinthian's financial statements complied with Generally Accepted Accounting Principles ("GAAP") despite their failure to disclose "a massive liability owed to the United States" as a result of the School's alleged non-compliance with the HEA's incentive compensation ban. (*Id.* ¶ 47.) Relators further alleged that EY falsely stated to the DoE that its financial statement audits complied with Generally Accepted Accounting Standards ("GAAS"). (*Id.* ¶ 44.) Finally, Relators alleged that EY conducted the School's compliance audits and falsely stated that the School was in compliance with the HEA's incentive compensation ban. (*Id.* ¶ 44.)

On February 25, 2009, after investigating the merits of Relators' claims, the United States informed the Court that it would not intervene in this *qui tam* action. [Dkt. No. 21.]

In December 2009, the Court granted Defendants' motions to dismiss Relators' complaint with prejudice. [Dkt. No. 66.] With respect to Corinthian, the Court concluded that Corinthian's admissions compensation policy came within the DoE's safe harbor because salary increases were not allegedly awarded based "solely" on the number of new enrollees. (*Id.*) Because the Court found that the claim against EY was "contingent upon Corinthian Colleges' liability," the Court also granted EY's motion to dismiss. (*Id.*)

In August 2011, the Ninth Circuit agreed with the Court's substantive ruling, but found that Relators should be given an opportunity to amend their complaint if they could allege that the School's compensation practices were, in fact, based on solely on their success in recruiting students. [Dkt. No. 73.] As Relators later admitted at their depositions, they had no basis for making this allegation.

Nevertheless, in December 2011, Relators went ahead and filed a First Amended Complaint ("FAC") against the School Defendants and EY. [Dkt. No. 78.] With respect to Corinthian, the FAC alleged that, in practice, Corinthian based its recruiter compensation *solely* on each recruiter's success in enrolling students. As for EY, the FAC pled the same "massive liability" claim alleged in the original complaint. Relators' FAC also conceded — for the first time — that EY did *not* conduct Corinthian's compliance audits. Prior to this concession, EY had repeatedly informed Relators' Counsel that Relators' original allegation that EY conducted Corinthian's compliance audits was demonstrably and indisputably wrong.[2] As the FAC correctly alleged, Corinthian engaged a different auditor to conduct its compliance audits. In April 2012, the Court denied Defendants' motions to dismiss the FAC. [Dkt. No. 111.]

In October 2012, the parties filed a Joint Case Management Conference Statement that set forth the parties' respective views on how the case should proceed. [Dkt. 127.] Defendants proposed that the case schedule should be phased to focus initially on the issue of the Court's jurisdiction under the public disclosure bar of the FCA, and identified publicly-available Congressional testimony predating the filing of this lawsuit that disclosed the core allegations in Relators' complaints. (*Id.*) On November 8, 2012, the Court set a schedule for jurisdictional

---

[2] The fact that Relators alleged EY conducted those compliance audits in the first instance confirms that Relators' Counsel did little to no due diligence prior to naming EY as a defendant in this case, and that Relators themselves had no information whatsoever to contribute about Corinthian's compliance audits including who conducted them.

discovery, including depositions of the two Relators, and briefing on the jurisdictional motions. [Dkt. No. 131.]

Defendants deposed Relators on December 16 and 17, 2012. In addition to establishing Relators' lack of personal knowledge of the allegations in their complaints, the depositions revealed that Relators' Counsel used Susan Newman — a relator in two *qui tam* cases previously filed by Relators' Counsel[3] — to recruit Relators to file this suit. (Mshuja Dep. at 101:19-102:7; 102:25-103:18; 109:9-16; 116:3-5; 114:7-14; 122:11-13; 125:5–126:3; 130:19-131:1.)[4] The deposition testimony revealed that, prior to meeting their Counsel, neither Relator had given any thought to suing the School, or had any reason to believe the School committed a fraud on the government. (Lee Dep. at 181:24-183:5; Mshuja Dep. at 123:14-20.) The testimony also showed that, before the original complaint was filed in this case, neither Relator even knew that EY was going to be named as a defendant, let alone the basis for the claim alleged against EY. (Mshuja Dep. at 252:11-25; Lee Dep. at 293:5.) As Ms. Lee put it, her Counsel "put this lawsuit together." (Lee Dep. at 173:22-23.)

