1 | SCOTT D. LEVY
2 | Scott D. Levy & Associates PC
3 | Tex. Bar No. 24000598
4 | 1844 Wheeler Street
5 | Houston, Texas  77004
6 | (713) 528-5409 Tel.
7 | (713) 528-0117 Fax
8 | levy.scott@mac.com
9 |
10 |
11 | Attorneys for Relators
12 | NYOKA JUNE LEE AND TALALA MSHUJA
13 |
14 | U.S. DISTRICT COURT
15 |
16 | CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION
17 |
18 |
19 | UNITED STATES OF AMERICA,      CASE NO. CV 07-01984 PSG (MANx)
20 | EX REL. NYOKA LEE and
21 | TALALA MSHUJA,
22 |                                **RELATORS' OPPOSITION TO**
23 |          Plaintiff,           **DEFENDANTS' CORINTHIAN**
24 |                                **COLLEGES, INC.'S ET AL,**
25 |                                **MOTION FOR SANCTIONS**
26 | CORINTHIAN COLLEGES INC.,      [DKT 232]
27 | et al.,
28 |          Defendants.
29 |                                Place:  Courtroom 880
30 |                                Judge: Hon. Philip S. Gutierrez
31 |                                Date:  June 10, 2013
32 |                                Time:  1:30 p.m.
33 |

1

## Table of Contents

2   INTRODUCTION ...................................................................................1

3   Fees May Not be Assessed Against Counsel under the FCA..................................2

4   No "Prevailing Defendant" in FCA Case Dismissed for Lack of Jurisdiction..........3

5   Rule 54 Motion For Costs Should be Denied because No Prevailing Defendant.....4

6   Plaintiffs' Ability to Pay Attorney's Fees Must be Considered ...............................4

7   *EDUCATION MANAGEMEN*T Decision ...............................................................4

8   THE COURT DECIDED SUMMARY JUDGMENT ISSUE WITHOUT NOTICE
9   ...............................................................................................................................6

10  RELATORS WERE DENIED HEARING ON ORIGINAL SOURCE .................8

11  PROGRAM PARTICIPATION AGREEMENTS ...................................................9

12  EY OPINIONS FILED WITH GOVERNMENT ..................................................10

13  NINTH CIRCUIT REQUIRED ADDITIONAL ELEMENTS OF THE FRAUD .11

14  ENROLLMENT QUOTAS WERE HELD TO BE "LEGAL" UNDER THE HEA
15  .............................................................................................................................11

16  *EDUCATION MANAGEMENT* Decision...........................................................14

17  CONGRESSWOMAN WATERS' LETTER TO THE COURT ...........................16

18  FACTS SHOWING OBSTRUCTION OF RELATORS' ACCESS TO COURT..17

19  VIOLATION NO. 1: ...........................................................................................17

20  VIOLATION NO. 2: ...........................................................................................20

21  VIOLATION NO. 3: ...........................................................................................21

22  VIOLATION NO. 4: ...........................................................................................21

23  *NOERR-PENNINGTON* DOCTRINE....................................................................21

24  DEFENDANTS' AUTHORITY IS AFTER CORINTHIAN CASE WAS FILED22

25  RELIEF REQUESTED .......................................................................................24

26

# Table of Authorities

**Cases**

*BE&K Construction Co. v. NLRB*, 536 U.S. 516 (2002)........................................25

*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983)..........................25

*Branson v. Nott*, 62 F.3d 287, 292-93 (9rh Cir. 1995) ......................................3, 4

*Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
   353 F.3d 1125, 1129-30 (9th Cir. 2004)..........................................................7

*Faraci v. Hickey-Freeman Co. Inc.*, 607 F.2d 1025 (2nd Cir. 1979) ......................5

*Keene Corp. v. Case*, 908 F.2d 293 298 (8th Cir. 1990) .......................................4

*Kennard v. Comstock Res., Inc.*, 363 F.3d 1039, 1041 (10th Cir. 2004)...............12

*Otay Land Co. v. United Enterprises Ltd.*, 672 F.3d 1152 (9th Cir. 2011)...............4

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761 (1980).....................................3

*Schultz v. Devry, Inc.*, No. 07-cv-5425, 2009 WL 562286 (N.D. Ill. March 4, 2009)
   (an unpublished decision)...........................................................................25, 27

*Sosa v. DIRECTTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ......................................25

*U.S. ex rel. Bott v. Silicon Valley Colleges*, No. 06-15423, 2008 WL 59364, *1 (9th
   Cir. Jan. 4, 2008) ....................................................................................14, 15

*U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038 (10th Cir. 2004) ...........12, 13

*U.S. ex rel. Lopez v. Strayer Educ., Inc.*, 698 F.Supp.2d 633 (E.D. Va. 2010).26, 27

*United States ex rel. Graves v. ITT Educational Services, Inc.*, 284 F.Supp.2d 487
   (S.D. Tex. 2003) ...........................................................................26, 28, 29

*United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416,
   1419-1420 (9th Cir. 1991) .........................................................................9, 10

*United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1161, 1174-75 (9th Cir.
   2006)..............................................................................................................23

*United States ex rel. James F. Bowman v. Computer Learning Centers, Inc.*, No.
   99-cv-1183 (S.D. Tex) ................................................................................28

*United States ex rel. Leveski v. ITT Educational Services, Inc.*, No. 1:07-cv-0867-
   TWP-MJD, 2012 WL 1028794 (S.D. Ind. March 26, 2012)...............23, 26, 27

*United States ex rel. Washington v. Education Management*, 2012 U.S. Dist.
   LEXIS 67103, *42 (W.D. Penn. 2012) ................................................. passim

*United States v. Science Applications Intl. Corp.*, 626 F.3d 1257, 1275 (D.C. Cir.
   2010)..............................................................................................................19

*W.G. ex el. D.G. v. Senatore*, 18 F.3d 60, 64 (2d Cir. 1994)..................................4

