SCOTT D. LEVY
Scott D. Levy & Associates PC
Tex. Bar No. 24000598
1844 Wheeler Street
Houston, Texas  77004
(713) 528-5409 Tel.
(713) 528-0117 Fax
levy.scott@mac.com


Attorneys for Relators
NYOKA JUNE LEE AND TALALA MSHUJA

U.S. DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. NYOKA LEE and TALALA MSHUJA,<br><br>            Plaintiff,<br><br><br>CORINTHIAN COLLEGES INC., et al.,<br>            Defendants. | CASE NO. CV 07-01984 PSG (MANx)<br><br>**RELATORS' OPPOSITION TO DEFENDANT ERNST & YOUNG LLP'S MOTION FOR ATTORNEYS FEES AND SANCTIONS; MEMORANDUM IN OPPOSITION** [DKT 244]<br><br><br>Place:  Courtroom 880<br>Judge: Hon. Philip S. Gutierrez<br>Date:  June 10, 2013<br>Time:  1:30 p.m. |

1

## **TABLE OF CONTENTS**

2   INTRODUCTION ......................................................................... 1

3   EY'S PUBLIC DISCLOSURE IS AN INDEPENDENT ISSUE ......................... 7

4   IMPROPER CONVERSION TO SUMMARY JUDGMENT MOTION ............ 9

5   STRIKING AFFIDAVIT OF NYOKA LEE WAS ERROR ............................. 11

6   ATTORNEY-CLIENT PRIVILEGE ISSUES ......................................... 13

7   CASES WHERE SUSAN NEWMAN SERVED AS RELATOR ...................... 14

8   EY IS AWARE OF THE SCHOOL'S HISTORY OF MISCONDUCT ............ 15

9   LEVESKI CASE ........................................................................ 18

10   NOERR-PENNINGTON DOCTRINE .............................................. 19

11   APPELLATE COURT DECISION IS REQUIRED BEFORE LITIGATION
12   IS DEEMED A "SHAM" ............................................................ 20

13   PUBLIC DISCLOSURE IS DIFFERENT FOR EACH DEFENDANT ............ 22

14   REQUEST FOR RELIEF .............................................................. 23

15
16

# TABLE OF AUTHORITIES

**Cases**

*Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) ............................................. 2, 2

*BE&K Construction Co. v. NLRB*, 536 U.S. 516 (2002)........................... 19, 20, 21

*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983)........................... 20

*Boswell v. Potter*, 2002 U.S. App. Lexis 23855, at **33-4
    (9th Cir. Nov. 18, 2002) ...................................................................... 9

*California Motor Transport v. Trucking Unlimited*, 404 U.S. 508,
    513 (1972) ...................................................................... 3, 21, 22

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-422 (1978) .... 23

*Glynn v. Edo Corp.*, 710 F.3d 209 (4th Cir. 2013) ……………………………… 23

*Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 895 (9th Cir. 1988) ............... 14, 18

*Martinez v. Stanford*, 323 F.3d 1178, 1182-1183 (9th Cir. 2003) ........................ 12

*Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009) .................................. 11

*Professional Real Estate Investors, Inc. v. Columbia Pictures
    Industries, Inc.*, 508 U.S. 49 (1993), ...................................................... 3, 21

*Sosa v. DIRECTTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ............................ 19, 20, 21

*UMG Recordings, Inc. v. Bertelsmann AG*, 479 F.3d 1078 (9th Cir. 2007)........... 13

*United States ex rel. Aflatooni v. Kitsap Physician Services*,
    163 F.3d 516, 523 (9th Cir. 1998)...................................................................... 22

*United States ex rel. Bott v. Silicon Valley Colleges*, No. 04-0320,
    Northern District of California ...................................................................... 14

*United States ex rel. Graves v. ITT Educational Services, Inc.* ............................. 14

*United States ex rel. Hagood v. Sonoma County Water Agency*,
    929 F.2d 1416, 1419-1420 (9th Cir. 1991)...................................................... 8

*United States ex rel. Leveski v. ITT Educational Services, Inc.* ........................... 18

*United States v. Arthur Young & Co.*, 465 U.S. 805, 818 (1984)........................ 6

*Van Asdale v. International Game Tech.*,
    577 F.3d 989, 998-999 (9th Cir. 2009)............................................................ 11

*Wang v. FMC Corp.*, 975 F.2d 1412, 1416 (9th Cir. 1992)........................ 8, 22, 23

**STATUTES**

28 U.S.C. § 1919.............................................................................................. 19

28 U.S.C. § 1927................................................................................ 1, 2, 17, 23

**OTHER AUTHORITIES**

*Noerr-Pennington* doctrine.................................... 3, 4, 18, 19, 20, 21, 23

**RULES**

Federal Rules of Civil Procedure 11.................................................. 2, 2, 3, 24

Federal Rules of Civil Procedure 12.......................... 2, 15, 15, 16, 16

Federal Rules of Civil Procedure 56.................................................. 8, 8, 10

Local Rule 56-1……………………………………………………………10

Local Rule 56-3……………………………………………………………10

1    Relators Nyoka Lee and Talala Mshuja hereby oppose the motion for

2    an award of all attorneys' fees Defendant Ernst & Young LLP ("EY")

3    incurred between the "unsealing of the original complaint on February 25,

4    2009, through March 18, 2013, the date the Court entered its order granting

5    Defendants' jurisdictional motions" against Relators' Counsel, pursuant to

6    28 U.S.C. § 1927.  Relators incorporate all previous filings in the case into

7    this Opposition, specifically including Relators' Ex Parte Application For

8    Stay of Proceedings to Address Threats of Retaliation by Defense Counsel

9    [DKT 170]; Relators Opposition of Motion to Dismiss for Lack of

10   Jurisdiction [DKT 190]; and Ex Parte Application to Stay pending Appeal

11   on the Merits to the Ninth Circuit [DKT 252].