On January 7, 2013, Defendants' counsel met and conferred with Relators' Counsel in advance of filing their respective public disclosure briefs. (Declaration of Ryan G. Hassanein In Support of Ernst & Young LLP's Motion for Attorneys' Fees ("Hassanein Decl.") ¶ 12.) During that call, counsel for EY explained to

---

[3] All told, Relators' Counsel had filed five prior *qui tam* actions against for-profit schools based on alleged violations of the HEA's incentive compensation ban, three of which included allegations against the schools' auditors *nearly identical* to those asserted against EY in this case. *See U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, No. H-99-3389 (S.D. Tex.) (second amended complaint filed in 2002); *U.S. ex rel. Payne v. Whitman Educ. Group, Inc.*, No. 03-cv-03089 (S.D. Tex.) (complaint filed in 2002); *U.S. ex rel. Bott v. Silicon Valley Colls.*, No. 04-cv-0320 (N.D. Cal.) (second amended complaint filed 2005).

[4] The deposition testimony cited herein is attached as Exhibits A and B to the Declaration of Ryan G. Hassanein in Support of Ernst & Young LLP's Motion to Dismiss for Lack of Subject Matter Jurisdiction, dated January 14, 2013. [Dkt. No. 155.] For the sake of efficiency, EY has not re-filed that testimony here.

Relators' Counsel the factual and legal basis for its jurisdictional motion under the FCA's public disclosure rule, and asked Relators' Counsel if his clients would agree to voluntarily dismiss their claim against EY so that the parties could avoid the unnecessary expense of briefing the public disclosure issue. (*Id.*) Despite promising to respond to that request "as soon as" he could, Relators' Counsel never did respond. (*Id.*) Accordingly, on January 14, 2013, EY filed its Rule 12(b)(1) motion to dismiss, citing the same public disclosures and case law that it had previously provided to Relators' Counsel during the parties' meet-and-confer on January 7. [Dkt. No. 154.] On January 17, 2013, EY's counsel sent Relators' Counsel a letter reiterating its request that Relators voluntarily dismiss their claim against EY. (Hassanein Decl. ¶ 13 & Ex. C.) EY's letter expressly informed Relators' Counsel that EY would seek sanctions and a recovery of its attorneys' fees under section 1927 and other applicable law if he continued to pursue his clients' claim against EY with clear knowledge that Relators lacked standing and any evidentiary support for their factual allegations against EY. (*Id.*) Yet again, Relators' Counsel never responded to EY's January 17 letter. (*Id.*)

On March 18, 2013, the Court dismissed Relators' claims for lack of subject matter jurisdiction. (Order Granting Defendants' Motions to Dismiss [Dkt. No. 224] ("Dismissal Order").) The Court found that Relators' claim against EY was premised on Relators' allegation that Corinthian violated the HEA's incentive compensation ban. (*Id.* at 10.) For that reason, the Court concluded that "where Ernst & Young's purported culpability was based entirely on its alleged participation in Corinthian's fraudulent scheme, and was not based on any independent allegations of fraud against Ernst & Young, the public disclosures as to Corinthian are sufficient to trigger the public disclosure bar" as to EY. (*Id.* at 11.) The Court thus found that Relators' allegations against both Corinthian and EY were based upon prior public disclosures. (*Id.* at 14.) The Court also found that Relators were not "original sources" of their claims against Defendants, including

EY. Specifically, the Court found that both Relators "fail[ed] to offer any evidence" establishing that either of them had independent and direct knowledge of the allegations in this case. (*Id.* at 18.)

### III. ARGUMENT

Under 28 U.S.C. § 1927, an attorney's reckless and vexatious pursuit of litigation is subject to sanctions in the form of an award of attorneys' fees, costs, and expenses. It provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions under § 1927 are warranted "when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Trulis v. Barton*, 107 F.3d 685, 692, 694 (9th Cir. 1995) (reversing denial of sanctions under § 1927) (internal quotations and citation omitted). A finding that counsel was reckless in filing a frivolous action is sufficient to justify an order of sanctions under section 1927. *Id.* at 694; *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) (noting that, under Ninth Circuit law, recklessness suffices for § 1927).