*Wang v. FMC Corp.*, 975 F.2d 1412, 1415-1416.................................................11

*Wang v. FMC Corp.*, 975 F.2d 1412, 1416 (9th Cir. 1992) ...................................10

**Statutes**

18 U.S.C. § 1961 *et seq.*, the Racketeer Influenced Corrupt Organizations Act
   ("RICO") ......................................................................................................24

20 U.S.C. § 1094 ................................................................................12

28 U.S.C. § 1927 .............................................................................16, 18

31 U.S.C. § 3729 *et seq.* .......................................................... *passim*

42 U.S.C. § 1983 ...................................................................................3

**Rules**

Fed. R. Civ. P 11 ................................................................................18

Fed. R. Civ. P 26 ............................................................................6, 18

Fed. R. Civ. P 37 ................................................................................18

Fed. R. Civ. P. 12 ...............................................................1, 2, 2, 6, 21

Fed. R. Civ. P. 54 .............................................................................2, 2

**Regulations**

34 C.F.R. § 668.14(B)(22)(II)(A), Safe Harbor Regulations ...................2

INTRODUCTION

Defendants Corinthian Colleges, Inc., David Moore and Jack Massimino (together the "School" or "School Defendants") have filed a sanctions motion seeking $984,000 from whistleblowers and legal counsel in the case. The for-profit education industry, as a practice, has brought similar motions in many *qui tam* cases filed against them. The Defendants' strategy in filing the sanctions motion is to put leverage on plaintiffs to stop them from pursuing a meritorious appeal on whether enrollment quotas can serve as the basis of a public disclosure. Defendants seek to "chill" both the whistleblowers and legal counsel from pursuing an appeal. The Court should not allow Defendants to use the threat of sanctions to pressure Plaintiffs out of pursuing an appeal. The sanctions motion is highly prejudicial to Relators, and the Court should deny the motion on that ground alone. There is great prejudice to Relators and their counsel in both having to defend against sanctions, since the merits of the decision will be evaluated by the Ninth Circuit.

The most recent ruling by the Court dismissed the case on grounds that the recruiter enrollment quotas used by Corinthian were previously disclosed in both a securities class action lawsuit and in Congressional testimony given by U.S. Congresswoman Maxine Waters. This public disclosure argument could have been brought prior to the filing of the two separate Rule 12(b)(6) motions. The Ninth Circuit's prior decision in the case noted that there was no binding authority on

1   whether recruiter enrollment quotas violated the Higher Education Act.   The

2   disclosure of recruiter enrollment quotas figured prominently in the securities class

3   action lawsuit filed against Corinthian.   *In re Corinthian Colleges, Inc.*

4   *Shareholder Litigation*, No. CV-04-5025 R(CWx), Central District of California.

5   The School's legal counsel in this case also represented Corinthian in the securities

6   class action lawsuit.   Counsel was fully aware that recruiter enrollment quotas

7   played a central role in the class action lawsuit.   The School filed two (2) Rule

8   12(b)(6) motions before raising the public disclosure argument in a Rule 12(b)(1)

9   motion.   It was Corinthian's legal strategy not to bring a public disclosure motion

10  early in the case.   Corinthian's briefing in the first Ninth Circuit appeal is based

11  largely on the argument that recruiter enrollment quotas are legal under the Safe

12  Harbor Regulations interpreting the Higher Education Act.   Corinthian now takes a

13  new position and argues that disclosure of enrollment quotas is notice of illegal

14  conduct [*i.e.*, in violation of the HEA].   This is a complete reversal of the argument

15  made in Corinthian's previous brief to the Ninth Circuit.

16  <u>Fees May Not be Assessed Against Counsel under the FCA</u>

17        The defendant's legal fees may not be assessed against counsel under 31

18  U.S.C. § 3730 (d)(4).   *Pfingston v. Ronan Eng'g Co,*, 284 F.3d 999, 1006 (9th Cir.

19  2002):

20        [T]he award of attorney's fees against an attorney is not authorized by
21        the False Claims Act.
22

1    "The False Claim Act adopted a standard for fees that is directly analogous to that

2    of 42 U.S.C. § 1988.  Section 1988 does not authorize the award of fees against an

3    attorney."  *Pfingston, id., citing Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761

4    (1980).    The  School's  motion  for  attorney's  fees  against  counsel  under  the

5    provisions of the FCA should be denied.

6    No "Prevailing Defendant" in FCA Case Dismissed for Lack of Jurisdiction

7          When  a  FCA  case  is  dismissed  for  lack  of  jurisdiction,  there  is  no

8    "prevailing defendant" under the FCA attorney fee provision.  This follows the

9    Ninth Circuit rule in 42 U.S.C. § 1983 cases where subject matter jurisdiction is

10   lacking.  The district court cannot impose § 1988 attorney's fees in cases dismissed

11   for lack of jurisdiction for two reasons.  *Branson v. Nott*, 62 F.3d 287, 292-93 (9th

12   Cir. 1995).   Where there is no subject matter jurisdiction to proceed with the

13   substantive claim, as a matter of law "[t]hat lack of jurisdiction bar[s] an award of

14   attorney's fees under section 1988."  *W.G. ex el. D.G. v. Senatore*, 18 F.3d 60, 64

15   (2d Cir. 1994), *quoting Keene Corp. v. Case*, 908 F.2d 293 298 (8th Cir. 1990).

16   Second, even assuming there is authority to impose § 1988 attorney's fees, the

17   Ninth Circuit held in *Branson v. Nott* that a defendant is not a "prevailing party"

18   when the dismissal is based on a lack of subject matter jurisdiction. *Id.* (concluding

19   that § 1988 attorney fees only available to a party who has prevailed on the merits).

20   The School's motion for attorney's fees under the FCA against both the Relators

1  and Relators' counsel should be denied because there was no prevailing defendant

2  in this lawsuit.