12   INTRODUCTION

13    EY argues that Relators and their counsel should have known that the

14   case was doomed from the start, and therefore that invoking federal

15   jurisdiction on the False Claims Act ("FCA") was a sham.  The factual basis

16   of EY's motion is that the use enrollment quotas in the recruiter

17   compensation program at the School was so well known that the FCA public

18   disclosure bar was a foregone conclusion, making the assertion of

19   jurisdiction under the FCA frivolous unless the Relators were original

20   sources.  EY includes in this category its argument that prior suits against

1    CASE NO. CV 07-01984 PSG (MANx)

1   other for-profit education companies for recruiter compensation violations

2   constituted a public disclosure of such violation which barred suit against all

3   companies in that industry.   EY next asserts that Relators' conduct of the

4   suit was vexatious because Relators refused to concede that the public

5   disclosure bar applied, a point that EY and the School Defendants

6   considered to be so obvious that Relators were merely multiplying the

7   proceedings needlessly both in opposing their Rule 12(b)(1) motions, and in

8   opposing the one-side discovery proposed by EY and the School in the

9   Parties Joint Case Management Conference Statement.   EY notes that

10  Relators refused to dismiss the lawsuit after EY sent threatening letters and

11  made telephone calls attempting to intimidate Relators into dismissing the

12  case.[1]   EY filed its sanctions motion after the Court granted its motion to

13  dismiss.   The Ninth Circuit requires that a sanctions motion under Fed. R.

14  Civ. P. 11 must be filed before the complaint is dismissed.[2]   Given the safe

15  harbor provisions, a party cannot delay serving its Rule 11 motion until

16  conclusion of the case (or judicial rejection of the offending contention).

---

[1]   Note that in the Ninth Circuit, warnings letters and telephone calls are insufficient notice as a matter of law under Fed. R. Civ. P. 11.   EY never provided the required notice.   *See Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998).   The Court likewise should not consider such letters and telephone calls in evaluating sanctions under 28 U.S.C. § 1927 or under its inherent authority.   The letters and phone calls are evidence of EY's strategy of retaliating against Relators and their legal counsel.

[2]   *See Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998.

1    EY is using its sanctions motion to apply leverage on Relators'

2    counsel and block a full adjudication of the district court's decision by the

3    Ninth Circuit.  EY's sanction motion is made in bad faith, for the purpose of

4    obstructing and impeding appellate review of this Court's dismissal of the

5    case.  EY never filed the required Safe Harbor Notice under Fed. R. Civ. P.

6    11 in the full awareness that there is not a single public disclosure case

7    involving a public accountant's audit obligations in the FCA context.

8    Moreover, EY's heavy-handed use of the sanctions motion is intended to

9    burden and obstruct Relators' access to the courts.  The right to petition the

10   courts is protected under the Second Amendment to the U.S. Constitution as

11   set forth in the *Noerr-Pennington* doctrine.  A finding that a party has

12   conducted "sham" litigation outside the immunity and protections of the

13   right to petition requires appellate review.

14       we recognized that recourse to agencies and courts should not
15       be condemned as sham until a reviewing court has "discern[ed]
16       and draw[n]" the "difficult line" separating objectively
17       reasonable claims from "a pattern of baseless, repetitive claims .
18       . . which leads the fact finder to conclude that the administrative
19       and judicial processes have been abused."
20
21   *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries,*

22   *Inc.*, 508 U.S. 49 (1993), *citing California Motor Transport v. Trucking*

23   *Unlimited*, 404 U.S. 508, 513 (1972).  EY's motion seeks to have the district

24   court make a sham litigation finding, without appellate review.  EY fails to

1    establish that Relators' assertion of False Claims Act ("FCA") jurisdiction

2    was a sham outside the immunity of the *Noerr-Pennington* doctrine.