Section 1927 aside, the Court has inherent powers to issue sanctions against Relators' Counsel. "[R]eckless *and* knowing conduct" is "tantamount to bad faith and therefore sanctionable under the court's inherent power." *B.K.B.*, 276 F.3d at 1107-08. Thus, "[s]anctions are available" under the Court's inherent powers "for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

Where "even a cursory investigation" into the factual background of a claim would have shown it to be frivolous, the attorney's conduct is sanctionable under

both § 1927 and the court's inherent authority. *See Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1220-22 (9th Cir. 2010).

### A. Relators' Counsel Engaged In Reckless Conduct From the Outset of This Lawsuit.

This lawsuit never should have been filed. Ever since the first recruiting dinner, Relators' Counsel knew that he had recruited two Relators who had no basis for believing that EY had violated any laws, and that he himself had to provide to Relators the principal allegations of their claim against EY. With this pre-filing knowledge, Relators' Counsel must have known, or was reckless in not knowing, that this case was barred by the FCA's threshold public disclosure rule.

First, it is readily apparent that Relators' Counsel knew or was reckless in not knowing, prior to filing this suit, that Relators completely lacked any personal knowledge about their claim against EY:

- Relators admitted that they know nothing about EY's audits of the School. (Lee Dep. at 277:4-22; Mshuja Dep. at 238:8-11.)
- During their employment by the School, Relators never interacted with anyone from EY or discussed EY's audits with any of their colleagues. (Lee Dep. at 280-6-13; Mshuja Dep. at 238:12-23.)
- Relators' jobs at the School had nothing to do with the School's financial statements or EY's audits of them. (Lee Dep. at 273:2-8; 277:4-22; Mshuja Dep. at 235:7-16; 238:8-11.)
- The only information regarding EY that Relators possessed was provided by their Counsel or gleaned from internet research. (Mshuja Dep. at 241:15 – 243:10.)
- Ms. Lee first learned that EY was Corinthian's financial auditor "when [she] started working with this case," and would have to ask her Counsel why EY was named as a defendant. (Lee Dep. at 290:6 – 291:10.)

- Mr. Mshuja was unaware that EY was going to be named as a defendant in this case prior to the filing of the original complaint, and he also attributed to Relators' Counsel the decision to name EY as a defendant in this case. (Mshuja Dep. at 252:7-25.)
- Neither Relator knew who actually performed the School's compliance audits, and they both were unaware that EY did not. (Lee Dep. at 279:15-18; Mshuja at 250:22-24.)

Second, given Relators' utter lack of personal knowledge, it is also readily apparent that Relators' Counsel knew or was reckless in not knowing about the numerous prior disclosures in the *public* record of the core allegations in this case. In three prior *qui tam* actions, for example, Relators' Counsel pled the same formulaic "massive liability claim" against the auditors of other for-profit schools. Specifically, in each of these three prior suits, the relators alleged that a school violated and falsely certified its compliance with the HEA's incentive compensation ban (RJN Ex. 1 at ¶¶ 37-38; Ex. 2 at ¶¶ 57-58; Ex. 3 at ¶¶ 40-41), and that the school's auditor falsely stated that the school's financial statements complied with GAAP when, in fact, they failed to disclose a "massive liability" owed to the government as a result of the school's non-compliance with the incentive compensation ban. (RJN Ex. 1 at ¶ 70; Ex. 2 at ¶ 89; Ex. 3 at ¶ 51.)[5] Relators' Counsel was obviously aware of these prior public disclosures.

In addition to the three prior *qui tam* suits filed by Relators' Counsel against auditors of other for-profit schools, the allegations at issue in this case were also disclosed in publicly-available Congressional testimony and a securities class action filed against Corinthian. The 2005 Congressional testimony, for example,

---

[5] The complaints that were filed in these three *qui tam* cases are attached as exhibits to EY's Request for Judicial Notice in Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction, dated January 14, 2013 ("RJN") [Dkt. No. 157.] For the sake of efficiency, EY has not re-filed them here. All cites to "RJN" in this motion refer to the Request for Judicial Notice filed in support of EY's motion to dismiss for lack of subject matter jurisdiction. [Dkt. No. 157.]

placed the School center stage in a broad challenge to for-profit schools' compliance with the HEA's incentive compensation ban. Likewise, the securities class action complaints filed against the School brought forward numerous confidential witnesses who claimed that the School's compensation practices violated the HEA's incentive compensation ban, and further alleged that the School's financial statements did not comply with GAAP. During the parties' meet-and-confer call on January 7, 2013, Relators' Counsel admitted that he was previously aware of the securities class action complaints filed against the School. (Hassanein Decl. ¶ 12.) Once the Government declined to intervene in this case, Relators' Counsel thus knew or was reckless in not knowing that the Court lacked jurisdiction over this case under the FCA's threshold public disclosure bar.