3  Rule 54 Motion For Costs Should be Denied because No Prevailing Defendant

4        In order to eligible for an award of costs under Fed. R. Civ. P. 54, a party

5  must be a "prevailing" party.  There is not a prevailing party in an action dismissed

6  for lack of jurisdiction.  "Rule 54(d)(1) [] turns on a prevailing party standard."

7  *Otay Land Co. v. United Enterprises Ltd.*, 672 F.3d 1152 (9th Cir. 2011).  The

8  School's motion for costs and attorney's fees under Fed. R. Civ. P. 54 should be

9  denied because there was no prevailing party in the case.

10  Plaintiffs' Ability to Pay Attorney's Fees Must be Considered

11

12        The courts are required consider the ability of plaintiffs to pay attorney's

13  fees in making an award of attorney's fees.  *Faraci v. Hickey-Freeman Co. Inc.*,

14  607 F.2d 1025 (2nd Cir. 1979).  An award of attorney's fees against Relators would

15  cause them extreme hardship.  Nyoka Lee is 70 years old.  Talala Mshuja is 71

16  years old.  Both are unemployed, and live off the income they receive from the

17  Social Security Administration.  Ms. Lee lives with one of her children.  Mr.

18  Mshuja's sole asset is his home.

19  *EDUCATION MANAGEMEN*T Decision

20

21        Corinthian's motion for sanctions argues that Relators' claims were doomed

22  from the start, and the invocation of False Claims Act jurisdiction was a sham.

1    The court in *Education Management* pointed out that three recent courts of appeals

2    have reversed dismissals of claims alleging violations of the incentive

3    compensation ban.[1]

> 4    In short, on three recent occasions the Courts of Appeals have
> 5    reversed the granting of motions to dismiss and have recognized False
> 6    Claims Act claims for very similar alleged violations of the Incentive
> 7    Compensation Ban 'as implemented.'

8    *United States ex rel. Washington v. Education Management*, 2012 U.S. Dist.

9    LEXIS 67103, *42 (W.D. Penn. 2012) ("*Education Management*").

10   The record in this case strongly reflects that Corinthian is viewed as a peril

11   to both students and taxpayers.  First, there is the December 12, 2012 letter from

12   eight (8) U.S. Senators to the U.S. Secretary of Education specifically identifying

13   Corinthian as having likely committed a fraud on the federal student financial aid

14   programs.  Second, there is a subpoena from the Attorney General for the State of

15   Illinois to Relators' counsel for documentation and testimony given by Relators

16   about Corinthian.  This information should have already been produced in response

17   to a subpoena previously served on the Company.  Third, there is Congressional

18   testimony by U.S. Congresswoman Maxine Waters about the falsification of

19   financial aid eligibility of students enrolled at the San Jose campus discovered by

20   the U.S. Department of Education.  Fourth, there is a letter dated February 7, 2013

---

[1] The three decisions cited by *Education Management* for the proposition that are *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914 (7th Cir. 2005), *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166 (9th Cir. 2006), and *United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011).

1   from Congresswoman Maxine Waters to the Court requesting that the evidence

2   uncovered in this case remain unsealed and open to the public for the benefit of

3   both students and taxpayers.

4

5   THE COURT DECIDED SUMMARY JUDGMENT ISSUE WITHOUT NOTICE

6          The Court granted summary judgment for Defendants on the ultimate fact

7   question on the case of how Corinthian *implemented* its recruiter compensation

8   program, even though the Ninth Circuit previously directed that discovery would

9   be necessary to determine this issue.  Since the Court's order for Phase I Discovery

10  [DKT 131] allowed only the Defendants to obtain discovery from Relators,

11  discovery by Relators has been completely stayed by operation of Rules 16 and 26.

12  Motions for summary judgment should not be considered until the non-movant has

13  an opportunity to obtain relevant discovery.[2]  *Employers Teamsters Local Nos. 175*

14  *& 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129-30 (9th Cir. 2004).

15         Moreover, Fed. R. Civ. P. 12(d) specifically does not permit converting a

16  Rule 12(b)(1) motion into a Rule 56 motion for summary judgment.

17         In addition, there is a standing order in this District that a notice "Statement

18  of Uncontroverted Facts and Conclusions of Law" must be filed concurrently with

---

[2]  In the Joint Rule 26 Report, Defendants point out that their jurisdictional motions are for summary judgment, made under Fed. R. Civ. P. 56. (Doc. 127, at pp. 9-10).

[3]       "EDMC further notes that the Relators have limited knowledge.  For example, there are no allegations regarding conduct prior to June 2004 or after June 2007.  In addition, Neither

a motion for summary judgment.  Otherwise, a motion for summary judgment shall

not be considered without such a Statement of Uncontroverted Facts.

> ***L.R. 56-1 Documents Required From Moving Party***. A party filing a
> notice of motion for summary judgment or partial summary judgment
> shall lodge a proposed "Statement of Uncontroverted Facts and
> Conclusions of Law." Such proposed statement shall set forth the
> material facts as to which the moving party contends there is no
> genuine dispute. A party seeking summary judgment shall lodge a
> proposed Judgment; a party seeking partial summary judgment shall
> lodge a proposed Order.

The Court made extensive fact finding on the merits of the case, even though

the Defendants never filed the required "Statement of Uncontroverted Facts and

Conclusions of Law."  The only issue noticed and set for hearing was the question

of whether there had been a "public disclosure" within the meaning of the FCA.