3          EY's original source arguments do not establish sham litigation or

4    misconduct by Relators or Relators' counsel.  Relators produced 789 pages

5    of documents to EY relating to the School's recruiter compensation

6    program.  The Affidavit of Nyoka Lee, and the deposition transcript of

7    Nyoka Lee submitted in support of Relators' opposition to EY's motion to

8    dismiss for lack of jurisdiction [DKT 190] contained substantial evidence

9    that the School compensates its recruiters based solely on their recruitment

10   numbers.  The Court disregarded this evidence, which is matter for appellate

11   review.  The dismissal of Relators' claims based on evidentiary rulings does

12   not establish sham litigation, even is such rulings were correct.  The Relators

13   filed samples of the Ad Rep Performance Flash reports with the Affidavit of

14   Nyoka Lee, which the Court struck from the evidence in the case.  This

15   evidentiary ruling is subject to appellate review, and cannot serve as the

16   basis of a sham litigation claim sufficient to overcome the *Noerr-Pennington*

17   protections.  Second, the status of the Relators would never have been

18   reached unless the Court made a public disclosure finding.  EY argues that

19   there were "numerous prior disclosures in the *public* record of the core

20   allegations in the case."  DKT 244, EY Sanctions motion, p. 8.  EY could

1    have asserted the public disclosure bar in its first pleading if it was so plain

2    to see.  The real reason EY did not file its public disclosure motion based on

3    the recruiter enrollment quota disclosures made in Congresswoman's Waters

4    testimony and in the securities class-action lawsuit was because EY argued

5    to the Ninth Circuit that such recruiter enrollment quotas were entirely legal

6    under the Safe Harbor regulations.

7         Relators have already apprised the Court of EY's tactics in threatening

8    Relators and Relators' counsel.  The Court should deny EY's motion for

9    sanctions because of Defendants' egregious abuse of process.

10        EY makes the broad assertion that this *qui tam* action was a sham

11   lawsuit.  EY's argument is that "Relators' Counsel knew or was reckless in

12   not knowing that this case was barred by the FCA's threshold public

13   disclosure rule."  DKT 244, p. 7.  EY ignores that the Court held that the

14   public disclosure involved enrollment quotas; in fact, the Court did not adopt

15   the argument made by EY that there was an independent public disclosure

16   involving EY's audit.  EY's claim that FCA jurisdiction was lacking due to

17   the public disclosure bar was not made until the case had already made its

18   way to the Ninth Circuit, and after EY filed two (2) separate motions to

19   dismiss.  The fact that EY waited almost six (6) years to file its public

20   disclosure argument is clear evidence that the public disclosure issue was not

1    apparent.  Moreover, *assuming arguendo* that the Court is correct in holding

2    that the disclosure of recruiter enrollment quotas served to bar the suit under

3    the FCA public disclosure rule as to School Defendants, EY's audit and

4    reporting responsibilities to the U.S. Government are independent issues.

5    The Ninth Circuit has already defined EY's responsibilities in this case.

6    
7    
8    
9    
10   
> Whether EY is ultimately responsible for certifying
> Corinthian's compliance with HEA, and whether the Financial
> Reports they submitted failed accurately to reflect Corinthian's
> HEA-related liabilities, are open questions requiring further
> factual development.

11   Ninth Circuit decision at p. 10743.  EY's audit opinions fail to disclose what

12   the impact of the School's illegal enrollment quota practice had on the

13   company's liability to the Government.  Since ninety-percent (90%) of the

14   School's revenues came from the U.S. Government, the amount owed to the

15   United States is "massive."  EY's role as auditor is a "public watchdog

16   function." *United States v. Arthur Young & Co.,* 465 U.S. 805, 818 (1984).

17   "By certifying the public reports that collectively depict a corporations

18   financial status, the independent auditor assumes a public responsibility

19   transcending any employment relationship with the client. The independent

20   public accountant performing this special function owes ultimate allegiance

21   to the corporation's creditors and stockholders, as well as to the investing

22   public." *Id.* EY failed this essential auditor's public duty.  There was no

1   public disclosure of EY's failure to account for the financial impact of the

2   School's recruiter compensation violations.

3   EY'S PUBLIC DISCLOSURE IS AN INDEPENDENT ISSUE

4   The Court concluded that "where Ernst & Young's purported

5   culpability was based entirely on its alleged participation in Corinthian's

6   fraudulent scheme, and was not based on any independent allegations of

7   fraud against Ernst & Young, the public disclosure as to Corinthian are

8   sufficient to trigger the public disclosure bar" as to EY.   [DKT 224]

9   ("Dismissal Order"), p. 11.  The Dismissal Order is premised on the Court's

10  conclusion that enrollment quotas serving as the basis for awarding recruiter

11  raises are *illegal*, as opposed to enrollment quotas used to terminate under-

12  performing recruiters.  It is these illegal enrollment quotas that EY was

13  required to evaluate and report on through its audit opinions.

14  RELATORS WERE DENIED HEARING ON "ORIGINAL SOURCE"

15
16  A pivotal question in the Dismissal Order is whether Relators were

17  required to show original source status before the public disclosure issue was

18  decided.   Relators argued that under well-established Ninth Circuit

19  precedent, the burden for the Relators to put on evidence of original source

20  does not shift unless and until the court determines there has been a public

1   disclosure.   This necessarily means there is a second stage of the

2   proceedings to establish original source where the Relators would have the

3   burden to produce evidence.   The Court skipped the second stage – the

4   original source stage – of the proceedings entirely.   Relators made both a

5   written motion to obtain discovery under Fed. R. Civ. P. 56(d) [DKT 170],

6   and again orally requested a hearing on the original source question at the

7   March 11, 2013 hearing, in the event the Court should find there had been a

8   public disclosure.   It is axiomatic that FCA relators are not required to

9   establish original source status unless and until a public disclosure is held to