The unreasonable and vexatious conduct of Relators' Counsel, however, extends far beyond the mere pursuit of this case without a basis for jurisdiction. As exemplified below, Relators' Counsel multiplied these proceedings at every stage:

- Despite EY repeatedly informing Relators' Counsel that the original complaint's allegation that EY conducted Corinthian's compliance audits was demonstrably false, Relators' Counsel refused to drop the allegation, forcing EY to address the issue during the first round of motion to dismiss briefing. [Dkt. No. 36.]
- Upon the Court's dismissal of Relators' original complaint, Relators' Counsel appealed the Court's substantive ruling to the Ninth Circuit, ignoring evidence provided by EY which established that Corinthian engaged a different auditor to conduct its compliance audits and again forcing EY to address the issue during the appeal. [Dkt. No. 69.]
- After the Ninth Circuit agreed with the Court's substantive ruling, but said that Relators should be given an opportunity to amend their complaint if they *could* allege that the School's compensation practices deviated from the School's written compensation policy, Relators' Counsel went ahead

and filed a FAC that contained this allegation despite Relators' later admissions that they had no basis for making it. [Dkt. No. 78.] EY thus had to respond to an amended complaint which never should have been filed. [Dkt. No. 81.]

- Following the Court's ruling on Defendants' motions to dismiss the FAC, Relators' Counsel repeatedly delayed the Rule 16 conference, refused to file a CMC statement jointly with Defendants, and then filed a separate statement. (Hassanein Decl. ¶ 11; [Dkt. No. 124.]) It was only after the Court intervened and ordered a joint statement that Relators' Counsel participated in preparing one. (Hassanein Decl. ¶ 11; [Dkt. No. 126.])

- After the Court adopted Defendants' proposal to address the jurisdictional issue before turning to the merits, Relators' Counsel filed a motion for reconsideration of the Court's scheduling order, which the Court struck as improper. [Dkt. No. 140.]

- Shortly before Relators' depositions in December 2012, Relators' Counsel filed a motion for a protective order concerning those depositions, without meeting-and-conferring with EY's counsel, and requesting a hearing date nearly two months after Relators' scheduled depositions. [Dkt. No. 145.] Relators' Counsel eventually withdrew the motion a month after Relators' depositions took place, confirming that it had been filed for an improper purpose. [Dkt. No. 163.]

- In late-January 2013, Relators' Counsel filed an *Ex Parte* Application seeking a 90-day extension of Relators' deadline for opposing EY's Rule 12(b)(1) motion so that Relators could take merits discovery from the School – an issue the Court previously told Relators' Counsel to address in Relators' oppositions to Defendants' Rule 12(b)(1) motions. [Dkt. No. 170.] After EY filed an opposition to the *Ex Parte* Application, the Court

        denied Relators' request and "warned" Relators' Counsel of his Rule 11 obligations. [Dkt. No. 179.]

- Finally, after EY gave Relators' Counsel two opportunities to voluntarily dismiss this case so that the parties could avoid the unnecessary fees and expenses associated with briefing the public disclosure issue, Relators' Counsel filed an opposition to EY's jurisdictional motion that misstated facts, ignored controlling legal precedent, and was accompanied by a "sham" affidavit by Relator Lee that directly contradicted her deposition testimony. [Dkt. No. 190.]