> First, Lee lacks direct knowledge of the information upon
> which the allegations are based.  "To show direct knowledge, the
> relator must show that he had firsthand knowledge of the alleged
> fraud, and that he obtained this knowledge through his own labor
> unmediated by anything else."  *Horizon Health*, 565 F.3d at 1202
> (internal quotation marks omitted).  As evidenced in her deposition,
> Lee has no firsthand knowledge of the alleged fraud.  Lee has no
> personal knowledge of the alleged incentive compensation that
> occurred at Corinthian.  In her deposition, she was unable to show that
> she, or anyone else at the school, was compensated solely based on
> the number of students recruited to Corinthian. *See Lee Depo Tr.* At
> 66:3-72:18, 121:7-123:11, 352:19-354, 359:21-361:24 (testifying that
> "[part] of [her] performance" and "[p]art of [her] raise"  were based
> on compliance with eighteen criteria set out in the written
> compensation program).  The criteria included, among others,
> promptness and accuracy of communications with prospective
> students, accurate classification of student inquiries, compliance with
> applicable regulations, ensuring pre-start paperwork was completed,

1    and the accuracy of the employer's recordkeeping. *Id*. At 67:6-72:18,
2    *Phadke Decl*., Exs. G, K (*Lee Depo Exs*. 5, 13).
3
4    Other factual findings were made by the Court that were never included in a

5    Statement of Uncontroverted Facts and Conclusions of Law as required by L.R.

6    56-1 and 56-3.  For example, one such fact found by the Court was that Lee had no

7    knowledge of how directors of admissions were compensated, other than a fixed

8    salary.   But Lee's testimony was that the director of admissions' compensation

9    depended on the performance of each recruiter under his supervision. Lee depo. p.

10   83.  Depo. of Nyoka Lee is attached and incorporated as Exhibit "3."

11   RELATORS WERE DENIED HEARING ON ORIGINAL SOURCE

12       The  procedural  sequence  for  ruling  on  a  public  disclosure  challenge  to

13   jurisdiction in the Ninth Circuit is spelled out in *United States ex rel. Hagood v.*

14   *Sonoma  County  Water  Agency*,  929  F.2d  1416,  1419-1420  (9th  Cir.  1991)  and

15   *Wang v. FMC Corp*., 975 F.2d 1412, 1416 (9th Cir. 1992).  A court may inquire

16   into a relator's original source status *only if* the court first finds that there has been

17   a public disclosure of the allegations or transactions set forth in the FCA lawsuit.

18   *Hagood* is controlling in its holding that a public disclosure must be established

19   beforehand in order for the burden to shift to relators to prove original source.

20   There shall be no  "original source" inquiry unless and until a public disclosure has

21   been established.

22       There is, of course, no need for *Hagood* to show that he is "the
23       original source" of the information. That statutory phrase in 31 U.S.C.

1    § 3730 (e)(4)(B)  comes into play only if an exception is sought to the
2    bar of 4(A). As the bar of 4(A) does not apply, there is no need to
3    invoke the exception.

5    *Hagood*, 929 F.2d at 1420.  W*ang* and *Hagood* control on the circumstances that

6    require a relator to establish that she is an "original source."

7    Whether or not Wang was the "original source" of the evidence
8    concerning these three projects, the jurisdictional bar of section
9    3730(e)(4) cannot block Wang's prosecution of them.  Where there
10   has been no 'public disclosure' within the meaning of section
11   3730(e)(4), there is no need for a *qui tam* plaintiff to show that he is
12   the 'original source' of the information.

14   *Wang v. FMC Corp.*, 975 F.2d 1412, 1415-1416.

16   The Court held that the Relators fail to offer any information in their

17   Opposition to establish that Lee had direct and independent knowledge of the

18   allegations at issue in the Complaint.  Relators had no obligation to come forward

19   with evidence they were original sources before the Court ruled on the public

20   disclosure issue.  Relators, moreover, requested a hearing on the original source

21   issue at the hearing on March 11, 2013.

22   Unable to rely on deposition testimony to buttress their arguments, the

23   Relators supplied an affidavit from Lee.  The Court struck her affidavit.

24   PROGRAM PARTICIPATION AGREEMENTS

25   The Court found that Lee had no knowledge of falsely certified Program

26   Participation Agreements.   Lee had no knowledge of legal or regulatory

1    requirements relating to recruiter compensation, and "was unable to describe the

2    HEA."

3        Most courts have broadly rejected the requirement that relators must possess

4    knowledge of the alleged fraudulent submissions to the government.   A relator

5    need only possess direct and independent knowledge of the information on which

6    the allegations are based.

> We rejected Comstock's proposed requirement that Relators
> must possess knowledge of the "actual alleged fraudulent submissions
> to the Government" to be an original source. *Id*. at 1044.  Knowledge
> of the precise fraudulent submission to the Government is not
> necessary.  *Id.*  "A relator 'need only possess "direct and independent
> knowledge of the *information on which the allegations are based.*"'"
> [citations omitted].  We also declined to create a restriction limiting an
> original source to only insiders, finding no valid reason to do so.  *Id.*
> at 1044-45.

17   *U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038 (10th Cir. 2004), *quoting*

18   *Kennard v. Comstock Res., Inc.*, 363 F.3d 1039, 1041 (10th Cir. 2004).  Knowledge

19   of the fraudulent submissions made to the Government is not required to be an

20   original source in the HEA recruiter compensation context.  The critical issue is the

21   underlying information provided by the Relators.  *United States ex rel. Washington*

22   *v. Education Management*, 2012 U.S. Dist. LEXIS 67103, *42 (W.D. Penn. 2012)

23   ("*Education Management*").  *See also, Glynn v. Edo Corp.*, 710 F.3d 209 (4th Cir.

24   2013) (relator did not have to see the contract with the government itself –

25   circumstantial evidence of false certification is enough).

26   <u>EY OPINIONS FILED WITH GOVERNMENT</u>

1    The Court found that Lee was unaware that Ernst & Young audited

2    Corinthian's financial statements, and was unaware of the contents of the opinions

3    rendered by Ernst & Young.   Lee was not required to have knowledge of how

4    Ernst & Young's opinions would be impacted by illegal recruiter compensation

5    practices.   *See U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038 (10th Cir.

6    2004); *United States ex rel. Washington v. Education Management*, 2012 U.S.