10  have occurred.   EY had the burden to establish a public disclosure before the

11  burden shifted to the Relators to show they are original sources.   The two-

12  step procedural sequence for ruling on a public disclosure challenge to

13  jurisdiction in the Ninth Circuit is spelled out in *United States ex rel.*

14  *Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1419-1420 (9th

15  Cir. 1991) and *Wang v. FMC Corp.*, 975 F.2d 1412, 1416 (9th Cir. 1992).   A

16  court may inquire into a relator's original source status *only if* the court first

17  finds that there has been a public disclosure of the allegations or transactions

18  set forth in the FCA lawsuit.   *Hagood* is controlling in its holding that a

19  public disclosure must be established beforehand in order for the burden to

20  shift to relators to prove original source.   There shall be no "original source"

1    inquiry unless and until a public disclosure has been established.  Relators

2    repeated their request for a hearing on original source at the March 11, 2013

3    hearing in the event the court should find that there was a public disclosure.

4    The lack of a hearing on the original source issue alone makes the likelihood

5    of success on appeal very high.

6    <u>IMPROPER CONVERSION TO SUMMARY JUDGMENT MOTION</u>

7         Fed. R. Civ. P. 56(c)(1) provides for a "point-counterpoint" procedure

8    for summary judgment motions.   Each disputed fact must be separately

9    identified in statement of undisputed facts by the movant.   The Central

10   District of California requires such point-counterpoint procedure in L.R. 56-

11   1 and 56-3.  Material facts to be decided in a motion for summary judgment

12   must be separately identified.   The failure to follow such procedure is a

13   notice issue requiring reversal of summary judgment.  *Boswell v. Potter*,

14   2002 U.S. App. Lexis 23855, at **33-4 (9th Cir. Nov. 18, 2002).  The right

15   to respond to a summary judgment motion is a fundamental due process

16   right.  EY failed to file a Statement of Uncontested Facts.  Moreover, Fed. R.

17   Civ. P. 12(d) provides that a motion to dismiss for lack of jurisdiction under

18   Fed. R. Civ. P. 12(b)(1) may not be converted to a motion for summary

19   judgment.  In addition, Relators requested a continuance of a ruling on EY's

20   motion on the basis that Relators could not, without discovery, present all of

1   the facts essential to justify its opposition pursuant to Fed. R. Civ. P. 56(d).

2   [DKT 170].  The motion was denied.  Clearly Relators' failure to respond to

3   summary judgment issues that were not identified as required by L.R. 56-1

4   and 56-3[3], and which discovery was disallowed on, cannot support a charge

5   that Relators' assertion of FCA jurisdiction was a sham.  The standing order

6   in this District requires a notice "Statement of Uncontroverted Facts and

7   Conclusions of Law" that must be filed concurrently with a motion for

8   summary judgment.

9          ***L.R. 56-1 Documents Required From Moving Party***. A party
10         filing a notice of motion for summary judgment or partial
11         summary judgment shall lodge a proposed "Statement of
12         Uncontroverted Facts and Conclusions of Law." Such proposed
13         statement shall set forth the material facts as to which the
14         moving party contends there is no genuine dispute. A party
15         seeking summary judgment shall lodge a proposed Judgment; a
16         party seeking partial summary judgment shall lodge a proposed
17         Order.
18
19         The Court made extensive fact finding on the merits of the case, even

20   though   the   Defendants   never   filed   the   required   "Statement   of

21   Uncontroverted Facts and Conclusions of Law."  The issue noticed and set

22   for hearing was the question of whether there had been a "public disclosure"

---

[3]  L.R. 56-3:  "In determining any motion for summary judgment, the Court will assume
that the material facts as claimed and adequately supported by the moving party are
admitted to exist without controversy except to the extent that such material facts are (a)
included in the "Statement of Genuine Issues" and (b) controverted by declaration or
other written evidence filed in opposition to the motion."

1    within the meaning of the FCA.  The summary judgment facts adjudicated

2    by the Court were never noticed.

3    <u>STRIKING AFFIDAVIT OF NYOKA LEE WAS ERROR</u>

4         The Court's decision striking the Affidavit of Relator Nyoka Lee as a

5    sham affidavit was clear error.  Striking such Affidavit after the Court

6    disallowed Relators from obtaining any discovery was highly inequitable.

7    The sham affidavit rule does not preclude a non-moving party from

8    elaborating upon, explaining, or clarifying prior testimony elicited by

9    opposing counsel on deposition.  *Nelson v. City of Davis*, 571 F.3d 924, 928

10   (9th Cir. 2009).  Minor inconsistencies that result from honest discrepancy or

11   mistake afford no basis for excluding opposition affidavit.  *Id.*.  Aggressive

12   enforcement of sham affidavit rule is justified only if the inconsistency

13   between the deposition testimony and the affidavit is clear and unambiguous

14   sufficient to justify striking affidavit.  *Van Asdale v. International Game*

15   *Tech.*, 577 F.3d 989, 998-999 (9th Cir. 2009).  The Order of dismissal

16   completely rejects the Affidavit of Nyoka Lee, while giving wholesale

17   admission to her deposition testimony without ruling on Relators' objections