In short, the reckless decision by Relators' Counsel to pursue this case in the face of clear facts establishing that Relators' claims were jurisdictionally barred, and the unreasonable and vexatious manner in which Relators' Counsel multiplied these proceedings, is sanctionable conduct under 28 U.S.C. § 1927. *See Lahiri*, 606 F.3d at 1220-22; *Trulis*, 107 F.3d at 694; *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997) (litigation was frivolous and brought in bad faith where "reasonable and competent inquiry" would have shown suit was barred by res judicata) (abrogated on other grounds); *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990) (affirming sanctions under § 1927 where counsel "recklessly proceeded with the litigation despite a complete lack of factual support"); *U.S. ex rel. Herbert v. Nat'l Acad. of Scis.*, No. 90-2568, 1992 WL 247587, at *7 (D.D.C. Sept. 15, 1992) (awarding attorneys' fees based upon the "Court's clear lack of jurisdiction under" under the FCA's public disclosure bar). In circumstances very similar to this case, a federal court recently awarded more than $2 million in fees to a defendant in a *qui tam* case deemed barred by the public disclosure rule, finding that the relator's attorney "unreasonably multiplied the proceedings and that his conduct was vexatious under 28 U.S.C. § 1927." *U.S. ex rel. Leveski v. ITT Educ. Servs.*, No. 1:07-cv-0867-TWP-MJD, 2012 WL 1028794, at *15 (S.D. Ind. Mar. 26, 2012). Because the reckless conduct of Relators'

Counsel dates back to the unsealing of Relators' original complaint in February 2009, EY is entitled to its fees from that point forward.

### B. EY's Attorneys' Fees Are Reasonable.

In determining whether an award of attorneys' fees is reasonable, the lodestar method is the fundamental starting point. *See Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (stating that "the 'lodestar' figure has . . . become the guiding light of [the court's] fee-shifting jurisprudence"). "'The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.'" *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). The attorney's hourly rate is reasonable if it is in line with the prevailing market rate of the relevant legal community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) ("When a party seeks an award of attorneys' fees, that party bears the burden of submitting evidence of the hours worked and the rate paid" as well as "the burden to prove that the rate charged is in line with the prevailing market rate of the relevant community.") (citation and quotes omitted). Here, EY respectfully requests that the Court order sanctions against Relators' counsel and award attorneys' fees in the amount of $512,115.03. This amount reflects EY's reasonable attorneys' fees and expenses from the date Relators' original complaint was unsealed, February 25, 2009, to the date the Court entered its Dismissal Order, March 18, 2013. The first date that EY incurred any fees, however, was June 24, 2009.

EY was represented first in this action by Gibson, Dunn & Crutcher LLP ("Gibson Dunn") and then, beginning in June 2012, by Morrison & Foerster LLP ("Morrison & Foerster"). As detailed in the accompanying Declarations of Ryan G. Hassanein and Timothy J. Hatch, counsel for EY have incurred $512,115.03 in reasonable attorneys' fees and expenses in this matter from February 25, 2009, to

DEFT. EY'S NOT. OF MTN. AND MTN. FOR ATTORNEYS' FEES AND SANCTIONS - CV 07-01984 PSG
la-1207127

12

1  March 18, 2013. (Hassanein Decl. ¶¶ 6, 10; Declaration of Timothy J. Hatch In
2  Support of Defendant Ernst & Young LLP's Motion for Attorneys' Fees ("Hatch
3  Decl.") ¶ 6.) The fees were calculated by multiplying the time spent by each
4  attorney and litigation staff member on this case, by the billing rate for that attorney
5  or staff member that was actually charged to EY when the work was performed.
6  (Hassanein Decl. ¶ 6; Hatch Decl. ¶ 6.) A portion of Gibson Dunn's fees were
7  charged to EY under a fixed-fee agreement. (Hatch Decl. ¶ 6). The amount
8  charged to EY under the fixed-fee agreement represents a lower fee than if Gibson
9  Dunn had billed EY under its hourly rates for that time period. (*Id.* & Ex. B.)

10      Gibson Dunn represented EY in this matter until June 25, 2012. (Hatch Decl.
11 ¶ 1.) During that time, Gibson Dunn billed at the rates set forth in the Hatch
12 Declaration. (*Id.* ¶¶ 6-7 & Exs. A and B.) Timothy Hatch, lead counsel for EY
13 during the period EY was represented by Gibson Dunn, is a partner at Gibson Dunn
14 who has been involved in numerous actions brought pursuant to the FCA, both by
15 the Department of Justice and by *qui tam* relators, against an array of recipients of
16 government funding, including government contractors, health care providers and
17 educational institutions. (*Id.* ¶ 7.) At all times relevant to this action he billed at
18 hourly rates ranging between $790 and $900. (*Id.*) James Zelenay, a 2004 law
19 school graduate and Gibson Dunn associate, billed at hourly rates ranging between
20 $465 and $607. (*Id.*) Additional time was billed by litigation associates Adam
21 Yarian, Jeremy Ochsenbein, and Lucas Towsend at rates ranging from $349 to
22 $500 per hour. (*Id.*) Finally, Douglas R. Cox, a litigation partner of national
23 prominence with extensive experience representing accounting firms in a variety of
24 matters, including matters involving the SEC and PCAOB, billed at an hourly rate
25 of $876. (*Id.* ¶ 7.) Gibson Dunn also charged $2,140.18 in legal research fees
26 while representing EY in this matter. (*Id.* ¶ 6.); *see, e.g., The Beam System, Inc. v.*
27 *Checkpoint Sys., Inc.*, No. CV 95-4068-RMT AJWX, 1997 WL 423113, at *3 (C.D.
28