7    Dist. LEXIS 67103, *42 (W.D. Penn. 2012) ("*Education Management*").

8    RELATORS' KNOWLEDGE OF INSIDERS WHO DEVISED THE FRAUD
9
10    The Court found that Lee did not know who defendants Moore and

11    Massimino were.   The False Claims Act does not limit original source to insiders.

12    The Court has created a restriction limiting an original source to only insiders,

13    contrary to law.  *Grynberg, id.; Education Management, id.*

14    NINTH CIRCUIT REQUIRED ADDITIONAL ELEMENTS OF THE FRAUD

15    The public domain did not contain all elemental aspects of the School's

16    recruiter compensation practices.   There was no public disclosure of the Lead-to-

17    Conversion Ratios used by the School to evaluate recruiter performance and award

18    raises.   There was no public disclosure of the Ad Rep Performance Flash reports

19    documenting the School's weekly calculation of every recruiter's Lead-to-

20    Conversion Ratios.   The Ninth Circuit required the Relators to identify the criteria

21    used to evaluate recruiter performance when it remanded the case.

22    ENROLLMENT QUOTAS WERE HELD TO BE "LEGAL" UNDER THE HEA

1
2          None of the previous rulings on enrollment quotas distinguished between

3    "legal" and "illegal" enrollment quotas.  The Court's ruling distinguishing between

4    legal and illegal enrollment quotas contradicts all prior rulings on the issue.

5          The Court's original ruling on enrollment quota made no distinction between

6    illegal and legal recruiter enrollment quotas.

7              Second, Relators argue that Corinthian Colleges terminates recruiters
8              who fail to satisfy their quotas for new students.  *See Compl.* ¶ 31.
9              However, the termination of recruiters is not covered by the HEA
10             prohibition on incentive payments.  *See U.S. ex rel. Bott v. Silicon*
11             *Valley Colleges*, No. 06-15423, 2008 WL 59364, *1 (9th Cir. Jan. 4,
12             2008) ("The decision to fire an employee is not covered by the Act
13             because termination is not as prohibited 'commission, bonus, or other
14             incentive payment.'" (citing 20 U.S.C. § 1094(a)(20). [Footnote
15             omitted].  Thus, Corinthian Colleges' termination of underperforming
16             recruiters does not fall under the HEA incentive payment prohibition
17             at issue in this case.
18
19   [DKT 66, p. 5]
20
21         The Ninth Circuit affirmed the District Court on enrollment quotas, holding

22   that such quotas do not violate the HEA recruiter compensation ban as a matter of

23   law.

24         1.   *Termination based on recruitment numbers*
25
26             [2]  Relators allege that employees were "disciplined, demoted,
27    or terminated" on the basis of their recruitment numbers.  This does
28    not state a violation of the incentive compensation ban. …   Thus
29    adverse employment actions, including termination, on the basis of
30    recruitment numbers remain permissible under the statute's terms.
31    *See U.S. ex rel. Bott v. Silicon Valley Colleges*, 262 F. App'x 810, 812
32    (9th Cir. 2008). …   The Complaint's allegation that Corinthian
33    imposes   adverse   employment   consequences   on   the   basis   of

1    recruitment quotas does not, therefore, state a violation of the HEA
2    incentive compensation ban, and also does not state a claim that a
3    false statement was made.

5    *Lee*, 655 F.3d at 992-993.

7        The Court's dismissal on the public disclosure argument distinguished

8    between enrollment quotas serving as the basis for termination (which are

9    consistent with the HEA), versus enrollment quotas serving as the basis for

10   awarding raises to recruiters (which it characterized as illegal under the Ninth

11   Circuit's opinion).  The Dismissal Order on public disclosure grounds holds, for

12   the first time, that enrollment quotas are illegal if such quotas are the only criteria

13   relied on by the school to award raises.  The Court held that Relators have asserted

14   in the wrong enrollment quota argument.

15       [The] section of the *Lee* opinion cited by Relators ***is take out of***
16       ***context***.  That section related to where employees were "disciplined,
17       demoted, or terminated" for failing to meet a enrollment quota.  *Lee*,
18       655 F.3d at 993.  The Ninth Circuit expressly distinguished these
19       "adverse employment actions" from the incentive compensation ban.
20       *Id*. … **The Ninth Circuit held that if meeting a quota was the only**
21       **basis for a salary increase, this would violate the HEA**.  *Id*. at 995-
22       96 (violation of the HEA could be stated if relators alleged that
23       "meet[ing] enrollment quotas … was *the* basis on which [admissions
24       representatives] would receive promotional salary increases.").  The
25       public disclosures at issue plainly speak to employee compensation
26       based on reaching quotas, which could violate the HEA, as opposed to
27       termination for failure to reach quotas.  *See RJN*, Ex. 13 (2005
28       Securities Compl.), ¶¶ 228 [quotes omitted] (emphasis added).

30   [DKT 224, pp 13-14].  The Ninth Circuit's further analysis of enrollment quotas

31   explained that if the recruiters understood that reaching enrollment quotas was the

1    sole basis for receiving a raise, then that would be evidence of how Corinthian

2    actually implemented its recruiter compensation program.

3           "In addition, Relators repeatedly insist in their briefs that, in
4           practice, Corinthian recruiters were expected to meet enrollment
5           quotas and understood that this was *the* basis on which they would
6           receive promotion salary increases.  Relators could additionally or
7           alternatively allege that, despite the Compensation Program's
8           purported or documented reliance on something other than
9           recruitment numbers, these salary increases are *in practice* determined
10          on the sole basis of recruitment numbers.  It is Corinthian's
11          implementation of its policy, rather than the written policy itself, that
12          bears scrutiny under the HEA, and such allegations would require
13          additional discovery."
14
15   *Lee*, 655 F.3d at 995-96.  The Ninth Circuit clearly rejected Relators' assertion

16   made in the original complaint that enrollment quotas, were in and of themselves, a

17   violation of the HEA recruiter compensation ban.  The Circuit required more than

18   the bare allegation that recruiters were compensated on the basis of enrollment

19   quotas.  Enrollment quotas, in and of themselves, were held to be not fraudulent as

20   a matter of law under the Ninth Circuit's ruling.