18   on the record of the deposition transcript.   Relator provided sufficient

19   evidence of original source which was rejected by the Court.  The Court's

20   broad rejection of Relators' evidence does not support EY's argument that

1   Relators' assertion of FCA jurisdiction was a sham based on the finding that

2   Relators were held not to qualify as original sources.   The Affidavit of

3   Nyoka Lee went directly to merits of the case, as well as to her status as an

4   original source under the FCA.   The Court abused its discretion when it

5   granted a motion for summary judgment where the movant's papers were

6   insufficient for failing to separately identify the facts in dispute. *Martinez v.*

7   *Stanford*, 323 F.3d 1178, 1182-1183 (9th Cir. 2003).   Such evidentiary

8   rulings do not support EY's assertion that Relators' assertion of FCA

9   jurisdiction was a sham.   The Court's conclusion that Lee and Mshuja had no

10   knowledge whatsoever of the School's recruiter compensation practices,

11   disregarding altogether their combined thirteen (13) years of employment at the

12   Defendant, is categorically and evidentiarily unsustainable.

13        Nyoka Lee testified she was sure the director of admissions arrived at

14   his assessment of her performance based on her numbers.   "Because he

15   based everything on numbers, you know, and then he had to fill this in

16   [Employee Performance Review] because this is the paper they gave him to

17   fill in.  So he had to fill it in."   He told Lee he was recommending her for

18   promotion because she met her numbers. p. 81-82, Nyoke Lee depo.

19   Relators had sufficient basis to assert FCA jurisdiction.

20

ATTORNEY-CLIENT PRIVILEGE ISSUES

Defendants' motions argue that there was misconduct in the attorney-client relationship that should be considered by the Court in determining whether Relators' claims were frivolous.  Allegations of improper conduct in the attorney-client relationship entitle both the attorney and the clients to full due process rights to obtain and present evidence at a hearing under Ninth Circuit law.  *UMG Recordings, Inc. v. Bertelsmann AG*, 479 F.3d 1078 (9th Cir. 2007).  *Bertelsmann* holds that "in civil cases where outright disclosure is requested the party seeking to preserve the privilege has the right to introduce countervailing evidence."  The attorney-client privilege is directly at issue in the Defendants' motions.  The merits of the appeal in the Ninth Circuit should be decided before Relators are required to waive their attorney-client privileges to defend against the motions for sanctions, attorney fees, and costs.  E&Y's sanction motion makes a direct charge of misconduct in the attorney-client relationship:

> Defendants deposed Relators on December 16 (sic) and Dec 17, 2012.  In addition to establishing Relators' lack of personal knowledge of the allegations in their complaints, the depositions revealed that Relators' Counsel used Susan Newman – a relator in two *qui tam* cases previously filed by Relators' Counsel[3] [footnote omitted] – to recruit Relators to file this suit.

1   EY's Sanctions Motion, p. 4.  This accusation against counsel is precisely

2   the situation that creates the due process protections for discovery and

3   hearing described in *Bertelsmann*.

4        A second attorney-client privilege issue is raised in establishing that

5   Relators qualified as original sources in this action, since the evidence

6   provided to the Government is central to an original source determination.

7   The attorney-client concerns are additional grounds to deny EY's motion.

8   *Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 895 (9th Cir. 1988).

9   CASES WHERE SUSAN NEWMAN SERVED AS RELATOR

10

11        EY argues that the Court needs to consider Susan Newman's role in

12   *United States ex rel. Bott v. Silicon Valley Colleges*, No. 04-0320, Northern

13   District of California, in awarding sanctions.  Judge Wilkens denied the

14   motion for sanctions made in the *Bott* case.  EY also argues that the Court

15   should consider that Susan Newman was also the co-relator in the *Bott* case,

16   and that Susan Newman was the co-relator in the case *United States ex rel.*

17   *Graves v. ITT Educational Services, Inc.*  No motion for sanctions was ever

18   filed in the *Graves v. ITT* case.  Newman's information, moreover, resulted

19   in a major criminal investigation against ITT Educational Services, Inc.

20   under the Racketeer Influenced Corrupt Organizations Act ("RICO") by the

21   U.S. Department of Justice.  *See* FBI Search Warrant attached and

1   incorporated as Exhibit "1."  Susan Newman's disclosures in the *Graves v.*

2   *ITT* case also led to a separate investigation into official misconduct in the

3   positions taken by the U.S. Department of Justice in court filings.  *See*

4   "Newman Exhibits" attached and incorporated as Exhibit "2, 3 and 4" (3

5   parts).

6        EY also asserts that Relators' counsel Scott Levy (a "Texas" lawyer)

7   and Mark Labaton used Susan Newman to "recruit" the Relators in this

8   lawsuit.  Relator Talala Mshuja was a colleague of Susan Newman at IBT,

9   another for-profit education company, and that Newman and Mshuja met the

10  counsel about bringing a suit against IBT.  The email from the U.S.

11  Department of Justice confirms that a draft suit against IBT was prepared

12  and submitted to the Government.  *See* email from Abraham Meltzer,

13  Assistant U.S. Attorney, Central District of California, dated April 24, 2013,

14  attached and incorporated as Exhibit "5."  *See* Deposition of Talala Mshuja

15  attached and incorporated as Exhibit "6."