Cal. July 16, 1997) (noting that "computerized legal research" may be included in an award for attorneys' fees).

Morrison & Foerster has represented EY in this matter from June 25, 2012 to the present. (Hassanein Decl. ¶ 1.) During that time, Morrison & Foerster has billed at the rates set forth in the Hassanein Declaration. (*Id.* ¶¶ 6-7 & Exs. A and B.) Robert Hubbell, lead counsel for EY during the time it has been represented by Morrison & Foerster, has extensive experience representing accounting firms in all manner of actions, including securities class actions, investigations by the SEC and DOJ, and matters involving the PCAOB. (*Id.*)[6] He billed a limited number of hours to this matter at the rate of $756 per hour. (*Id.* ¶ 7.) Ryan Hassanein, a Morrison & Foerster partner whose practice focuses on litigating FCA suits initiated by whistleblowers, the Department of Justice, and state Attorneys General, has billed at the hourly rate of $553.50 per hour in this matter. (*Id.*) Ryan Borho, a 2003 law school graduate and Morrison & Foerster litigation associate, has billed at hourly rates of $553.50 and $571.50 in this matter. (*Id.*) Litigation staff assisting counsel have been billed at rates ranging from $139.50 to $189.00 per hour, commensurate with training, skill, and experience. (*Id.* ¶ 8 & Ex. A.) Morrison & Foerster also charged $12,170.52 in legal research fees while representing EY in this matter. (*Id.*); see *The Beam System*, 1997 WL 423113, at *3.

Both Gibson Dunn's and Morrison & Foerster's hourly rates are competitive with rates charged by peer firms in the Los Angeles area, including rates the Court has found reasonable. (Hassanein Decl. ¶ 9; Hatch Decl. ¶ 8); see, e.g., *Orian v. Fed'n Int'l des Droits de L'Homme*, No. 11-cv-6904 PSG (FFMx), 2012 WL 994643, at *3 (C.D. Cal. Mar. 22, 2012) ($900 hourly rate for partner experienced in "litigating complex cases in both state and federal court" reasonable); *Trauth v.*

---

[6] Prior to joining Morrison & Foerster, Mr. Hubbell was a partner at Gibson Dunn. (Hassanein Decl. ¶ 7.) While at Gibson Dunn, he billed .2 of an hour to this matter at an hourly rate of $795. (Hatch Decl. ¶ 7.)

*Spearmint Rhino Cos. Worldwide, Inc.*, No. EDCV 09-01316-VAP (DTBx), 2012 WL 4755682, at *7 (C.D. Cal. Oct. 5, 2012) (hourly rates of $700 for partners and $495 for non-partners reasonable).

In requesting a voluntary dismissal of this matter, EY's counsel repeatedly warned Relators' Counsel that EY's fees were mounting and that EY would seek these fees at the appropriate time. (Hassanein Decl. ¶¶ 12-13 & Ex. C.) Not only did Relators' Counsel refuse to respond to EY's request, he continued to litigate this case without any basis for doing so. Relators' Counsel should not now be heard to complain about the number of hours required for EY to defend itself.

## IV. CONCLUSION

For the reasons set forth above, EY respectfully requests an order sanctioning Relators' Counsel, and making him liable to pay EY's attorneys' fees in the amount of $512,115.03.

Dated: April 25, 2013

MORRISON & FOERSTER LLP

By: /s/ Ryan G. Hassanein
Ryan G. Hassanein

Attorneys for Defendant
ERNST & YOUNG LLP