21   *EDUCATION MANAGEMENT* Decision

22          The Court in *Education Management* rejected many of the positions taken

23   by this Court in the Dismissal Order.  *Education Management* rejected the same

24   arguments asserting that Relators had insufficient knowledge on the recruiter

25   compensation practices to support a FCA cause of action based on violations of the

HEA recruiter compensation prohibition:[3]

1.     Relators have limited knowledge, *i.e.,* Relators have no knowledge before June 2004 or after June 2007;

2.     Relators had no responsibility for evaluating recruiters or making compensation decisions, or had no access to the factors actually used to pay recruiters;

3.     Relators did not work at each individual school named in the complaint;

4.     Relators did not participate in the certifications, *i.e.,* the Program Participation Agreements;

5.     Relators failed to identify the conduct of each Defendant named separately;

6.     Relators fail to allege the state of mind of the Company at the time the recruiter compensation program was drafted; and,

7.     Relators do not link the persons who executed the Program Participation Agreement to the compensation violations.

*Education Management* rejected the identical argument that Corinthian argues are evidence that the case was a sham lawsuit, doomed from the start. *Education Management* rejected the argument that the relators could only allege

---

[3]     "EDMC further notes that the Relators have limited knowledge. For example, there are no allegations regarding conduct prior to June 2004 or after June 2007. In addition, Neither Washington nor Mahoney had responsibility for evaluating ADAs or making compensation decisions or had access to the factors actually used to pay ADAs. EDMC points out that the Relators did not work at each individual school named as a Defendant nor did they participate in the certifications made to the governments. EDMC also contends that Plaintiffs have failed to identify the conduct of each separately named Defendant. Moreover, EDMC argues that the Complaints fail to adequately plead the scienter element in that the Complaint fails to allege facts regarding EDMC's knowledge at the time the Plan was drafted and implemented and does not link the persons who signed the PPA's and/or certifications to the alleged compensation violations."

*Education Management, id.,* at *43-44.

1    violations for the campus where they was employed.

2            "Because Plaintiffs' theory is that there was one, EDMC-wide scheme
3            controlled by top-level executives, it is not necessary to allege
4            separate conduct by each of the affiliated schools named as
5            Defendants."

6    *Education Management, id.*, at *54.   Similarly, *Education Management* rejected

7    the challenge that relators were required to know about the Program Participation

8    Agreement ("PPA") with the Government, or the identify of the persons who

9    executed the PPA, *i.e.*, Relators did "not link the persons who signed the PPA's

10   and/or certifications to the alleged compensation violations." *Education*

11   *Management, id.*, at *43-44.   *Education Management* held that the implementation

12   of the fraudulent recruiter compensation plan was done "top-down, company-

13   wide." *Id.*, at *50.

14           "Moreover, the *Science Applications* Court recognized that the
15           definition of 'knowingly' in the False Claims Act was intended 'to
16           capture the ostrich-like conduct which can occur in large corporations
17           where corporate officers insulate themselves from knowledge of false
18           claims submitted by lower-level subordinates.'" *Education*
19           *Management, id.,* at p. *52, *citing United States v. Science*
20           *Applications Intl. Corp.*, 626 F.3d 1257, 1275 (D.C. Cir. 2010).
21

22   <u>CONGRESSWOMAN WATERS' LETTER TO THE COURT</u>

23           Corinthian Colleges' motion is that Relators' counsel should be held

24   responsible under 28 U.S.C. § 1927 for Congresswoman Maxine Waters' February

25   7, 2013 letter to the district court as an example of vexatious conduct.  The School

1   plainly asks the Court to penalize Relators' counsel for exercising his right to

2   petition, a fundamental Constitutional right.

3   FACTS SHOWING OBSTRUCTION OF RELATORS' ACCESS TO COURT

4          Relators put the Court on notice of the Defendants' retaliatory conduct

5   during the briefing period for the Rule 12(b)(1) motion.   *See*, Dkt 170, Relators'

6   Ex Parte Application For Stay Of Proceedings To Address Threats of Retaliation

7   By Defense Counsel, incorporated and adopted into this Opposition for all

8   purposes.   Each such action was intended to, and did in fact, impede and interfere

9   with Relators' access to the court, a Constitutional right guaranteed under the right

10  to petition clause of the First Amendment.   The Court took no action to protect

11  Relators' right to petition after being informed of these violations, but instead

12  stood by and allowed the case to be railroaded through by Defendants.   The

13  outcome is highly unjust, and the use of sanctions in an attempt to deny Relators

14  access to the Ninth Circuit for a full review on the merits is an abuse of process.

15  VIOLATION NO. 1:

16         Defense counsel Blanca F. Young, and William Calhoun, Deputy General

17  Counsel of Corinthian Colleges, Inc., each threatened to take legal action Relator

18  Nyoka June Lee immediately after Ms. Lee's deposition concluded on December

19  17, 2012.   Ms. Lee is a 70 year-old former recruiter at Corinthian Colleges, Inc.'s

1   San   Jose,   San   Francisco,   and   Hayward   campuses   who   filed   the   instant

2   whistleblower action, and her deposition ended after 7:00 p.m.[4]

3       The threat of suit was made after Ms. Lee's produced a letter during her

4   deposition from U.S. Senator Frank Lautenberg, *et al.*[5], calling for an investigation

5   into Corinthian Colleges, Inc. for falsifying its student loan default rates and

6   thereby defrauding the United States' Title IV student financial aid programs.  The

7   threat of suit was made to obstruct, impede and hinder Ms. Lee, and her brother,

8   Mr. Talala Mshuja, the 71 year-old co-Relator in this lawsuit, from cooperating or

9   assisting in the U.S. Government investigation soon to be opened against

10  Corinthian Colleges, Inc.  This witness intimidation and retaliation violates Rules

11  11, 26 and 37, Fed. R. Civ. P., and under 28 U.S.C. § 1927.