16  EY IS AWARE OF THE SCHOOL'S HISTORY OF MISCONDUCT

17        After the two (2) sets of Rule 12(b)(6) motions were filed, EY moved to

18  dismiss for lack of jurisdiction under Rule 12(b)(1) arguing that the allegations

19  were already publicly disclosed in testimony given by Congresswoman Maxine

20  Waters and in a securities class action lawsuit against the School, both of which

asserted that the School had mandatory enrollment quotas as the foundation of its recruiter compensation program. Congresswoman Waters and the securities class action complaint both asserted that the recruiter enrollment quotas were, in and of themselves, a violation of the HEA recruiter compensation ban. This was the same position asserted by Relators in their original complaint, which the Ninth Circuit rejected and held that enrollment quotas did not violate the HEA, and therefore could not serve as a "false statement" within the meaning of the FCA. It is highly noteworthy that while EY asserts that Relators should have known about the public disclosures at the time the lawsuit was filed, the School's legal counsel in the securities class action suit is the same legal counsel that represents the School in the instant lawsuit. Yet the School Defendants filed their rule 12(b)(1) motions only after bringing two separate motions to dismiss under Rule 12(b)(6).

The Ninth Circuit has already vetted the case. The Court record, moreover, clearly reflects that defendant Corinthian Colleges, Inc. is viewed as a peril to both students and taxpayers by government officials and agencies. First, U.S. Senator Frank Lautenberg, joined by seven (7) of his Senate colleagues[4], sent a letter on December 12, 2012 to U.S. Secretary of Education Arne Duncan requesting an investigation of Corinthian Colleges, Inc. for suspected fraud against the federal student financial aid programs. Second, the Attorney General for the State of

---

[4] The signatories to the December 12, 2012 Letter were Senator Frank R. Lautenberg (D. NJ), Senator Richard Durbin (D. IL), Senator Richard Blumenthal (D. IN), Senator Tom Harkin (D. IA), Senator Jay D. Rockefeller IV (D. WV), Senator Al Franken (D. MN), Senator Jack Reed (D. RI), and Senator Barbara Boxer (D. CA).

1   Illinois issued a subpoena to Relators' counsel to produce copies of documents and

2   the deposition testimony given by Lee and Mshuja in this case.  This evidence was

3   already under subpoena by the Illinois Attorney General directly to the Defendant.

4   Third, U.S. Congresswoman Maxine Waters testified about the falsification of

5   financial aid eligibility records of students enrolled at the Defendant's San Jose

6   campus uncovered by the U.S. Department of Education.  Fourth, Congresswoman

7   Maxine Waters, in a letter dated February 7, 2013, requested the Court to delay

8   ruling on defendants' expedited application for protective order to seal the

9   evidence provided by Lee and Mshuja until both U.S. Attorney General Eric

10  Holder, and the Attorneys General of Illinois and other affected States could file

11  briefs making their positions known.[5]  The fact that eight United States Senators

12  and a Member of Congress have written letters questioning the legality of the

13  School's conduct makes EY's assertion that Relators filed a sham lawsuit even

14  more implausible, which provides further evidence that EY's real motive in

15  bringing the sanctions motions is to create additional burdens in order to block

16  Relators from pursuing an appeal to the Ninth Circuit.

17          Corinthian Colleges' Forms 10-K filed with the U.S. Securities &

18  Exchange Commission each year explicitly disclaimed giving an opinion as to

---

[5]  The district court ordered the letter from a Member of Congress stricken from the record as an *ex parte* communication, instead of circulating it to the parties and allowing comment as provided by the Local Rule cited in the Order.  Remarkably, one of the grounds for sanctions asserted in Corinthian Colleges' motion is that Relators' counsel should be held responsible under 28 U.S.C. § 1927 for Congresswoman Maxine Waters' February 7, 2013 letter to the district court as an example of vexatious conduct by Relators.

1   compliance with the HEA recruiter compensation prohibition.  In stark contrast,

2   EY gave clean unqualified opinions to the U.S. Department of Education, never

3   breathing a word about the uncertainty about compliance with the recruiter

4   compensation prohibition expressed in the Forms 10-K.  EY made completely

5   opposite disclosures to the U.S. Securities & Exchange Commission and the U.S.

6   Department of Education.  In this regard, EY's explanation that it should somehow

7   be vindicated because a third-party auditor conducted the compliance portion of

8   the examination underscores how recklessly it acted.  EY issued its audit opinions

9   with the full knowledge that compliance with the recruiter compensation ban was

10  unresolved, at best.  Despite such material weakness impacting ninety-percent

11  (90%) of the School's income, EY issues unqualified opinions with no warning

12  whatsoever to the U.S. Government.  EY betrayed the interest of the United States

13  in order to appease the client and retain Corinthian's business.  Relators' claims

14  against EY are supported in both law and fact.