12      Ms. Lee produced a treasure trove of documentation exposing the enrollment

13  practices for recruiters employed at this national chain of for-profit schools.  Ms.

---

[4]  The threat of retaliation capped off a full day of discovery abuse toward the Relators.  Ms. Lee resides near San Francisco, and Mr. Mshuja resides in San Jose.  The depositions of Relators were noticed and held in Orange County, even though all defense counsel had to fly from San Francisco to Orange County. Relators made a request to move the deposition to defense counsel's office in San Francisco, but the request was refused because the "parties" wanted to attend.  No party attended, and although Deputy General Counsel William Calhoun was present the first day, he attended only briefly on the second day.  Defense counsel refused to provide a break-out room from counsel and two Relators, even though Defendant occupied the building.  The depositions went until after 7:00 p.m. for witnesses 69 and 71 years old.  It was an unnecessary inconvenience for the Relators and for all attorneys, arranged for the purpose of needlessly increasing the cost for Relators and their counsel.

[5]  The signatories to the December 12, 2012 Letter were Senator Frank R. Lautenberg (D. NJ), Senator Richard Durbin (D. IL), Senator Richard Blumenthal (D. IN), Senator Tom Harkin (D. IA), Senator Jay D. Rockefeller IV (D. WV), Senator Al Franken (D. MN), Senator Jack Reed (D. RI), and Senator Barbara Boxer (D. CA).  The Letter is attached and incorporated hereto as Exhibit "1."

1   Lee provided overwhelming evidence that Corinthian Colleges grades their

2   recruiters (all 1700) based on the *percentage* of new students inquiries (called

3   "Leads") the recruiter enrolls at the school.   Corinthian College's recruiter grading

4   system is set forth in a formula called the "Lead-to-Conversion" Ratio ("LC

5   Ratio").   Ms. Lee's evidence is the most compelling exposure ever made of the

6   procedures and mechanisms the for-profit education industry uses to grade and

7   compensate their recruiters contrary to the prohibition against this practice in the

8   Higher Education Act.

9        At the conclusion of Ms. Lee's deposition, outside counsel for Corinthian

10  Colleges, Inc., Blanca Young, Esq., stated into the record that the incriminating

11  documents Ms. Lee provided would be treated as "confidential."   The Deputy

12  General Counsel for Corinthian Colleges, Inc.'s, William Calhoun, joined in and

13  further elaborated that legal action would be taken against Ms. Lee if she released

14  any of her documents.[6]

15       Ms. Lee's deposition was attended by her brother, Talala Mshuja.   During

16  Mr. Mshuja's deposition, he testified about a previous lawsuit involving his home.

17  During an elevator ride escorting Mr. Mshuja back into the deposition,

---

[6] Deputy General Counsel William Calhoun's statement was not included in the deposition transcript.  Notice has been given to the court reporter to retain the audiotape of the deposition to resurrect a copy of Mr. Calhoun's threat, and a subpoena was issued to obtain the audio recording of Ms. Lee's deposition, which is included in DKT 170.  The Court is aware of this unresolved issue.

1   Corinthian's Deputy General Counsel William Calhoun asked further pointed

2   questions to Mr. Mshuja about the value of his home.

3   <u>VIOLATION NO. 2:</u>

4     By letter dated January 9, 2013, Blanca Young sent a letter to Scott D. Levy,

5   counsel for Relators, threatening retaliation and sanctions if the lawsuit was not

6   immediately dismissed.   Defendants never before asserted that the public

7   disclosure of recruiter enrollment quotas could serve as the basis of a "public

8   disclosure" jurisdictional challenge, defense counsel is now resorting to threats and

9   direct attacks on counsel to get the case dismissed.   There is not a single circuit

10   court opinion cited in Ms. Young's January 9, 2013 letter to support the assertion

11   that the claims made against Corinthian Colleges, Inc. are frivolous or unwarranted

12   under existing law.   Moreover, the January 9, 2013 letter takes no account of the

13   decision in *United States ex rel. Washington v. Education Management Corp.*,

14   2012 U.S. Dist. LEXIS 67103, *43-44 (W.D. Penn. 2012), where the court rejected

15   the precise arguments Ms. Young considers to be grounds for sanctions.

16   Moreover, the decision relied on so heavily, *United States ex rel. Leveski v. ITT*

17   *Educational Services, Inc.*, No. 1:07-cv-0867-TWP-MJD, 2012 WL 1028794 (S.D.

18   Ind. March 26, 2012), is on appeal in the Seventh Circuit, and is directly contrary to

19   the Ninth Circuit's holding that knowledge of the Program Participation Agreement is not

20   a prerequisite to state an HEA recruiter compensation violation under the FCA.   *See*

21   *United States ex rel. Hendow v. Univ. of Phoenix,* 461 F.3d 1161, 1174-75 (9th Cir.

1    2006) (There is no "talismanic" meaning attached to the "false certification" theory

2    of liability under the FCA).  *See also*, Notice of Feb. 13, 2013 Ninth Circuit

3    Decision in Relators' Opposition to Motion to Dismiss regarding knowledge of

4    Program Participation Agreements, DKT 203.

5    VIOLATION NO. 3:

6        On January 13, 2013, Blanca Young sent an email to Shayne Stevenson of

7    the law firm Hagans, Berman Sobol Shapiro LLP threatening to seek sanctions

8    against Mr. Stevenson and Hagans Berman Sobol Shapiro LLP if they enrolled as

9    lead counsel in the lawsuit.  Ms. Young resort to threatening a lawyer to

10   discourage him from accepting an engagement on a case is only another step to

11   deny Relators full access to the court and judicial processes.

12   VIOLATION NO. 4:

13       Blanca Young sent a letter to Thomas Mauriello threatening sanctions

14   against him for serving as local service counsel for Relators.  This has led to Mr.

15   Mauriello's motion to withdraw, which the School Defendants add as an additional

16   ground for sanctions because Relators' counsel now appears without local counsel

17   as required by the rules of this District.  Ms. Young sent the letter to Mr. Mauriello

18   for the purposes of impeding and obstructing Relators from full access to the courts

19   and the judicial processes.