15  *LEVESKI* CASE

16      EY relies in large part on the decision in *United States ex rel. Leveski v. ITT*

17  *Educational Services, Inc.*, No. 1:07-cv-0867-TWP-MJD, 2012 WL 1028794

18  (S.D. Ind. March 26, 2012) to justify its request for sanctions.  *Leveski* is now on

19  appeal in the Seventh Circuit, and oral argument was held in January 2013.  No

20  12-1369, No 12-1967, No 12-1979, No 12-2008, and No. 12-2891.  Where the

21  imposition of sanctions is based sanctions awarded in a similar case, the

1   Court should be hold its decision in abeyance pending appellate review of

2   that case.  *Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 895 (9th Cir. 1988).

3   <u>Noerr-Pennington Doctrine</u>

4     To award sanctions in the context of the other actions taken to

5   retaliate against Relators and their legal counsel for bringing this action

6   against Defendants would be a violation of the *Noerr-Pennington* doctrine.

7   EY seeks sanctions of approximately $542,000 in attorney's fees against

8   Relators and their counsel.  EY brings its motion in order to interfere with

9   Relators from pursuing their appeal in the U.S. Court of Appeals for the

10  Ninth Circuit.

11    The essence of EY's argument in its sanctions motion, which is

12  carried over into EY's motion for costs under 28 U.S.C. § 1919, is that

13  Relators' assertion of FCA jurisdiction was baseless from the start, *i.e.*, that

14  the lawsuit was doomed from the beginning.  Because the First

15  Amendment's Petition Clause requires protection of "the class of reasonable

16  based but unsuccessful lawsuits," actions that chill or restrain the filing of

17  lawsuits involves rights protected by the Bill of Rights.  *BE&K Construction

18  Co. v. NLRB*, 536 U.S. 516 (2002).

19    "[T]he right to access to the court is … but one aspect of the [First

20  Amendment] right of petition," which extended the immunity of the *Noerr-*

1   *Pennington* doctrine to the use of "the channels and procedures of state and

2   federal … *courts* to advocate causes and points of view… ."   *Sosa v.*

3   *DIRECTTV, Inc.*, 437 F.3d 923 (9th Cir. 2006).   The Supreme Court held that

4   Petition Clause protects access to judicial processes, and that laws must be

5   interpreted, where possible, to avoid burdening such access.   *Sosa*, *id., citing*

6   *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983).   The

7   Supreme Court expanded its holding in *BE&K Construction Co. v. NLRB*,

8   536 U.S. 516 (2002) to make clear that principles of statutory construction

9   embodied in the *Noerr-Pennington* doctrine apply with full force in other

10  statutory contexts.   *BE&K* explained that the sham litigation test requires

11  that "breathing room" should be given in evaluating whether their legal

12  assertions are baseless.   "This definition overprotects baseless petitions so as

13  to ensure citizens may enjoy the right of access to the courts without fear of

14  prosecution. *BE&K* made this breathing room protection explicit."   *Sosa, id.*,

15  at 934.

16  <u>Appellate Court Decision is Required Before Litigation is Deemed a "Sham"</u>

17          The Court found no public disclosure as to EY.   Instead, the ruling

18  allows EY to piggy-back on the public disclosure found as to t he School

19  defendants.   EY's motion for sanctions, in conjunction with the separate

20  motion for sanctions brought by the School Defendants, is brought for the

1   improper purpose of blocking Relators' access to the Ninth Circuit.   EY

2   employs a heavy-handed strategy in a fraudulent manner, to block appellate

3   review of the public disclosure findings made by the district court.   Before a

4   case can be deemed to be outside the immunity of the *Noerr-Pennington*

5   doctrine, there must be appellate review of the determination that a lawsuit

6   was a "sham."

7       we recognized that recourse to agencies and courts should not
8       be condemned as sham until a reviewing court has "discern[ed]
9       and draw[n]" the "difficult line" separating objectively
10      reasonable claims from "a pattern of baseless, repetitive claims .
11      . . which leads the factfinder to conclude that the administrative
12      and judicial processes have been abused."

13
14   *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries,*

15   *Inc.*, 508 U.S. 49 (1993), *citing California Motor Transport v. Trucking*

16   *Unlimited*, 404 U.S. 508, 513 (1972).   EY's motion seeks to avoid appellate

17   review of the jurisdiction of the public disclosure issue.   A sham lawsuit is

18   one that is "objectively baseless in the sense that no reasonable litigant could

19   realistically expect success on the merits." *Id*

20       It would be clear error for this Court to award sanctions before the

21   appellate court can evaluate jurisdictional basis asserted by Relators.   EY's

22   charge of sham jurisdiction against Relators requires appellate review as a

23   matter of law.   *BE&K, id.*; *Professional Real Estate Investors, Inc., id.*;

24   *Sosa, id.*   Relators clearly notified the Court of EY's pattern of retaliatory

1   conduct against Relators and their counsel, and the Court's supervision was

2   requested so that Relators could proceed in presenting the merits of their

3   claims. *See*, Dkt 170, Relators' Ex Parte Application For Stay Of

4   Proceedings To Address Threats of Retaliation By Defense Counsel.   The

5   Court is required under the *Noerr-Pennington* doctrine to take into

6   consideration whether the Defendants are using sanctions as a judicial

7   maneuvers for the purpose of "deterring respondents from having fee and

8   unlimited access to the agencies and the courts." *California Motor Transport*