20   *NOERR-PENNINGTON* DOCTRINE

1    Because the First Amendment's Petition Clause requires protection of "the

2    class of reasonable based but unsuccessful lawsuits," actions that chill or restrain

3    the filing of lawsuits involves rights protected by the Bill of Rights.   *BE&K*

4    *Construction Co. v. NLRB*, 536 U.S. 516 (2002).

5    "[T]he right to access to the court is … but one aspect of the [First

6    Amendment] right of petition," which extended the immunity of the *Noerr-*

7    *Pennington* doctrine to the use of "the channels and procedures of state and federal

8    … *courts* to advocate causes and points of view… ."   *Sosa v. DIRECTTV, Inc.*, 437

9    F.3d 923 (9th Cir. 2006).   The Supreme Court held that Petition Clause protects

10   access to judicial processes, and that laws must be interpreted, where possible, to

11   avoid burdening such access.   *Sosa*, *id., citing Bill Johnson's Restaurants, Inc. v.*

12   *NLRB*, 461 U.S. 731 (1983).

13   DEFENDANTS' AUTHORITY IS AFTER CORINTHIAN CASE WAS FILED

14   *Schultz v. Devry, Inc.*, No. 07-cv-5425, 2009 WL 562286 (N.D. Ill. March 4,

15   2009) (an unpublished decision) was issued after the Corinthian case was filed.

16   Likewise, *U.S. ex rel. Lopez v. Strayer Educ., Inc.*, 698 F.Supp.2d 633 (E.D. Va.

17   2010) (a case in which counsel formally apologized for misconduct) was issued

18   after the Corinthian case was filed.   Neither case, therefore, could possibly support

19   the proposition that the assertion of FCA jurisdiction in the Corinthian case was a

20   sham.   The public disclosure adopted in *United States ex rel. Leveski v. ITT*

21   *Educational Services, Inc.*, No. 1:07-cv-0867-TWP-MJD, 2012 WL 1028794 (S.D.

1  Ind. March 26, 2012) was based on the fact that the defendant in the case had

2  already been sued in *United States ex rel. Graves v. ITT Educational Services, Inc.*,

3  284 F.Supp.2d 487 (S.D. Tex. 2003).[7]  *Leveski* was not decided until March 2012,

4  after Relators' First Amended Complaint was filed, and is moreover, now on

5  appeal in the Seventh Circuit.  All three (3) cases – *Leveski, Schultz* and *Lopez* –

6  were brought by the same legal counsel.

7          In 2012, the court in *Education Management* rejected one of the main tenets

8  adopted in the courts in *Leveski, Schultz* and *Lopez*, namely that the Relator must

9  have knowledge of the Program Participation Agreements in order to qualify as an

10  original source.  *Education Management*, moreover, pointed out the unsettled state

11  of the law regarding the FCA liability of proprietary schools violating the HEA

12  recruiter compensation ban, noting that three recent courts of appeals have

13  reversed dismissals of claims alleging violations of the incentive compensation

14  ban.[8]  *United States ex rel. Washington v. Education Management*, 2012 U.S. Dist.

15  LEXIS 67103, *42 (W.D. Penn. 2012) ("*Education Management*").

16

17

---

[7]  The Ninth Circuit rejected the ruling in *Graves v. ITT Education* in the *University of Phoenix* decision.

[8]  As noted above, the three decisions cited by *Education Management* for the proposition that are *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914 (7th Cir. 2005), *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166 (9th Cir. 2006), and *United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011).

1    The first case by Relators' counsel, *United States ex rel. James F. Bowman*

2    *v. Computer Learning Centers, Inc.*, No. 99-cv-1183 (S.D. Tex) resulted in a

3    demand of $187,497,434 demand from the Government.   *See*, Neman Exhibits,

4    Parts 1, 2 and 3, pp. 6-43, Pt. 2, attached and incorporated as Exhibit "1."   The

5    disclosures made by the co-relator, Susan Newman, in *United States ex rel. Graves*

6    *v. ITT Educational Services, Inc.*, 284 F.Supp.2d 487 (S.D. Tex. 2003), resulted in

7    a major criminal investigation into ITT Educational Services, Inc. under 18 U.S.C.

8    § 1961 *et seq.*, the Racketeer Influenced Corrupt Organizations Act ("RICO") by

9    the U.S. Department of Justice.   *See* FBI Search Warrant attached and incorporated

10   as Exhibit "2."   No motion for sanctions was ever filed in *Graves*. *Graves* also led

11   to a separate investigation into conduct by Gibson Dunn, counsel for the defendant,

12   focusing on the reasons behind the last minute decision of the U.S. Department of

13   Justice not to file an amicus brief in the *Graves* appeal then before the Fifth

14   Circuit.   *See* "Newman Exhibits", Pt. 1.

15   RELIEF REQUESTED

16   Defendants' motion for sanctions is brought for an improper purpose, in

17   order to obstruct and impede Relators from pursuing their appeal in the Ninth

18   Circuit.   This violates Relators' right to petition and full access to judicial

19   processes, in violation of the petition clause as described in the *Noerr-Pennington*

20   doctrine.   The authorities relied on by Corinthian are dated after the time the

21   Corinthian case was filed, and those authorities have been rejected by other courts.

1  The claim against the School Defendants was divested of jurisdiction based on

2  evidentiary rulings in which Relators asserted reasonable positions.   Relators'

3  conduct of the lawsuit was objectively reasonable.   Moreover, the award of costs

4  against Relators' Counsel would cause extreme hardship.

5  Dated:  May 8, 2013                              Respectfully submitted:

6

                                         LEVY & ASSOCIATES PC

                                         By:    _____// SDL //_____

                                           SCOTT D. LEVY
                                         Attorney for Relators Nyoka June Lee
                                         and Talala Mshuja

7