9   *Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).   Defendants' motion for

10  costs, in conjunction with its motion for sanctions, and threats against

11  Relators' counsel and third-party counsel considering enrolling in the case,

12  has interfered with Relators' right to access to the courts.  *Id.*

13  PUBLIC DISCLOSURE IS DIFFERENT FOR EACH DEFENDANT

14      The public disclosure that Corinthian Colleges utilizes *illegal* recruiter

15  enrollment quotas as part of its recruiter compensation program does not

16  constitute a public disclosure that EY as auditor failed to properly audit and

17  report on the HEA-related liabilities resulting from such illegal enrollment

18  quota practices.   A public disclosure about one defendant affords no

19  protection to another defendant.  *Wang v. FMC Corp*., 975 F.2d 1412 (9th

20  Cir. 1992) .  EY's violations were never publicly disclosed.  *See United*

1   *States ex rel. Aflatooni v. Kitsap Physician Services,* 163 F.3d 516, 523 (9th

2   Cir. 1998) (fraud was alleged "against two distinct groups of defendants."

3   Following *Wang, id* at 1415-1416, the Ninth Circuit reversed the public

4   disclosure finding as to the second group of defendants: "[W]e find that the

5   district court erred in concluding that the public disclosure bar applied to all

6   Defendants…."  The public disclosure regarding the School Defendants was

7   not a public disclosure as to EY.  EY's motion fails to establish that

8   Relators' assertion of FCA jurisdiction against EY was a sham.

9        Moreover, Relators were not required to identify the submission EY

10   made to the Government.  *See, Glynn v. Edo Corp.*, 710 F.3d 209 (4th Cir.

11   2013) (relator did not have to see the submission to the government –

12   circumstantial evidence of false certification is enough).

13       EY's motion falls far short in demonstrating that suit falls within the

14   sham litigation exception to justify awarding attorney's fees. A district court

15   should review "the entire course of the litigation" in making this

16   determination. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-

17   422 (1978).  Moreover, "it is important that a district court resist the

18   understandable temptation to engage in post hoc reasoning by concluding

19   that, because a plaintiff did not ultimately prevail, his action must have been

20   unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-22.

1  EY argues in hindsight that the claims were clearly frivolous, clearly

2  vexatious, or brought primarily for the purposes of harassment in hindsight,

3  yet it failed to seek sanctions under Fed. R. Civ. P. 11 utilizing its safe-

4  harbor provision. Although found not meritorious in hindsight, the Court

5  already concluded that relators' "Lead-to-Conversion Ratio" claims were

6  sufficient addition facts to state a violation of the Higher Education Act

7  recruiter compensation ban.  Relators came forth with evidence to support

8  the claims in the Ad Rep Performance Flash Reports.

9       The Federal Reserve issued a report on April 17, 2013 concerning the

10  long-term negative effect of the $1.0 trillion in student loans will have on

11  future economic growth in the U.S.  The issue is now a national crisis.  *See*,

12  http://libertystreeteconomics.newyorkfed.org/2013/04/young-student-loan-

13  borrowers-retreat-from-housing-and-auto-markets.html

14       Relators attach and incorporated the 789 pages of documents they

15  produced, including the Ad Rep Performance Flash reports, as Exhibit "1"

16  (Lodged Under Seal).  Relators attach and incorporate the Deposition of

17  Nyoka Lee as Exhibit "2."  Relators attach and incorporate the Deposition of

18  Talala Mshuja as Exhibit "3."  Relators attach and incorporate the April 24,

19  2013 email from Assistant U.S. Attorney Abraham Meltzer regarding

1  Institute For Business & Technology by Relators Talala Mshuja and Susan

2  Newman as Exhibit "4."

3          The auditor's obligations to report the impact of misconduct to the

4  U.S. Government in the context of the FCA was explained by the Ninth

5  Circuit.  The basis for FCA jurisdiction asserted against EY is objectively

6  reasonable.  The Court dismissed the claims against EY based on the public

7  disclosure of fraud as to the School Defendants; the Court did not adopt the

8  argument asserted by EY that there was also a public disclosure of the

9  auditor's misconduct.  The claims against EY have already been vetted by

10  the Ninth Circuit.  The First Amendment's Petition Clause requires

11  protection of "the class of reasonable based but unsuccessful lawsuits," and

12  to award sanctions in this case would violate the *Noerr-Pennington* doctrine

13  by burdening Relators' prosecution of an appeal on the merits in the U.S.

14  Court of Appeals for the Ninth Circuit, which is EY's strategy in bringing its

15  motion. The claim against EY was divested of jurisdiction based on

16  evidentiary rulings in which Relators asserted reasonable positions.

17  REQUEST FOR RELIEF

18          WHEREFORE, the Court should deny EY's Motion For Sanctions

19  pursuant to 28 U.S.C. § 1927.

20
21  Dated:  May 10, 2013                    Respectfully submitted:

                                            25    CASE NO. CV 07-01984 PSG (MANx)

1

LEVY & ASSOCIATES PC


By:      _____// SDL //_____


SCOTT D. LEVY
Attorney for Relators Nyoka June Lee
and Talala Mshuja

2